1  IRELL & MANELLA LLP
2  Steven A. Marenberg (101033)
   *smarenberg@irell.com*
3  Melissa Sedrish Rabbani (283993)
   *mrabbani@irell.com*
4  1800 Avenue of the Stars, Suite 900
5  Los Angeles, California 90067-4276
   Telephone:   (310) 277-1010
6

7  FREEDMAN & TAITELMAN, LLP
8  Bryan J. Freedman (151990)
   *bfreedman@ftllp.com*
9  David M. Marmorstein (192993)
   *dmarmorstein@ftllp.com*
10 1901 Avenue of the Stars, Suite 500
11 Los Angeles, California 90067
   Telephone:  (310) 201-0005
12

13 Attorneys for Defendant
14 United Talent Agency, LLC

15                    UNITED STATES DISTRICT COURT
16                   CENTRAL DISTRICT OF CALIFORNIA
17                            WEST DIVISION
18

19 | LENHOFF ENTERPRISES, INC.,          | )   **Case No. 2:15-cv-1086-BRO (FFMx)**
20 |                                      | )
   |            Plaintiff,                | )   **DEFENDANT UNITED TALENT**
21 |                                      | )   **AGENCY'S MEMORANDUM OF**
   |     vs.                              | )   **POINTS AND AUTHORITIES IN**
22 |                                      | )   **SUPPORT OF MOTION TO**
   |                                      | )   **DISMISS PLAINTIFF'S FIRST**
23 | UNITED TALENT AGENCY, INC.;          | )   **AMENDED COMPLAINT**
   | INTERNATIONAL CREATIVE               | )
24 | MANAGEMENT PARTNERS LLC;             | )
25 | and DOES 1 through 5, inclusive,     | )   Date:  September 21, 2015
   |                                      | )   Time:  1:30 p.m.
26 |            Defendants.               | )   Courtroom:  14, Spring St. Floor
   |                                      | )   Judge:  Beverly Reid O'Connell
27 |                                      | )
28 |                                      | )

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

II.   THE RELEVANT ALLEGATIONS OF THE FAC .....................................3

III.  APPLICABLE LEGAL STANDARDs FOR MOTIONS TO DISMISS ............................................................................................5

IV.   ARGUMENT .......................................................................................6

    A.   Plaintiff's First Cause of Action for Violations of § 2 of the Sherman Act Should Be Dismissed Without Leave to Amend. ........................................................................................6

        1.   Plaintiff Has Not Adequately Alleged a Conspiracy to Monopolize. ..........................................................7

        2.   Plaintiff Has Not Pled Sufficient Market Share to Assert an Attempted Monopolization Claim. ...................9

        3.   Plaintiff Has Not Adequately Pled Causal Antitrust Injury. ...............................................................12

        4.   Leave to Amend Should Not Be Granted. ................................15

    B.   Plaintiff's Third Cause of Action for Intentional Interference with Contract Should Be Dismissed. ..............................15

    C.   Plaintiff's Fourth Claim for Intentional Interference with Prospective Economic Advantage Should Be Dismissed. ..................17

    D.   Plaintiff's Second Claim for Violation of Section 17200 Should Be Dismissed. ........................................................18

        1.   Plaintiff's "Unlawful" and "Unfair" Claims Fail. ...................18

        2.   Plaintiff's Claims for Restitution and Disgorgement Fail. ...............................................................19

    E.   Plaintiff's Fifth and Sixth Causes of Action for Declaratory and Injunctive Relief Should Also Be Dismissed. ......................................................................20

V.    CONCLUSION .................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................5, 6, 8

*Atlantic Richfield Co. v. USA Petroleum, Inc.*,
    495 U.S. 328 (1990) ............................................................................12

*Babb v. Superior Court*,
    3 Cal. 3d 841 (1971) ..........................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................5, 8

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209, 113 S.Ct. 2578 (1993) ...............................................14

*Brunswick Corp. v . Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477, 97 S.Ct. 690 (1977) ...............................................2, 12

*Cal. Ins. Guarantee Ass'n v. Superior Court*,
    231 Cal. App. 3d 1617 (1991) ...........................................................21

*Camp v. Board of Supervisors*,
    123 Cal. App. 3d 334 (1981) .............................................................20

*Cascade Health Solutions v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008) .............................................................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) ........................................................................19

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
    72 F. Supp. 3d 1012 (N.D. Cal. 2014) ..............................................11

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) .........................................................................21

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994)................................................................5

*Connerly v. Schwarzenegger*,
    146 Cal. App. 4th 739 (2007) ............................................................21

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) ............................................................18

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376 (1995) .......................................................................17

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ..............................................18

**Page(s)**

*Fresno Motors, LLC v. Mercedes Benz USA, LLC,*
    771 F.3d 1119 (9th Cir. 2014) ................................................................ 19

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.,*
    352 F.3d 367 (9th Cir. 2003) .................................................................. 12

*Henke v. Arco Midcon, L.L.C.,*
    750 F. Supp. 2d 1052 (E.D. Mo. 2010) .................................................. 20

*International Longshore and Warehouse Union v. ICTSI Oregon, Inc.,*
    15 F. Supp. 3d 1075 (D. Ore. 2014) ......................................................... 8

*Jensen v. Quality Loan Serv. Corp.,*
    702 F. Supp. 2d 1183 (E.D. Cal. 2010) ................................................. 20

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .................................................................. 5

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ................................................................... 17, 20

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ........................................................................... 19

*Lemmer v. Charney,*
    195 Cal. App. 4th 99 (2011) .................................................................. 17

*LiveUniverse, Inc. v. MySpace, Inc.,*
    304 Fed. App'x 554 (9th Cir. 2008) ...................................................... 14

*Motley v. Homecomings Fin., LLC,*
    557 F. Supp. 2d 1005 (D. Minn. 2008) ................................................. 20

*Neizil v Williams,*
    543 F. Supp. 899 (M.D. Fla. 1982) ....................................................... 16

*Oxbow Carbon & Minerals LLC v. Union Pac. R. Co.,*
    926 F. Supp. 2d 36 (D.D.C. 2013) ........................................................... 8

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
    50 Cal.3d 1118 (1990) ........................................................................... 15

*Paladin Assoc., Inc. v. Montana Power Co.,*
    328 F.3d 1145 (9th Cir. 2003) .................................................................. 7

*Palmer v. Stassinos,*
    348 F. Supp. 2d 1070 (N.D. Cal. 2004) ................................................ 19

*Plan Pros, Inc. v. Zych,*
    No. 8:08CV125, 2009 WL 928867 (D. Neb. Mar. 31, 2009) ................ 20

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page(s)**

*Podolsky v. First Healthcare Corp.*,
    50 Cal. App. 4th 632 (1996)............................................................18

*Pool Water Prod. v. Olin Corp.*,
    528 F.3d 1024 (9th Cir. 2001)........................................................13

*Rahman v. Mott's LLP*,
    2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ..................................5

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995).....................................................passim

*Sanctity of Human Life Network v. California Highway Patrol*,
    105 Cal.App.4th 858 (2003)............................................................21

*Savage v. Pac. Gas & Elec. Co.*,
    21 Cal. App. 4th 434 (1993)............................................................15

*Standfacts Credit Servs., Inc. v. Experian Information Solutions, Inc.*,
    405 F. Supp. 2d 1141 (C.D. Cal. 2005)............................................9

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ...........18

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
    547 F. Supp. 2d 1086 (C.D. Cal. 2007)...........................................15

*Terminalift LLC v. Int'l Longshore & Warehouse Union Local 29*,
    2013 WL 2154793  (S.D. Cal. May 17, 2013)....................................8

*Triburon v. Northwestern Pac. Ry. Co.*,
    4 Cal. App. 3d 160 (1970)..............................................................21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..........................................................5

**Statutes**

Cal. Bus. & Prof Code § 17200 .............................................3, 4, 6, 18

Cal. Bus. & Prof. Code § 17203 ......................................................19

Cal. Civ. Proc. Code § 436 ..............................................................21

Cal. Civ. Proc. Code §1060 .............................................................21

**Rules**

Fed. R. Civ. P. 9.................................................................................5

Fed. R. Civ. P. 12.........................................................................1, 5

## I.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Lenhoff Enterprises, Inc. ("Lenhoff" or "Plaintiff") describes itself as a "boutique" talent agency, consisting of two agents and approximately 30 clients. Lenhoff is having trouble retaining its highest-earning clients and competing effectively in the market for "scripted series television" deals.  Casting about for someone else to blame for its competitive woes, Plaintiff alleges in its First Amended Complaint ("FAC") that Defendants United Talent Agency, LLC ("UTA") and International Creative Management Partners LLC ("ICM") have conspired to monopolize or attempted to monopolize the scripted series television market, in violation of Section 2 of the Sherman Act, by offering to "talent"— producers, directors, actors, and others seeking employment in the entertainment industry—attractive "packaging" arrangements that reduce or eliminate the commissions these clients would otherwise owe to their agencies.  Lenhoff also alleges that UTA and ICM have tortiously interfered with its contracts or prospective economic relationships and are guilty of unfair competition in violation of California state law.

None of these claims withstands scrutiny under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff's Section 2 claim upends antitrust law and is without merit as a matter of law for several independent reasons.  The FAC does *not* allege, because it cannot, that UTA alone has sufficient market power to "monopolize" any relevant market.  Indeed, that pleading admits that UTA is but one of the four largest talent agencies in Los Angeles, and alleges that two agencies, William Morris Endeavor ("WME") and Creative Artists Agency ("CAA"), have larger market shares than UTA.  By Plaintiff's own measure, UTA has a market share between 18 and 23%—a share that is insufficient, as a matter of law, to either exercise monopoly power or present a dangerous probability of achieving monopoly power, as is required to prove a Section 2 violation for attempted monopolization.  *See* Section IV.A.2, *infra*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    Implicitly recognizing this fact, Plaintiff therefore alleges that UTA has

2    conspired with Defendant ICM and two other agencies not even named as

3    defendants to collectively exercise monopoly power.  But, it is settled antitrust law

4    that a conspiracy to jointly exercise monopoly power is not a cognizable theory

5    under Section 2 of the Sherman Act.  Rather, Section 2 prohibits only

6    monopolization by a *single entity*.  Thus, Plaintiff's claim that UTA has conspired

7    with its three largest competitors to "share" monopoly power is not only

8    implausible, but is based on a theory not recognized as an offense under Section 2.

9    *See* Section IV.A.1, *infra*.

10    Finally, Plaintiff's FAC also fails to allege material facts that constitute

11    another required element of any Section 2 offense—"antitrust injury," that is, injury

12    of the type the antitrust laws were designed to prevent.  *Brunswick Corp. v. Pueblo*

13    *Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  A basic and long-held tenet of

14    antitrust law is that the Sherman Act protects competition, not competitors.  As

15    Plaintiff's own allegations concede, the packaging arrangements offered by agencies

16    like UTA and ICM actually *benefit* consumers of talent agencies' services, reducing

17    (in many cases to zero) the commissions traditionally paid by talent to agencies by

18    shifting these fees to studios and production companies.  If Plaintiff cannot compete,

19    that disability is not caused by any anticompetitive behavior, but by its own inability

20    to put together competitive packaging deals by reason of the fact that, as a

21    "boutique" agency with only a few clients, it lacks the breadth and depth of a talent

22    roster to do so.  But, it is well-settled that it is not the function of the antitrust laws

23    to level the playing field between small competitors and larger ones.  And, injury

24    due to a competitor's lower prices is not the type of injury the antitrust laws were

25    designed to prevent.  *Id.*; *see* Section IV.A.3, *infra*.

26    For each of these reasons, UTA submits that Plaintiff's antitrust claim should

27    be dismissed.  And, since these defects could never be remedied by repleading, the

28    dismissal should be without leave to amend.  If, upon dismissal of the antitrust

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 2 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

claim—the sole basis for federal jurisdiction—the Court decides to exercise its discretion to consider the FAC's state law causes of action, these should be dismissed as well.  As explained below, *see* Sections IV.B-E, *infra*, Plaintiff's state law claims for tortious interference with contract and tortious interference with prospective economic advantage are both facially defective.  So too are the claims for breach of Section 17200 of the California Business and Professions Code (the "UCL claim") and declaratory relief.  Finally, the Sixth Cause of Action for an injunction is not even a cognizable legal claim, but merely a theory of relief and should likewise be dismissed.

## II.   THE RELEVANT ALLEGATIONS OF THE FAC

Much of Plaintiff's prolix FAC consists of irrelevant allegations relating to the history of the talent industry, from the 1930s to the present decade.  Insofar, however, that Plaintiff's allegations are relevant to the antitrust and state law claims alleged against Defendant UTA, they are summarized below.

The thrust of Plaintiff's FAC relates to "packaging" arrangements offered to talent by larger agencies, such as UTA and ICM.  Under such arrangements, Lenhoff alleges, clients are not required to pay their agency the ten percent commission typically charged by smaller agencies, such as Plaintiff.  FAC ¶¶ 82-83.  Instead, Lenhoff alleges, UTA and the other so-called "Uber Agencies" seek to earn "packaging fees" from studios or production companies based on percentages of a television show's revenues, rather than commissions from their clients.  *See id.* ¶ 24.  Plaintiff alleges repeatedly that the packaging arrangements offered by UTA and other large agencies allow those agencies "to compete unfairly with smaller [a]gencies for talent," as packaging opportunities are "effectively[] unavailable" to smaller agencies.  *Id.* ¶¶ 28, 83.  Plaintiff further alleges that, as a result of this "unfair competition," the largest agencies have "grown and consolidated their control."  *Id.*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 3 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    As a result of this consolidation, and the packaging opportunities UTA, ICM,

2  CAA, and WME are able to offer talent, Plaintiff alleges, those four agencies have

3  monopolized the relevant market for scripted series television.  In particular,

4  Plaintiff alleges that the four "Uber Agencies" together control 79% of "the

5  2014/2015 scripted series staffing market," 91% of "the 2014/2015 scripted series

6  term deal market," and 93% of the "scripted series packaging market."  *Id. ¶¶ 71-*

7  *73*.  Insofar as UTA is concerned, however, UTA's market shares are 22% of "the

8  2014/2015 scripted series staffing market," 23% of "the 2014/2015 scripted series

9  term deal market," and 18% of the "scripted series packaging market" according to

10  the FAC.  *See* FAC Exhs. C, F, H.

11    The particular impetus for Lenhoff's lawsuit against UTA appears to be

12  Plaintiff's claim that UTA has taken one of Plaintiff's clients.  Plaintiff alleges that,

13  between 2012 and 2014, UTA made "numerous calls" to Plaintiff's clients, refused

14  to stop those calls when asked to do so by Plaintiff and its counsel, and, as a result,

15  "disrupted" Plaintiff's relationships with its clients.  *Id. ¶ 20*.  In particular, Plaintiff

16  asserts that UTA's "poaching" activities disrupted Plaintiff's relationship with one

17  client, a "diversity director, producer, and DGA unit production manager" identified

18  only as "Client #1."  *Id. ¶¶ 21-24*.

19    Plaintiff alleges that on or about November 4, 2014, Client #1 informed

20  Plaintiff "that she no longer wished to be represented by Plaintiff."  *Id. ¶ 21*.  On or

21  about December 1, 2014, Plaintiff alleges, it learned that the Directors' Guild

22  website listed Plaintiff's former client's agent as an individual employed by UTA.

23  *Id. ¶ 23*.  On information and belief, Plaintiff alleges that Client #1 was "induced" to

24  sever her contract with Plaintiff by UTA's representation that she would be part of

25  UTA's "[p]ackaging activities."  *Id. ¶ 24*.

26    Based on these allegations, Plaintiff's First Amended Complaint asserts six

27  claims against UTA and ICM: (1) violations of Section 2 of the Sherman Act; (2)

28  unlawful and unfair business practices, in violation of Section 17200 of the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 4 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  California Business and Professions Code; (3) intentional interference with contract;

2  (4) intentional interference with prospective economic advantage;(5) declaratory

3  relief; and (6) injunctive relief.

4  **III.   APPLICABLE LEGAL STANDARDS FOR MOTIONS TO DISMISS**

5  "[O]nly a complaint that states a plausible claim for relief survives a motion

6  to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To pass muster under

7  Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual

8  matter, accepted as true, to state a claim to relief that is plausible on its face.  *Id.* at

9  678.  Conclusory statements, or a "formulaic recitation of the elements of a cause of

10  action," will not suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

11  complaint must allege sufficient facts to cross "the line between possibility and

12  plausibility of entitlement to relief." *Id.* at 557 .  Notably, while the general rule for

13  motions brought under Federal Rule 12(b)(6) is that allegations of material fact in a

14  complaint are assumed to be true, the Court is "not required to accept legal

15  conclusions cast in the form of factual allegations if those conclusions cannot

16  reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18

17  F.3d 752, 754-55 (9th Cir. 1994).  That observation is particularly apt here, where

18  the FAC is littered with conclusory allegations using antitrust nomenclature such as

19  "antitrust injury," "predatory pricing," and the like, without any facts supporting

20  those legal conclusions.

21  Federal Rule of Civil Procedure 9(b) mandates that "the circumstances

22  constituting fraud or mistake" shall be stated with "particularity."  Fed. R. Civ. P.

23  9(b).  The requirements of Rule 9(b) apply to both federal and state law claims,

24  including state law claims for alleged violations of the UCL where such claims are

25  based on allegations of fraudulent conduct.  *Kearns v. Ford Motor Co.*, 567 F.3d

26  1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04

27  (9th Cir. 2003); *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 325241, at

28  *8 (N.D. Cal. Jan. 29, 2014) ("The Ninth Circuit has specifically held that Rule

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 5 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

9(b)'s heightened pleading standard applies to claims for violation of the UCL, FAL or CLRA that are grounded in fraud.").

## IV.   ARGUMENT

As set forth below, Plaintiff has not and cannot state a viable claim for relief under Section 2 of the Sherman Antitrust Act.[1]

### A.   Plaintiff's First Cause of Action for Violations of § 2 of the Sherman Act Should Be Dismissed Without Leave to Amend.

In its First Cause of Action, Plaintiff asserts that UTA and ICM have "attempted to combine or conspire with other entities" to monopolize trade or commerce in violation of Section 2 of the Sherman Act, which prohibits monopolization, attempted monopolization, or conspiracy to monopolize "any part of the trade or commerce." *See* FAC ¶ 118.

The FAC is ambiguous as to the precise nature of the Section 2 violation being alleged in the First Cause of Action.  That is, it is unclear whether Plaintiff is alleging a claim for conspiracy to monopolize or for attempted monopolization.[2] Either way, the FAC's opaqueness does not affect the disposition of this motion. Simply put, as a matter of law, Plaintiff has not alleged—and cannot allege—a cognizable claim for relief under either theory.  First, insofar as Plaintiff is attempting to assert a claim for conspiracy to monopolize among UTA, ICM, and the other pejoratively labeled "Uber Agencies," CAA and WME, that claim fails because Plaintiff has failed to allege that UTA, ICM, or any other party has conspired to convey monopoly power *to a single entity*, as is required for a

---

[1] As explained below, as a result, Plaintiff's claims for violations of Section 17200 of the Business and Professions Code and for tortious interference with prospective economic advantage, both of which are predicated on Plaintiff's defective Sherman Act claim, also fail.

[2] It does not appear that the FAC accuses UTA of actual monopolization, nor could it ever do so with the degree of plausibility required to survive a motion to dismiss under in the *Iqbal* standard  given the allegation that UTA at most has a 23% market share.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 6 -

MEMORANDUM ISO UNITED TALENT AGENCY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

conspiracy claim under Section 2.  Indeed, Plaintiff's own allegations make abundantly clear that the business practices of UTA, ICM, and others have fostered vigorous and robust competition among talent agencies, particularly among the four so-called "Uber Agencies."

Second, to the extent that Plaintiff is purporting to assert an attempted monopolization claim, that claim is facially and fatally infirm because the matters that Plaintiff *has* alleged undermine the possibility of proving that UTA (or ICM for that matter) has achieved or has any realistic prospect of achieving a "dangerous probability of monopoly power," an essential element of an attempted monopolization claim.  Finally, whether Plaintiff is asserting a conspiracy to monopolize or an attempt claim under Section 2, the FAC fails to allege facts sufficient to establish "antitrust injury," another requisite element of any claim under the Sherman Act.   Each of these deficiencies is addressed in turn below.

1. <u>Plaintiff Has Not Adequately Alleged a Conspiracy to Monopolize.</u>

Fairly construed in light of the persistent references to the combined market shares of the so-called "Uber Agencies" that permeate the FAC, it appears that Plaintiff's primary antitrust theory is that UTA and the other "Uber Agencies" have conspired to monopolize the market for scripted television series.  To state an actionable claim for conspiracy to monopolize under Section 2 of the Sherman Act, a plaintiff must allege: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury.  *Paladin Assoc., Inc. v. Montana Power Co.,* 328 F.3d 1145, 1158 (9th Cir. 2003).

But, Plaintiff's "conspiracy to monopolize" claim in the FAC fails for the simple reason that Plaintiff has not pled, and cannot plead, the existence of any combination or conspiracy to provide *one single entity* with monopoly power.  While Plaintiff repeatedly alleges that the four so-called "Uber Agencies" *share* monopoly power, antitrust law recognizes no such theory.  And, nowhere does

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 7 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Plaintiff allege that UTA (or ICM) has conspired with any other party to provide a single entity—*one* of the four "Uber Agencies"—with monopoly power. Nor could Plaintiff ever do so under the "plausibility" test of *Twombly* and *Iqbal*; there is no credible circumstance in which UTA or any one of the other so-called "Uber Agencies" would agree to confer monopoly power on one of its direct competitors.

"To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition." *Rebel Oil Co. v. Atl. Richfield Co.,* *51 F.3d 1421, 1443 (9th Cir. 1995)* (emphasis in original). As the U.S. District Court for the District of Columbia has explained:

> The very phrase "shared monopoly" is paradoxical; when a small number of large sellers dominates a market, this typically is described as an oligopoly. In enacting the prohibitions on monopolies, Congress was concerned about the "the complete domination of a market by a single economic entity," and therefore did not include "shared monopolies" or oligopolies within the purview of Section 2.

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.,* 926 F. Supp. 2d 36, 46 (D.D.C. 2013) (emphasis in original). Thus, even accepting all of Plaintiff's allegations as true—to wit, that the so-called "Uber Agencies" have conspired to share market power among them—Plaintiff has failed to allege conduct that violates Section 2 of the Sherman Act. As the court in *Oxbow Carbon* explained, "*competitors*, by conspiring to maintain or create an oligopoly, do not run afoul of the Section 2 prohibitions against monopoly." *Id.* (emphasis in original).

Courts have, therefore, repeatedly dismissed Section 2 claims based on a "shared monopoly" theory. *See, e.g.*, *Int'l Longshore and Warehouse Union v.* *ICTSI Oregon, Inc.,* 15 F. Supp. 3d 1075, 1096-97 (D. Ore. 2014) (dismissing Section 2 claim where plaintiff had failed to allege a conspiracy to create a monopoly for any *single* entity); *Terminalift LLC v. Int'l Longshore & Warehouse* *Union Local 29,* No. 11-CV-1999, 2013 WL 2154793, at *4 (S.D. Cal. May 17, 2013)* ("Because PMA members compete against each other, the alleged conspiracy

1  would create a 'shared monopoly' or oligopoly.  Such conduct is not a violation of

2  section 2."); *Standfacts Credit Servs., Inc. v. Experian Information Solutions, Inc.,*

3  *405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005)* (dismissing conspiracy to monopolize

4  claim where plaintiffs "fail[ed] to allege a specific intent by Defendants to empower

5  one of them with monopoly power").

6      Accordingly, even accepting all of Plaintiff's allegations as true, Plaintiff has

7  alleged, at most, a conspiracy to create an oligopoly consisting of four large talent

8  agencies.  Plaintiff thus has not alleged a conspiracy to commit any action in

9  violation of Section 2 of the Sherman Act, and its antitrust claim should be

10  dismissed.

11          2.     Plaintiff Has Not Pled Sufficient Market Share to Assert an

12                 Attempted Monopolization Claim.

13     Giving Plaintiff the benefit of all doubt, it is possible, though unlikely, that

14  instead of a conspiracy to monopolize, Plaintiff is attempting to plead a claim under

15  the alternative Section 2 theory of "attempted monopolization."  That claim,

16  however, fares no better than the conspiracy to monopolize claim.

17     To state a claim for attempted monopolization, a plaintiff must allege four

18  elements: (1) a specific intent to control prices or destroy competition; (2) predatory

19  or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous

20  probability of achieving "monopoly power"; and (4) causal antitrust injury.  *See*

21  *Rebel Oil*, 51 F.3d at 1434.  In this instance, in addition to failing to plead antitrust

22  injury for the reasons set forth below (*see* Section IV.A.3, *infra*), Plaintiff has not

23  pled, and cannot plead, that there exists a dangerous probability that UTA could

24  achieve monopoly power.

25     As the Ninth Circuit explained in *Rebel Oil*, in the context of attempted

26  monopolization claims, "a market share of 30 percent is presumptively insufficient

27  to establish the power to control price."  *Rebel Oil*, 51 F.3d at 1438 (internal citation

28  omitted).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 9 -

MEMORANDUM ISO UNITED TALENT AGENCY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, Plaintiff appears to assert that there are three relevant markets: a market for "scripted series staffing," a market for "scripted series term deals," and a market for "packaged scripted shows."  *See* FAC ¶¶ 71-73.[3]  While Plaintiff asserts that the four so-called "Uber Agencies" *together* control large percentages of each relevant market, the four agencies' aggregated market shares are not relevant here.  While "[t]he aggregation of market shares of several rivals is justified if the rivals are alleged to have conspired to monopolize," *Rebel Oil*, 51 F.3d at 1437, as set forth in Section IV.A.1 above, Plaintiff has not alleged a conspiracy to provide any single entity with monopoly power.  Thus, only the market shares of the individual defendants in this case are relevant.

Critically, although Plaintiff has gone to considerable effort to measure UTA's market share in these three putative markets, the market shares of UTA alleged by Plaintiff to not approach the requisite threshold for a cognizable attempted monopolization claim.  UTA's (and ICM's) market shares, as alleged by Plaintiff, are as follows:

|  | UTA Alleged Market Share | ICM Alleged Market Share |
|---|---|---|
| Scripted Series Staffing | 22% | 10% |
| Scripted Series Term Deal | 23% | 10% |
| Packaged Scripted Series | 18% | 8% |

---

[3] In reality, Plaintiff has more likely alleged a single market for "scripted series television" and three different measures of market share.  This is, of course, but one of the problems with Plaintiffs' market allegations, but we take Plaintiff's allegations as true for purposes of this motion.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 10 -

MEMORANDUM ISO UNITED TALENT AGENCY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   FAC Exhs. C, F, H.  Moreover, nothing in Plaintiff's allegations suggests that UTA,

2   ICM, or any other talent agency has any dangerous probability of achieving

3   monopoly power.  Indeed, the exhibits to Plaintiff's complaints show that, while

4   competition among talent agencies may have consolidated over time, competition

5   remains robust, with no single firm controlling more than 34% of any of Plaintiff's

6   asserted markets.  *See* FAC Exhs. A-J.

7        Given these market shares, Plaintiff cannot state a plausible claim for

8   attempted monopolization against UTA.  *See, e.g.*, *ChriMar Sys., Inc. v. Cisco Sys.,*

9   *Inc.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014) (granting motion to dismiss

10  attempted monopolization counterclaim where defendant had failed to allege

11  sufficient market power).  There are no allegations in the FAC that would suggest

12  that UTA itself has the power to control output or increase prices to talent, or that

13  there otherwise exists a dangerous probability that the insufficient market shares

14  attributed to UTA in the pleading could rise to comprise market power.  To the

15  contrary, the FAC identifies several strong competitors to UTA among the "Uber

16  Agencies," two of which—CAA and WME—have even larger market shares than

17  UTA.  The FAC makes absolutely no claim, nor could it, that if UTA determined to

18  raise its prices to talent in the entertainment industry, talent could not depart UTA

19  and sign with its larger (or, for that matter, smaller) rivals.  Nothing in the FAC

20  alleges that that there is anything intrinsic to the "scripted series television" market

21  preventing clients from moving from agency to agency, or that UTA's rivals, ICM,

22  WME, or CAA, are capacity constrained and could not and would not readily

23  provide services to UTA's clients if the opportunity presented itself.

24       Accordingly, as a matter of law, Plaintiff has not stated and cannot state a

25  claim against UTA for attempted monopolization in violation of § 2 of the Sherman

26  Act.

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 11 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

3.    Plaintiff Has Not Adequately Pled Causal Antitrust Injury.

Regardless of what variant of claim Plaintiff is attempting to assert under Section 2, Plaintiff's claim should be dismissed for failure to adequately plead the required element of "antitrust injury," defined as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick*, 429 U.S. at 489; *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003). Causal antitrust injury "is an element of all antitrust suits brought by private parties." *Rebel Oil*, 51 F.3d at 1433. Antitrust injury involves harm to the process of competition and to consumer welfare, and not harm to individual competitors. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 901 (9th Cir. 2008). "[I]t is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition." *Rebel Oil*, 51 F.3d at 1433 (citing *Atl. Richfield Co. v. USA Petroleum, Inc.*, 495 U.S. 328, 334 (1990)). There can be no antitrust injury where the conduct at issue is "beneficial or neutral to competition." *Id.*

That is the case here. Plaintiff's antitrust claim is based on its repeated assertions that the packaging deals offered by UTA and other large agencies foreclose smaller agencies, like Plaintiff, from competing effectively in the marketplace. *See, e.g.*, FAC ¶ 28. But the antitrust laws serve to protect vigorous competition and consumer welfare, and not to protect individual competitors. As the Ninth Circuit explained in *Rebel Oil*:

> Of course, conduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare. Consumer welfare is maximized when economic resources are allocated to their best use, and when consumers are assured competitive price and quality. Accordingly, an act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality.

*Rebel Oil*, 51 F.3d at 1433 (internal citations omitted) (emphasis in original).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 12 -

MEMORANDUM ISO UNITED TALENT AGENCY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, even accepting all of Plaintiff's allegations as true, it is clear that consumers of Plaintiff's services—talent seeking representation in the scripted television series market—can actually benefit from the "packaging" practices at issue in Plaintiff's First Amended Complaint.  Indeed, *Plaintiff itself alleges* that under the "packaging" arrangements at issue, talent can forgo paying the traditional commission of ten percent typically paid to smaller agencies, because UTA looks to earn its "packaging fee" from fees paid by the "studios/production companies." FAC ¶ 24.  As stated in the FAC: "In other words, Plaintiff alleges, the smaller Agencies, who charge ten percent (10%), are undercut by the largest Agencies, including UTA and ICM, who can offer to charge the prospective television client *zero.*"  FAC ¶ 83. Likewise, when describing what may be Plaintiff's true gripe – that UTA signed a specific producer who was formerly a client of Plaintiff's (i.e., "Client #1"), Plaintiff avers that ". . . . as with Client #1, a major inducement by the large Agency … was the promise of packaging on other projects and, therefore, the nonpayment of commissions by the client."  FAC ¶ 27.

However, injury flowing from a firm's inability to compete with its competitor's lower prices, or other advantageous benefits, is not injury flowing from anticompetitive behavior, or, in the parlance of antitrust law, "injury of the type the antitrust laws were designed to prevent."  If Plaintiff has suffered business losses because, with only a few clients, it cannot compete with the larger agencies and their ability to "package" and forgo a 10% commission because they have more extensive talent rosters, that is not cognizable antitrust injury as a matter of law.  *Pool Water Prod. v. Olin Corp.,* 528 F.3d 1024,1035  (9th Cir. 2001) ("The Supreme Court has made clear, however, that a decrease in profits from a reduction in a competitor's prices, so long as the prices are not predatory, is not an antitrust injury.")[4]  Nor is

---

[4] On several occasions in the FAC, Plaintiff conclusorily accuses UTA and ICM of "predatory pricing," by reason of their offering packaging opportunities to their clients.  But there are no specific factual allegations s supporting this conclusory label – i.e., that UTA or ICM are pricing their services below an

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 13 -

MEMORANDUM ISO UNITED TALENT AGENCY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   this circumstance unique:  smaller stationary stores frequently have difficulty

2   competing with Staples or Office Depot; small hardware stores often cannot match

3   the lower prices of Lowe's or Home Depot.  But, antitrust law does not provide a

4   remedy.  To hold otherwise would stand antitrust law on its head and make it the

5   vehicle to protect competitors, not competition.[5]

6        In sum, Plaintiff has not alleged, and cannot allege, that UTA's packaging

7   practices have raised the price of goods above competitive levels or diminished their

8   quality, as required under the antitrust laws.  *See Rebel Oil*, 51 F.3d at 1433.

9   Indeed, the opposite is true – Plaintiff complains of UTA's *lower* prices.

10  Accordingly, Plaintiff's first claim for relief should be dismissed on the additional

11  ground that Plaintiff has failed to allege antitrust injury.  *See, e.g.*, *LiveUniverse, Inc.

12  v. MySpace, Inc.*, 304 Fed. App'x 554, 557 (9th Cir. 2008) (affirming dismissal of

13  antitrust claim based on failure to adequately allege antitrust injury).[6]

14

_____

15  appropriate measure of their costs (*see, e.g.*, *Brooke Group Ltd. v. Brown &
    Williamson Tobacco Corp.*, 509 U.S. 209 (1993)).  Indeed, the FAC alleges the

16  opposite – to wit, that UTA and ICM have, by using packaging deals, shifted the

17  costs of commissions from talent to studios and production companies in the form of
    license fees.  FAC ¶ 24.

18      [5] Beyond a stray and conclusory allegation that "Plaintiff offers the same, or
    higher, quality individual Agency representation experience per commission dollar

19  paid as UTA or ICM do," FAC ¶ 95, Plaintiff does *not* allege that the "packaging"
    deals and representation provided by UTA and other agencies are in any way lower

20  in quality than those offered by smaller agencies.  Nor does or could Plaintiff
    plausibly allege UTA's packaging deals have affected output in the television

21  business, given the multiplicity of offerings in today's television market.  Indeed, if
    anything, the statistics proffered by Plaintiff in the FAC show that output has

22  *increased* with the advent of packaging deals.  *Compare, e.g.*, FA Exhs. E and F
    showing 373 scripted term deals in 2001-02 and 393 scripted term deals in 2014-15.

23  Finally, Plaintiff cites no facts to support its conclusory assertions that Defendants'
    conduct has made it more difficult for talent to find representation.  Plaintiff itself

24  alleges that the number of licensed talent agencies has actually *grown* in the last
    decade.  FAC ¶ 71.

25      [6] While Plaintiff makes repeated references to inflammatory and irrelevant
    statistics regarding the "lack of diversity and creativity" in television programming,

26  *see, e.g.*, FAC ¶ 30, these are not injuries of the type the antitrust laws were intended

27  to prevent, nor otherwise the concern of antitrust law.  The Court should ignore
    Plaintiff's efforts to bias the antitrust inquiry with irrelevant and unproven

28  accusations about diversity that have no bearing on the possible presence of a
    Section 2 violation.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 14 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

4.     Leave to Amend Should Not Be Granted.

As set forth above, Plaintiff's antitrust claim suffers from numerous, independent fatal infirmities.[7]  Those flaws are fundamental to the claims and cannot be remedied by an amendment.  Accordingly, Plaintiff's antitrust claim should be dismissed with prejudice and without leave to amend.  *See Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1098 (C.D. Cal. 2007) (dismissing antitrust claims with prejudice where conduct at issue "did not have any adverse effects on competition or innovation," and "[n]o additional pleading or discovery [would] alter this reality").

**B.     Plaintiff's Third Cause of Action for Intentional Interference with Contract Should Be Dismissed.**

Plaintiff's allegations within the Third Cause of Action for Intentional Interference with Contract are devoid of specific facts concerning the alleged contract that forms the basis for intentional interference.  As a result of this glaring deficiency, the cause of action is not properly pleaded.

To state a cause of action for intentional interference with contract, Plaintiff must allege facts sufficient to establish the following elements: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990); *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 448 (1993).

---

[7] In addition to the fatal defects in Plaintiff's antitrust pleading outlined above, for the reasons outlined in Section C of Defendant ICM's Memorandum of Point and Authorities in support of its Motion to Dismiss, which are equally applicable to UTA (and which are incorporated by this reference but not repeated in full to avoid duplication), Plaintiff has failed to adequately plead sufficient facts defining the formation and operation of any conspiracy or any overt acts in furtherance of such a conspiracy.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 15 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Within Plaintiff's FAC, Plaintiff alleges summarily only that Plaintiff and Client #1 had a valid, exclusive contract and that Defendant UTA had knowledge of the contract, had been given notice of Plaintiff's complete exclusive client list, and had unabated access to Plaintiff's complete exclusive client list.  FAC ¶¶ 128-129. Other than a passing statement in the FAC alleging that Client #1 "had been signed with Plaintiff for approximately four (4) years," FAC ¶ 21, Plaintiff does not allege anything beyond conclusory statements regarding the alleged, critical contract upon which this cause of action rests.

In fact, Plaintiff alleges insufficient facts to establish a valid contract between Plaintiff and Client #1, giving rise to a sustainable cause of action for intentional interference with contract.  Plaintiff does not allege whether the contract was oral or written, the particular terms of the contract, whether it was terminable by any party or with the passage of time, or other necessary components of a valid contract. Moreover, Plaintiff alleges insufficient facts to establish that Defendant UTA possessed the requisite knowledge of the contract between Plaintiff and Client #1, as required under the elements for a cause of action of intentional interference with contract.

Additionally, according to Plaintiff's allegations, Client #1 freely terminated her contract with Plaintiff when she simply "informed Plaintiff that she no longer wished to be represented by Plaintiff."  FAC ¶¶ 21-22.  Hence, Client #1 was not contractually bound to representation by Plaintiff at the time.  Since Plaintiff does not assert Client #1's termination constituted a breach of contract or interference with an enforceable contractual relationship, Plaintiff fails to allege a viable interference with contract claim.

Plaintiff's Third Cause of Action does not meet the pleading standard under Federal Rule of Civil Procedure 8, as it does not give Defendant UTA sufficient notice of what the claim is and the grounds upon which it rests. *Neizil v Williams,*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 16 -

MEMORANDUM ISO UNITED TALENT AGENCY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  543 F. Supp. 899 (M.D. Fla. 1982).  Accordingly, the Third Cause of Action should

2  be dismissed.

3    C.    **Plaintiff's Fourth Claim for Intentional Interference with**

4        **Prospective Economic Advantage Should Be Dismissed.**

5        In its fourth claim, Plaintiff alleges intentional interference with prospective

6  economic advantage against Defendants.  The deficiencies with Plaintiff's first

7  claim under the Sherman Act render this cause of action equally meritless.

8  Intentional interference with prospective economic advantage is not properly pled

9  without an underlying and independent wrongful act.  Plaintiff's reliance on the

10  defective Sherman Act violation as the purported wrongful act by definition renders

11  defective its allegation of intentional interference with prospective economic

12  advantage.

13        A plaintiff seeking to recover for an alleged interference with prospective

14  contractual or economic relations must plead and prove as part of its case-in-chief

15  that the defendant not only knowingly interfered with the plaintiff's expectancy, but

16  engaged in conduct that was wrongful by some legal measure other than the fact of

17  interference itself.  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376,

18  393 (1995); *see also Lemmer v. Charney*, 195 Cal. App. 4th 99 (2011).  In fact, in a

19  claim for intentional interference with prospective economic advantage, a defendant

20  must have engaged in intentionally wrongful acts designed to disrupt a plaintiff's

21  relationship.  That requires a plaintiff to plead (1) that the defendant engaged in an

22  independently wrongful act, and (2) that the defendant acted either with the desire to

23  interfere or the knowledge that interference was certain or substantially certain to

24  occur as a result of its action.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

25  4th 1134, 1164-1165 (2003).  An act is independently wrongful if it is unlawful,

26  which means that it must be conduct proscribed by some constitutional, statutory,

27  regulatory, common law, or other determinable legal standard.  *Id.* at 1159.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 17 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   In the present action, at Paragraph 138 of the FAC, Plaintiff alleges that

2   "Defendants engaged in wrongful acts through its unlawful, unfair, and predatory

3   practices in violation of the Sherman Act, as more fully set forth above."  No doubt

4   this simple and conclusory allegation is meant to meet the above requirement for

5   pleading interference with prospective economic advantage with the commission of

6   an independent and wrongful act.  However, since Plaintiff's first cause of action for

7   a Sherman Act violation lacks legal merit for the reasons set forth above, its fourth

8   cause of action for intentional interference with prospective economic advantage

9   must fail for the same reasons.

10   **D.   Plaintiff's Second Claim for Violation of Section 17200 Should Be**

11   **Dismissed.**

12   Plaintiff also alleges claims under Section 17200 of the California Business

13   and Professions Code, known as California's Unfair Competition Law ("UCL").

14   "Because Business and Professions Code section 17200 is written in the disjunctive,

15   it established three varieties of unfair competition – acts or practices which are

16   unlawful, or unfair, or fraudulent."  *Podolsky v. First Healthcare Corp.*, 50 Cal.

17   App. 4th 632, 647 (1996).  Plaintiff's claims fail under the unlawful and unfair

18   prongs of the UCL - the only prongs applicable to this action.

19   1.   Plaintiff's "Unlawful" and "Unfair" Claims Fail.

20   "The unlawful prong of the UCL 'borrows violations of other laws and treats

21   them as unlawful practices,' which the UCL then 'makes independently

22   actionable.'"  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal.

23   2012).  If the predicate legal claim supporting a violation of the unlawful prong of

24   the UCL fails, the UCL claim fails as well.  *Stearns v. Select Comfort Retail Corp.*,

25   No. 08-2746 JF, 2009 WL 1635931, *16 (N.D. Cal. June 5, 2009) (dismissing

26   unlawful prong claim because the underlying statutory violations were "subject to

27   dismissal"); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837

28   (2006) (holding that plaintiff "cannot state a violation of the UCL under the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 18 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   'unlawful' prong" because the court had rejected plaintiff's claim that conduct at

2   issue was a violation of a predicate statute).  Plaintiff alleges that Defendants'

3   conduct was unlawful because it violated the Sherman Act.  FAC ¶ 124.  As

4   demonstrated above, Plaintiff fails to allege any such violations.

5        For the same reasons, the UCL claims fail under the unfair prong.  In *Cel-*

6   *Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163,

7   182 (1999), it was held that courts may not simply impose their own notions of the

8   day as to what is fair or unfair.  Plaintiff must show a tort, violation of a statute, or

9   some other recognized duty.  *Id.*

10       Accordingly, Plaintiff's unlawful prong and unfair prong UCL claims fail as a

11  matter of law.

12            2.     Plaintiff's Claims for Restitution and Disgorgement Fail.

13       The remedy for a UCL violation is either injunctive relief or restitution.

14  *See* Cal. Bus. & Prof. Code § 17203.  "The restitutionary relief is limited to money

15  or property lost by the plaintiff and acquired by the defendant."  *Fresno Motors,*

16  *LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014), *citing*

17  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) ("Restitution under §

18  17203 is confined to restoration of any interest in money or property, real or

19  personal, which may have been *acquired* by means of such unfair competition.")

20  (emphasis in original) (internal quotation marks omitted).  Even where economic

21  injury caused by an unfair business practice involves a loss by the plaintiff, no

22  restitution is permitted without a corresponding gain by the defendant.  *Fresno*

23  *Motors, 771 F.3d at 1135*; *see also Palmer v. Stassinos*, 348 F. Supp. 2d 1070,

24  1087-89 (N.D. Cal. 2004) (UCL restitution claims dismissed where plaintiffs did not

25  show they had lost money or property, and could not rely on putative class to correct

26  said deficiency).  Plaintiff has not adequately alleged Defendants obtained a

27  monetary gain that correlated with any pecuniary loss on its part.  For this reason,

28  Plaintiff's restitution claims must be dismissed.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 19 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    Further, disgorgement is not a permissible remedy under the UCL.  As the

2  California Supreme Court has explained, "This court has never approved of

3  nonrestitutionary disgorgement of profits as a remedy under the UCL."  *Korea*

4  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003).  As Plaintiff's

5  restitution remedy fails outright, there can be no independent disgorgement remedy

6  for the purported UCL violation.  This claim must also be dismissed.

7    **E.    Plaintiff's Fifth and Sixth Causes of Action for Declaratory and**

8    **Injunctive Relief Should Also Be Dismissed.**

9    Plaintiff's Fifth and Sixth Causes of Action, for declaratory and injunctive

10  relief, respectively, each fail because they are wholly based and dependent on

11  Plaintiff's claims for violations of the Sherman Act and the UCL.  Given that neither

12  of those claims can proceed for the reasons already discussed, Plaintiff is not

13  entitled to the requested relief.  In addition, for the separate and additional reasons

14  below, these claims must be dismissed on other grounds.

15    It is well-settled that a claim for "injunctive relief," standing alone, is not a

16  cause of action.  *See, e.g., Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d

17  1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state

18  a cause of action."); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059-60

19  (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause

20  of action."); *Plan Pros, Inc. v. Zych*, No. 8:08CV125, 2009 WL 928867, at *2 (D.

21  Neb. Mar. 31, 2009) (stating that "no independent cause of action for injunction

22  exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn.

23  2008) (same); *Camp v. Board of Supervisors*, 123 Cal. App. 3d 334, 356 (1981)

24  ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of

25  action must exist before injunctive relief may be granted.").  Injunctive relief would

26  only be available if Plaintiff were entitled to such a remedy on its independent cause

27  of action for violation of the UCL.  It is not, and this claim must be dismissed

28  outright.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 20 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

The elements of a claim for declaratory relief are: (a) proper subject of declaratory relief within the scope of California Code of Civil Procedure section §1060 (relating to rights under written instruments, or rights in and over real property or a watercourse channel); and (b) an actual controversy involving justiciable questions relating to the rights or obligations of a party. *See Triburon v. Northwestern Pac. Ry. Co.*, 4 Cal. App. 3d 160, 170 (1970). Specific pleading of an actual controversy is necessary, and a plaintiff cannot establish the existence of an actual, present controversy merely by pointing to the lawsuit in which he seeks declaratory relief. *City of Cotati v. Cashman*, 29 Cal. 4th 69, 79, 80 (2002). The purpose of a declaratory relief action is to determine and declare rights and obligations of the parties to the dispute. The claim functions prospectively, and is not available to redress past wrongs. *Babb v. Superior Court*, 3 Cal. 3d 841, 848 (1971). Declaratory relief is only suitable where there is an actual controversy, not simply an abstract or academic dispute. *Connerly v. Schwarzenegger*, 146 Cal. App. 4th 739, 746 (2007). The controversy has to be of a character which acknowledges specific and definite relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical set of facts. *Sanctity of Human Life Network v. Cal. Highway Patrol*, 105 Cal. App. 4th 858, 872 (2003).

Plaintiff has not alleged sufficient facts showing an actual or justiciable controversy. As Plaintiff has not attached any contracts, it is impossible for UTA to ascertain what specific rights and obligations of the parties are being challenged by Plaintiff. In addition, the claim fails as a matter of law because it would serve only to determine the identical issues that must be resolved with respect to Plaintiff's other claims. *See Cal. Ins. Guarantee Ass'n v. Superior Court*, 231 Cal. App. 3d 1617, 1623-24 (1991) (purpose of declaratory relief is not to furnish a litigant with a second claim for the determination of identical issues); Cal. Code Civ. Proc. § 436.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 21 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  Therefore, the FAC does not state viable claims for either declaratory of injunctive

2  relief, and these claims should be dismissed.

3                          V.   **CONCLUSION**

4         For the foregoing reasons, UTA respectfully requests that the Court dismiss

5  Plaintiff's First Cause of Action for violations of Section 2 of the Sherman Act,

6  without leave to amend.  Should the Court exercise its discretion to adjudicate the

7  supplemental state law claims alleged in the Second through Sixth Causes of Action,

8  these claims, too, should be dismissed.

9

10  DATED:  August 10, 2015                Respectfully submitted,

11                                  By:  */s/ Steven A. Marenberg*
                                         IRELL & MANELLA LLP
12                                       Steven A. Marenberg (101033)
                                         smarenberg@irell.com
13                                       Melissa Sedrish Rabbani (283993)
                                         mrabbani@irell.com
14
                                         1800 Avenue of the Stars, Suite 900
15                                       Los Angeles, California 90067-4276
                                         Telephone:  (310) 277-1010
16

17                                       FREEDMAN & TAITELMAN, LLP
18                                       Bryan J. Freedman (151990)
                                         bfreedman@ftllp.com
19                                       David M. Marmorstein (192993)
                                         dmarmorstein@ftllp.com
20                                       1901 Avenue of the Stars, Suite 500
21                                       Los Angeles, California 90067
                                         Telephone:  (310) 201-0005
22

23                                       ***Attorneys for Defendant***
24                                       *United Talent Agency, LLC*

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 22 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on August 10, 2015, I caused a copy of the foregoing memorandum to be served upon the following counsel of record:

Philip J. Kaplan
philipkaplan@ca.rr.com
**Law Offices of Philip J. Kaplan**
3278 Wilshire Blvd., Suite 106
Los Angeles, California 90010
Telephone:  (213) 480-8981

Michael B. Garfinkel
mgarfinkel@perkinscoie.com
Charles H. Samel
csamel@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.843.1284

Jacqueline E. Young
JYoung@perkinscoie.com
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:  415.344.7000
Facsimile:  415.344.7050

Dated:   August 10, 2015                IRELL & MANELLA LLP

                                        FREEDMAN & TAITELMAN, LLP


                                        By: */s/  Melissa Sedrish Rabbani*
                                            Melissa Sedrish Rabbani
                                            Attorneys for Defendant
                                            United Talent Agency, Inc.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3458525

- 23 -

MEMORANDUM ISO UNITED TALENT
AGENCY'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT