1    Michael B. Garfinkel (SBN 156010)
      mgarfinkel@perkinscoie.com
2    Charles H. Samel (SBN 182019)
      csamel@perkinscoie.com
3    PERKINS COIE LLP
      1888 Century Park E., Suite 1700
4    Los Angeles, CA 90067-1721
      Telephone: 310.788.9900
5    Facsimile: 310.843.1284

6    Jacqueline E. Young, State Bar No. 280374
      JYoung@perkinscoie.com
7    PERKINS COIE LLP
      505 Howard Street, Suite 1000
8    San Francisco, CA  94105
      Telephone:  415.344.7000
9    Facsimile:  415.344.7050

10    Attorneys for Defendant
      INTERNATIONAL CREATIVE
11    MANAGEMENT PARTNERS LLC

12

13               UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16   LENHOFF ENTERPRISES, INC., a California corporation dba LENHOFF & LENHOFF, | Case No. 2:15-CV-01086-BRO (FFMx) |
| 17 | **DEFENDANT INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC'S NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES;** |
| 18           Plaintiff, | |
| 19     v. | |
| 20   UNITED TALENT AGENCY, INC., a California corporation; | |
| 21   INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC, a | [Fed. R. Civ. P. 12(b)(6)] |
| 22   Delaware limited liability company; and DOES 1 through 5, inclusive, | Date:      September 21, 2015 |
| 23           Defendants. | Time:      1:30 p.m.<br>Place:     Courtroom 14 |
| 24 | Judge:    Hon. Beverly Reid O'Connell |

25

26

27

28

## NOTICE

TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 21, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 14 of the United States District Courthouse, 312 North Spring Street, Los Angeles, California, before the Honorable Beverly Reid O'Connell, Defendant International Creative Management Partners LLC will, and hereby does, move this Court for an order dismissing the First Amended Complaint ("FAC"). Dkt. No. 8. This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the FAC fails to allege facts sufficient to state any claim upon which relief can be granted.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the [Proposed] Order Granting Defendant International Creative Management Partners LLC's Motion To Dismiss First Amended Complaint, any reply memorandum, the filings in this action, and such other matters as may be presented at or before the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 3, 2015.


DATED:  August 10, 2015

PERKINS COIE LLP

By: */s/ Michael Garfinkel*
Michael B. Garfinkel

Attorneys for Defendants
INTERNATIONAL CREATIVE
MANAGEMENT PARTNERS LLC

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS ..................... 3

APPLICABLE STANDARD OF REVIEW ........................................................... 7

ARGUMENT ...................................................................................................... 7

I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
       CONSPIRACY TO MONOPOLIZE IN VIOLATION OF SECTION 2
       OF THE SHERMAN ACT ......................................................................... 7

       A.     Plaintiff Fails To Allege That It Suffered Any Antitrust Injury ........... 8

       B.     Plaintiff's "Shared Monopoly" Theory Is Not Cognizable And
              Must Be Dismissed ...................................................................... 10

       C.     Plaintiff Fails To Allege Facts Sufficient To Plead An Antitrust
              Conspiracy ................................................................................. 12

              1.     The FAC contains no factual allegations describing the
                     formation and operation of an alleged conspiracy to
                     monopolize. ........................................................................ 12

              2.     The FAC contains no factual allegations describing any
                     overt acts in furtherance of any alleged conspiracy. ................. 15

              3.     The FAC contains no factual allegations sufficient to show
                     that ICM Partners specifically intended to monopolize an
                     antitrust relevant market. .................................................... 16

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
       UNFAIR COMPETITION IN VIOLATION OF SECTION 17200 ............. 17

       A.     Plaintiff Fails To Allege Facts Sufficient To Plead A UCL
              "Unlawful" Claim ........................................................................ 18

       B.     Plaintiff Fails To Allege Facts Sufficient To Plead A UCL
              "Unfair" Claim ............................................................................ 18

III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
       INTERFERENCE WITH PROSPECTIVE ECONOMIC
       ADVANTAGE ........................................................................................ 20

IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
       INTENTIONAL INTERFERENCE WITH CONTRACT ........................... 21

       A.     Plaintiff Fails To Allege Facts Sufficient To Plead Breach Of An
              Existing Contract ......................................................................... 21

|   | B. | Plaintiff Fails To Allege Facts Sufficient To Plead ICM Partners' Knowledge ................................................................22 |
|---|----|---|
|   | C. | Plaintiff Fails To Allege Wrongful Conduct Sufficient To Defeat the Competitor's Privilege .........................................23 |
| V. | | THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF....................................................24 |
| VI. | | THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF .........................................................25 |
| | | CONCLUSION....................................................................25 |

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
    181 F.3d 216 (2d Cir. 1999) ...................................................................... 14

*Aguilar v. Atl. Richfield Co.*,
    25 Cal. 4th 826; 107 Cal. Rptr. 2d 841 (2001) ...................................... 19

*Am. Tobacco Co. v. United States*,
    328 U.S. 781; 66 S. Ct. 1125; 90 L. Ed. 1575 (1946) ................................ 15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) ............................ 7

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*
    *Carpenters*,
    459 U.S. 519; 103 S. Ct. 897; 74 L.Ed.2d 723 (1983) .............................. 7, 22

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328; 110 S. Ct. 1884; 109 L.Ed.2d 333 (1990) ............................ 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544; 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007) ............... 7, 12, 14, 15

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ....................................................................... 8

*Carrico v. City of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) ................................................................. 7, 17

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal.4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) .............................. 18

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363, 113 Cal. Rptr. 2d 175 (2001) .................................... 18, 19

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
    72 F. Supp. 3d 1012 (N.D. Cal. 2014) ........................................................ 19

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
    2013 WL 3337676 (C.D. Cal. June 28, 2013) ........................................... 13, 14

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
   479 F.3d 1099 (9th Cir. 2007) ............................................................... 20, 21, 22

*Del Monte Int'l GmbH v. Del Monte Corp.*,
   995 F. Supp. 2d 1107 (C.D. Cal. 2014) .......................................................... 24

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376; 45 Cal. Rptr. 2d 436 (1995) ........................................... 20, 23

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................................................... 19

*Fradis v. Savebig.com*,
   2011 WL 7637785 (C.D. Cal. Dec. 2, 2011) .................................................. 25

*Harkin Amusement Enters., Inc. v. Gen. Cinema Corp.*,
   850 F.2d 477 (9th Cir. 1988) ......................................................................... 10

*Hollins v. Recontrust, N.A.*,
   2011 WL 1743291 (C.D. Cal. May 6, 2011) ............................................. 24, 25

*Howard Hess Dental Labs Inc. v. Dentsply Int'l., Inc.*,
   602 F.3d 237 (3d Cir. 2010) .......................................................................... 16

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ....................................................................... 11

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
   2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) .......................................... 13, 14

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................ passim

*Lai v. Quality Loan Serv. Corp.*,
   2010 WL 3419179 (C.D. Cal. Aug. 26, 2010) ......................................... 24, 25

*LiveUniverse, Inc. v. MySpace, Inc.*,
   304 F. App'x. 554 (9th Cir. 2008) .................................................................. 19

*Metro Indus., Inc. v. Sammi Corp.*,
   82 F.3d 839 (9th Cir. 1996) ............................................................................. 8

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   -- F.3d --, 2015 WL 4591897 (9th Cir. July 31, 2015) ................................... 15

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
202 F.3d 1088 (9th Cir. 2000) ................................................................ 14

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
926 F. Supp. 2d 36 (D.D.C. 2013) .................................................... 10, 13

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) .......................................................... 12, 16

*People v. McKale*,
25 Cal. 3d 626, 159 Cal. Rptr. 811, 602 P.2d 731 (1979) ................... 18

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002) .................................................................. 11

*Pool Water Prods. v. Olin Corp.*,
258 F.3d 1024 (9th Cir. 2001) ............................................................. 8, 9

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) .......................................................... 8, 9, 10

*Reudy v. Clear Channel Outdoors, Inc.*,
693 F. Supp. 2d 1091 (N.D. Cal. 2010) ............................................. 8, 10

*RLH Indus., Inc. v. SBC Commc'ns, Inc.*,
133 Cal. App. 4th 1277; 35 Cal. Rptr. 3d 469 (2005) .......................... 19

*RxUSA Wholesale, Inc. v. Alcon Labs.*,
391 F. App'x 59 (2d Cir. 2010) ............................................................ 10

*S.F. Design Ctr. Assocs. v. Portman Cos.*,
41 Cal. App. 4th 29; 50 Cal. Rptr. 2d 716 (1995) ............................... 23

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447; 113 S. Ct. 884; 122 L.Ed.2d 247 (1993) ....................... 16

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*,
405 F. Supp. 2d 1141 (C.D. Cal. 2005) ....................................... 10, 11, 17

*Sterling Merch., Inc. v. Nestle, S.A.*,
656 F.3d 112 (1st Cir. 2011) .................................................................. 8

*Styne v. Stevens*,
26 Cal. 4th 42; 109 Cal. Rptr. 2d 14 (2001) ........................................ 25

*Styne v. Stevens*,
   26 Cal. 4th 42; 109 Cal. Rptr. 2d 14 (2001) ........................................................ 3

*Sun Dun, Inc. v. Coca-Cola Co.*,
   740 F. Supp. 381 (D. Md. 1990) ...................................................................... 11

*Tirabassi v. Chase Home Fin., LLC*,
   2015 WL 1402016 (C.D. Cal. Mar. 24, 2015) ................................................ 24

*United Food & Commercial Workers Local 1776 & Participating*
   *Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
   74 F. Supp. 3d 1052, 2014 WL 6465235 (N.D. Cal. 2014) ....................... 10, 17

*United States v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990) .............................................................................. 8

## STATUTES/REGULATIONS

California's Unfair Competition Law,
   Bus & Prof. Code § 17200 *et seq.* ............................................................passim

California Talent Agencies Act, Labor Code § 1700, *et seq.*.................................. 3

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 7

## OTHER AUTHORITIES

ICM Partners, *About Us*, http://www.icmpartners.com/ ........................................ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Under the guise of an antitrust lawsuit, Plaintiff Lenhoff Enterprises, Inc. dba Lenhoff and Lenhoff ("Plaintiff") is attempting to use the court system to complain about the freedom of television industry artists— directors, writers, and actors—to exercise their individual rights to choose the talent agencies that will represent them; express frustration in its inability to prevent clients from choosing to leave its agency for other agencies; and articulate its own social policy observations about the television industry that Plaintiff speculates are somehow connected to its criticisms about competition.  Notably, there is no allegation that competition has been reduced or that consumers have been harmed, and as a result, this lawsuit does not implicate antitrust, and likewise fails to state a cause of action for tortious interference, unfair competition, or any other legally cognizable claim.  Indeed, Plaintiff's chief complaint is that it has been disadvantaged in its ability to attract, win, and retain clients because other agencies, in effect, offer more opportunities and charge lower commissions.  However, that is a common refrain heard from competitors in every industry whenever rival firms compete for customers by offering lower prices or other benefits, and, in fact, is the very nature and goal of fair competition and a free market economy.

Specifically, Plaintiff complains that it failed to retain two clients—Client #1 hired Defendant United Talent Agency, Inc. ("UTA") and Client #2 engaged International Creative Management Partners LLC ("ICM Partners").  Plaintiff implicitly concedes, by not alleging otherwise, that each client was free to discharge Plaintiff at any time (that is, the clients were not under a term agreement and could terminate Plaintiff's representation at will).  Plaintiff contends that UTA and ICM Partners used the lure of "packaging" to induce the clients to leave.  Packaging allows a talent agency to receive compensation (called "a package fee") on a television series directly from the producer of the series in lieu of the standard

ten percent (10%) agency commission from its artist-clients.  Plaintiff acknowledges packaging has long been approved by the guilds representing the artists' interests (such as the Directors Guild of America), but complains that the two clients left for larger agencies because they have more packages and therefore more opportunities to get employment for their clients on package series, while saving the clients commissions.

Plaintiff's claim for conspiracy to monopolize under Section 2 of the Sherman Act fails because Plaintiff cannot plead antitrust injury.  Rather than alleging any harm to consumers, as required for a private plaintiff to state a claim, Plaintiff concedes that artists are paying lower commissions.  Plaintiff is complaining about harm to competitors, not harm to competition.  In any event, the amended complaint does not allege facts sufficient to show the formation and operation of any antitrust conspiracy, and Plaintiff affirmatively alleges that UTA, ICM Partners, and two other agencies planned to share market power, rather than vest monopoly power in a single agency, which is a necessary element of the cause of action that Plaintiff purports to assert under Section 2.  Thus, the Court must dismiss Plaintiff's federal antitrust claim.

Plaintiff's state law claims fare no better.  The amended complaint fails to state a claim for violation of the California Unfair Competition Law ("UCL") because Plaintiff fails to allege any unlawful act by ICM Partners, and since the Plaintiff and ICM Partners are competitors, Plaintiff cannot state a claim under the unfairness prong of the UCL because its antitrust and conspiracy allegations fail to state a claim as a matter of law.  Similarly, the competitor's privilege bars Plaintiff's alleged claim for tortious interference with prospective economic advantage because the amended complaint fails to allege any wrongful act apart from the alleged interference itself.  And, since Plaintiff fails to plead facts to show that ICM Partners breached an existing contract, or that it had knowledge of the

1    alleged contract between Plaintiff and Client #2, its claim for tortious interference

2    fails as a matter of law, in addition to being barred by the competitor's privilege.

3          Finally, Plaintiff's request for a declaration that packaging violates the

4    California Talent Agencies Act (TAA) is misguided.  The TAA regulates talent

5    agencies and is enforced and interpreted by the California Labor Commissioner.

6    *Styne v. Stevens*, 26 Cal. 4th 42, 53; 109 Cal. Rptr. 2d 14 (2001).  As Plaintiff

7    concedes, since at least 1959, the Labor Commissioner has consistently concluded

8    that packaging falls outside the TAA and, therefore, cannot be in violation of the

9    TAA.

10         For all of these reasons, the Court should grant ICM Partners' motion, and

11   since Plaintiff has already amended its complaint, and any further amendment

12   would be futile, the Court should dismiss this action with prejudice.

13                **FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

14         Formed in 1975,[1] ICM Partners is one of the world's most well-respected

15   talent and literary agencies, representing clients in motion picture, television,

16   books, music, live performance, branded entertainment, and new media, and

17   employing hundreds of talent agents in locations worldwide.  Despite ICM

18   Partners' reputation and status, competition among talent agencies remains

19   vigorous in all fields, with many hundreds of agencies competing for the same

20   clients, and no one agency achieving any dominance over other agencies.  *See, e.g.*,

21   Dkt No. 8 ("FAC") ¶ 41 (alleging that there are 611 competing agencies); *id.* Exs.

22   A-H (indicating large number of existing agencies and that no one agency is

23   dominant).

24         Plaintiff is a talent agency established in 1997 that consists of two agents.

25   FAC ¶¶ 6, 8.  On February 13, 2015, Plaintiff filed suit in this Court against ICM

26

27         [1] ICM Partners, *About Us*, http://www.icmpartners.com/ (last visited Aug.
     10, 2015).  ICM Partners' predecessor entity was formed in 1975 through the
28   merger of Creative Management Associates and International Famous Agency.

DEF. ICM PARTNERS' NOT. OF MOTION AND MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

1   Partners, along with one of its competitors, UTA (collectively, "Defendants"),

2   alleging claims under Section 2 of the Sherman Act, California's Unfair

3   Competition Law, Intentional Interference with Contract, Intentional Interference

4   with Prospective Economic Advantage, Declaratory Relief, and Injunctive Relief.

5   *See generally* Dkt. No. 3.  Plaintiff never served that initial complaint but instead

6   filed an amended complaint alleging identical causes of action.  *See* FAC ¶¶ 117-

7   48.

8           ***"Poaching" Allegations***

9           In the FAC, Plaintiff identified two of its clients as "Client #1" and "Client

10  #2," with whom Plaintiff allegedly had "exclusive" contracts.  *Id.* ¶¶ 8, 26, 128.

11  Plaintiff claims, without any factual support, that ICM Partners "had knowledge of"

12  these contracts because it "had unabated access to Plaintiff's complete exclusive

13  client list" at some undisclosed point in time.  FAC ¶ 129.  Further, although

14  Plaintiff claims to have had an "exclusive" contract with Client #2, Plaintiff fails to

15  allege any of the specific circumstances of this "exclusive contract," such as

16  whether it was written or oral, whether it was a term contract or at-will, or any other

17  meaningful terms of the contract.

18          Sometime in June 2014, Plaintiff alleges that Client #2 "terminat[ed] his

19  exclusive contract with Plaintiff . . . ."  FAC ¶¶ 26.  Although Plaintiff suggests that

20  Client #2 breached the contract by terminating, Plaintiff does not allege how this

21  was so.  *See* FAC ¶ 131 ("Defendants actually induced the breach of its clients").

22  Client #2 departed, Plaintiff claims, because ICM Partners offered the client lower

23  commissions and work.  FAC ¶¶ 26-27, 91, 130-32, 137, 139 (alleging that ICM

24  Partners "poached" Client #2 with "the promise of packaging on other projects and,

25  therefore, the nonpayment of commissions by the client" and by "[advising] Client

26  #2 that, if he terminated Plaintiff, he would be hired by [a particular] Employer").

27  As a result, Plaintiff alleges claims for intentional interference with contract and

28  with prospective economic advantage against ICM Partners.  *Id.* ¶¶ 127-41.

*"Conspiracy" Allegations*

Like many talent agencies (including Plaintiff), ICM Partners is a member of the Association of Talent Agents ("ATA"), a non-profit trade association for talent agents. *Id.* ¶ 41.  Plaintiff alleges that, among other things, ATA has historically negotiated on behalf of its members with artists guilds, such as the Screen Actors' Guild ("SAG") to execute franchise agreements governing the relationships between ATA and SAG members, including former Rule 16(g).  *Id.* ¶ 40 ("Rule 16(g) was the franchise agreement between SAG and the Association of Talent Agents ('ATA') until 2002 . . . .").  According to Plaintiff, among other terms, the franchise agreement contained internal regulations, such as a rule requiring agents "to be independent," which regulation meant that agents could not "possess any financial interest in a production or distribution company or vice versa." *Id.* ¶ 43.

Plaintiff alleges that "[o]n or about October 20, 2000, the SAG/ATA [franchise] agreement ['Rule 16(g)'] expired." *Id.* ¶ 44 (second alteration added).  For approximately a year and a half thereafter, "a contractual 15-month period ensued," while SAG and ATA engaged in arm's length negotiations to execute a new franchise agreement, including "attempting to negotiate the issue of 'financial interest.'" *Id.* ¶ 45.  While the negotiations initially appeared to be successful, with the parties forming a "tentative agreement" in February 2002, negotiations terminated shortly thereafter when, "[o]n April 20, 2002, this tentative agreement was submitted for approval to SAG's members and [was] rejected." *Id.* ¶ 47.

Despite the facts that Rule 16(g) terminated under its own terms, and that it was SAG, *and not ATA*, that rejected the tentative agreement, Plaintiff alleges that ICM Partners, UTA, and two of their fiercest competitors: William Morris Endeavor Entertainment ("WME"), and Creative Artists Agency ("CAA") (collectively with Defendants, the "Agencies") "conspired and agreed, amongst themselves, that it was in their best interests to proceed without Rule 16(g)" and that "in bringing about the demise of Rule 16(g), the intent of Defendants UTA,

ICM, as with the other Agencies, was to destroy competition and to build a monopoly of [Agencies]." *Id.* ¶¶ 50-51.  Notably, however, although Plaintiff claims—on information and belief—that the Agencies "exercise effective control over the ATA Board of Directors" and that "ATA's Strategic Planning Committee . . . consisted of representatives from [the Agencies]," the FAC does not specify how the Agencies could or did "bring about the demise of Rule 16(g)," even from their alleged positions of power within ATA.  FAC ¶¶ 41, 49-51.

Nevertheless, Plaintiff alleges that as a result of "the choreographed 'planned implosion' of Rule 16(g)," the Agencies, together, "control[] 79% of the 2014/2015 scripted series staffing market," "91% of the 2014/2015 scripted series term deal market," and "93% of the scripted series market." *Id.* ¶¶ 71-73; *but see id.* ¶ 84 ("Agencies . . . control 96% of the market"); *id.* ¶ 98 ("Agencies possess monopoly power in the scripted series marketplace, as demonstrated by their 76% market share of scripted series staffing, a 91% market share of term deals at the studios and networks, and a 93% market share of scripted series packaging . . . .").  Individually, Plaintiff alleges, ICM Partners has only 10% or less of the alleged relevant market; UTA has 23% or less; WME has 34% or less; and, CAA has 33% or less.  FAC Exs. C, F, H.

Elsewhere in the FAC, Plaintiff alleges that the Agencies "engage in 'predatory pricing.'" FAC ¶ 83 (emphasis original).  In other words, according to the FAC, "the smaller Agencies, who charge ten percent (10%), are undercut by the largest Agencies, including UTA and ICM [Partners], who can offer to charge the prospective television client zero." *Id.*  Setting buzz words aside, however, nowhere in the FAC does Plaintiff support its predatory pricing allegation with any facts demonstrating that the Agencies price below cost.  To the contrary, Plaintiff affirmatively alleges that the Agencies' package arrangements are profitable for the Agencies, which means, by definition, there is no allegation of below-cost pricing. *See e.g.*, FAC ¶¶ 24, 28.

## APPLICABLE STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955, 1965; 167 L. Ed. 2d 929 (2007). The allegations must "plausibly suggest[]," and not merely be consistent with, claimed wrongful conduct. *Id.* at 557. While specific factual allegations are assumed to be true, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937, 1949-50; 173 L. Ed. 2d 868 (2009). It is improper to assume that a plaintiff "can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526; 103 S. Ct. 897, 902; 74 L.Ed.2d 723 (1983).

In the antitrust context, both the Supreme Court and the Ninth Circuit have made clear that a general allegation of conspiracy is insufficient. Instead, "to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565 n.10).

Finally, a complaint may be dismissed without leave to amend "if amendment would be futile." *Carrico v. City of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## ARGUMENT

## I. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONSPIRACY TO MONOPOLIZE IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT

Plaintiff's claim for conspiracy to monopolize in violation of Section 2 suffers from three separate fatal defects. The complaint does not allege that

1    Plaintiff suffered any antitrust injury; its theory that defendants attempted to

2    establish a "shared monopoly" with other companies is not legally cognizable; and

3    it fails to allege facts sufficient to support the inference of a conspiracy.  Any one of

4    those defects is an independent basis for dismissing Plaintiff's claim.

5            A.      **Plaintiff Fails To Allege That It Suffered Any Antitrust Injury**

6            "It can't be said often enough that the antitrust laws protect competition, _not_

7    competitors." *United States v. Syufy Enters.*, 903 F.2d 659, 668 (9th Cir. 1990)

8    (emphasis original).  To sustain a private right of action for an alleged antitrust

9    violation, a private plaintiff must plead and prove that it has suffered an "antitrust

10   injury." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012).

11   Antitrust injury is "injury of the type the antitrust laws were intended to prevent and

12   that flows from that which makes the defendant's acts unlawful." *Atl. Richfield Co.*

13   *v. USA Petroleum Co.*, 495 U.S. 328, 334; 110 S. Ct. 1884; 109 L.Ed.2d 333 (1990)

14   (*ARCO*)).  The Supreme Court has described this requirement for a private plaintiff

15   to state an antitrust claim as "ensur[ing] that a plaintiff can recover only if the loss

16   stems from a competition-*reducing* aspect or effect of the defendant's behavior."

17   *Id.* at 343 (emphasis original).  But "while 'conduct that eliminates rivals reduces

18   competition,' 'reduction of competition does not invoke the Sherman Act until it

19   harms consumer welfare.'" *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 848

20   (9th Cir. 1996) (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th

21   Cir. 1995)).  In other words, to state a claim, a private plaintiff must allege facts

22   that plausibly demonstrate harm not to competitors but to consumers, meaning an

23   increase in price or reduction in output.  *Sterling Merch., Inc. v. Nestle, S.A.*, 656

24   F.3d 112, 121 (1st Cir. 2011); *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp.

25   2d 1091, 1128 (N.D. Cal. 2010); *see also Rebel Oil*, 51 F.3d at 1433.  In this regard,

26   "a decrease in profits from a reduction in a competitor's prices, so long as the prices

27   are not predatory, is not an antitrust injury." *Pool Water Prods. v. Olin Corp.*, 258

28   F.3d 1024, 1035 (9th Cir. 2001); *cf. ARCO*, 495 U.S. at 340 ("Low prices benefit

-8-

1   consumers . . . and so long as they are above predatory levels, they do not threaten

2   competition. Hence, they cannot give rise to antitrust injury.").

3       Here, Plaintiff's sole alleged injury is that ICM Partners' "poached" a single

4   client from Plaintiff. FAC ¶¶ 26-27, 91. ICM Partners allegedly did so, not by

5   engaging in any anticompetitive behavior, but rather by offering this client lower

6   commissions—in fact, no commissions. *Id.* This is perhaps a classic example of

7   conduct that benefits consumers (in this case the artist-clients) and enhances

8   competition, not harms it. Indeed, the ability to offer lower commissions is a mark

9   of more vigorous competition, not less. *See, e.g.*, *Pool Water Prods.*, 258 F.3d at

10   1035; *see also ARCO*, 495 U.S. at 340. Plaintiff alleges that the conduct it

11   challenges has resulted in a "lack of diversity and creativity" in television

12   programming, *see, e.g.*, FAC ¶ 30, but does not claim (nor could it) that

13   competition among the Agencies has been lessened as a result. Thus, Plaintiff's

14   alleged injury is not "of the type the antitrust laws were intended to prevent."

15   *ARCO*, 495 U.S. at 334. Plaintiff therefore lacks the necessary antitrust injury to

16   challenge Defendant's alleged conduct, and its Sherman Act claim fails as a matter

17   of law.[2]

18

19

20       [2] Although Plaintiff peppers its complaint with antitrust buzz words, such as
"predatory pricing," (*see* FAC ¶¶ 73, 83-84, 104), it fails to allege any facts to

21   sustain a predatory pricing claim. Nowhere in the FAC does Plaintiff allege that
Defendants priced below cost or had a dangerous probability of recouping their

22   losses by charging supracompetitive prices after the fact. *See, e.g.*, *Rebel Oil*, 51
F.3d at 1433-34 (describing two "stages" of predatory pricing, including a "price

23   war" stage in which defendant "prices below its marginal cost hoping to eliminate
rivals," followed by a "recoupment" stage in which defendant "can collect the fruits

24   of the predatory scheme by charging supracompetitive prices"). Indeed, the FAC
affirmatively alleges that packaging fees are profitable, and therefore, Plaintiff

25   cannot plausibly allege that Defendants are pricing below their costs. *E.g.*, FAC ¶¶
24, 28. Similarly, it is implausible to suggest that recoupment would be possible in

26   an industry with vigorous competition, no dominant firm, and insufficient economic
barriers to prevent entry by new agencies or expansion of output by existing ones.

27   *See, e.g.*, FAC ¶ 41 (alleging that there are 611 competing agencies); *id.* Exs. A-H
(indicating large number of existing agencies and that no agency is dominant in the

28   market).

### B.   Plaintiff's "Shared Monopoly" Theory Is Not Cognizable And Must Be Dismissed

A claim for Section 2 conspiracy to monopolize also requires Plaintiff to plead that Defendants sought to confer monopoly power on a *single* firm.  Courts have rejected the "shared monopoly" or "joint monopolization" theory, under which a group of firms that, together, allegedly possess monopoly power (in other words, an oligopoly) can be found liable for joint monopolization.  *See, e.g.*, *RxUSA Wholesale, Inc. v. Alcon Labs.*, 391 F. App'x 59, 61 (2d Cir. 2010) (affirming dismissal of Section 2 claims); *Reudy*, 693 F. Supp. 2d at 1127 (dismissing Section 2 claims alleging that two companies shared monopoly because "Section 2 of the Sherman Act does not punish behavior aimed at creating or maintaining oligopolies"); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F. Supp. 2d 36, 45-46 (D.D.C. 2013) (dismissing Section 2 claims and agreeing with "vast majority of other courts" in concluding that a "shared monopoly" cannot support a Section 2 claim); *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005) (dismissing Section 2 claims); *cf. Rebel Oil*, 51 F.3d at 1442-43 ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition.  An oligopolist lacks this unilateral power. By definition, oligopolists are interdependent.  An oligopolist can increase market price, but only if the others go along.") (emphasis original) (citation omitted); *Harkin Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988) (noting that no court had held such a claim actionable under Section 2 and that courts had rejected such a theory).  Thus, a "shared monopoly" is not actionable.

Even where an antitrust plaintiff alleges that firms conspired to monopolize, moreover, it must still allege that they conspired to confer monopoly power on a *single* firm.  *See, e.g.*, *RxUSA Wholesale*, 391 F. App'x at 61; *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund*

1    *v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 2014 WL 6465235, at *18

2    (N.D. Cal. 2014) (*Teikoku*) (dismissing conspiracy to monopolize claims);

3    *Standfacts Credit Servs.*, 405 F. Supp. 2d at 1152; *Sun Dun, Inc. v. Coca-Cola Co.*,

4    740 F. Supp. 381, 391-92 (D. Md. 1990) (dismissing conspiracy to monopolize

5    claims).  It is thus insufficient for a plaintiff to allege that multiple defendants

6    conspired to create an oligopoly, or to share monopoly power amongst themselves.

7        Here, Plaintiff not only fails to allege facts sufficient to show that Defendants

8    conspired at all, but also fails to allege that Defendants purportedly agreed to confer

9    monopoly power on a single Agency.  Indeed, the FAC pleads facts directly to the

10   contrary—that Defendants intended to build an oligopoly of multiple agencies, not

11   to vest monopoly power in one agency.  *See* FAC ¶ 51 ("[T]he intent of Defendants

12   [and their co-conspirators] was to destroy competition and to build a monopoly of

13   Uber *Agencies*.") (emphasis added).  Further, Plaintiff's own pleading reveals that

14   no single Agency has a market share even close to monopoly power in actuality.

15   *See* FAC Exs. C, F, H.

16       "Monopoly power" requires a market share of greater than 50%, among other

17   factors.  *See, e.g.*, *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195,

18   1206 (9th Cir. 1997) ("Courts generally require a 65% market share to establish a

19   *prima facie* case of market power."); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d

20   101, 109 (2d Cir. 2002) (64% market share insufficient to show monopoly power

21   absent additional evidence of power to exclude competition or control prices).

22       Here, accepting the allegations of the FAC as true, and accepting the

23   proposed relevant market as properly-defined for purposes of this Motion only,

24   Plaintiff admits, and affirmatively alleges, that neither Defendant (nor any of the

25   alleged co-conspirators) has a market share in excess of 50%.  Indeed, according to

26   the Exhibits to the FAC, ICM Partners has 10% or less of the alleged relevant

27   market; UTA has 23% or less; WME has 34% or less; and, CAA has 33% or less.

28

1   *See* FAC Exs. C, F, H.  Therefore, the FAC fails to state an claim for violation of

2   Section 2 as a matter of law.

3       **C.      Plaintiff Fails To Allege Facts Sufficient To Plead An Antitrust**
        **Conspiracy**

4

5       "To prove a conspiracy to monopolize in violation of § 2, [Plaintiff] must

6   show four elements: (1) the existence of a combination or conspiracy to

7   monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent

8   to monopolize; and (4) causal antitrust injury."  *Paladin Assocs., Inc. v. Montana*

9   *Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).  Because Plaintiff has failed to

10  allege facts sufficient to demonstrate a single one of the elements of conspiracy to

11  monopolize, its Section 2 claim must be dismissed.[3]

12          **1.      The FAC contains no factual allegations describing the**
                **formation and operation of an alleged conspiracy to**
                **monopolize.**
13

14      Both the Supreme Court and the Ninth Circuit have held that mere

15  "descriptions of parallel conduct" are not sufficient to state a claim for an antitrust

16  conspiracy.  *Twombly*, 550 U.S. at 546.  Rather, "an independent allegation of

17  actual agreement" is required, *id.*, and plaintiffs pleading conspiracy theories "must

18  allege facts such as a 'specific time, place, or person involved in the alleged

19  conspiracies' to give a defendant seeking to respond to allegations of a conspiracy

20  an idea of where to begin."  *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S.

21  at 564 n.10).  Conclusory terms like "conspiracy" and "agreement" do not suffice.

22  *Id.* at 1047.

23  _____

24      [3] In addition to failing to meet the first three elements, Plaintiff's FAC fails
    for the independent reason that it lacks any allegations demonstrating a plausible
25  causal link between its alleged injury (the loss of two clients) and the conduct it
    challenges.  Although Plaintiff claims it suffered injury-in-fact when Client #2
26  departed for ICM Partners, (*e.g.* FAC ¶ 26), Plaintiff fails to allege any facts or
    even a plausible theory for how the alleged conspiracy—that Defendants
27  "conspired and agreed, amongst themselves, that it was in their best interests to
    proceed without Rule 16(g)," (FAC ¶¶ 50-51)—supposedly caused the purported
28  injury.  In other words, there is no fact or even conclusory allegation explaining
    how the "demise of Rule 16(g)," FAC 51, caused Client #2 to leave Plaintiff.

1    In other words, the complaint must "answer the basic questions: who did

2  what to whom (or with whom), where, and when?" *Id.* at 1048; *see also Oxbow*

3  *Carbon & Minerals*, 926 F. Supp. 2d at 47 (dismissing conspiracy to monopolize

4  claim for lack of specificity, among other reasons, because "the Complaint lack[ed]

5  factual allegations about how the alleged agreement came about, the basic terms of

6  the agreement itself, or how the defendants used the agreement to monopolize the

7  [relevant] market" and because Plaintiff failed to allege whether or how Defendants

8  "conspired to allocate an entire market to [one of Defendants]"); *Credit Bureau*

9  *Servs., Inc. v. Experian Info. Sols., Inc.*, 2013 WL 3337676, at *8 (C.D. Cal. June

10  28, 2013) (dismissing conspiracy to monopolize claim where the complaint only

11  "generally refer[red] to an unidentified 'agreement,'" and that "merely name[d]"

12  individuals within the Defendant corporation without "alleg[ing] any specific

13  communications"); *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, 2007 WL

14  4976364, at *10 (C.D. Cal. Oct. 29, 2007) ("[Plaintiff] has not alleged any facts

15  supporting its claim . . . . It has not alleged when the purported agreement was

16  made.  Nor has it stated who made the decision, how it was made or what the

17  parameters of the agreement were.").

18    Conspicuously absent from Plaintiff's FAC are the most basic facts

19  describing the circumstances of the alleged conspiracy, how each member was

20  allegedly involved, when the alleged agreement was made, what the alleged

21  agreement was, or what steps any Defendant took to carry it out.  To the extent

22  Plaintiff pleads any facts at all to support a conspiracy, its allegations rest on bare,

23  conclusory statements—based on "information and belief"—that Defendants and

24  their alleged co-conspirators belong to a trade association (to which Plaintiff also

25  belongs), that they "conspired and agreed, amongst themselves, that it was in their

26  best interests to proceed without Rule 16(g)," and that they "inten[ded] . . . to

27  destroy competition and to build a monopoly." FAC ¶¶ 50-51.  But even if those

28  allegations were true, they are insufficient to state a cause of action for conspiracy

to monopolize in violation of Section 2 because they do not describe, beyond their conclusory use of the "magic" words "conspire" and "agree," the formation of any conspiracy or each Defendant's individual participation. *See Int'l Norcent Tech.,* 2007 WL 4976364, at *10 (referring to insufficiency of "magic words" like "conspiracy").

As *Twombly*, *Kendall*, and their progeny demand, conspiracy claims require more. Plaintiff must plead specific facts demonstrating the who, what, where, when, how, and why of the conspiracy. Plaintiff has not done so here because, beyond its use of "magic" words, Plaintiff's sole allegation aimed at the formation of any conspiracy or agreement between Defendants and their alleged co-conspirators is the claim that they each belonged to ATA. But mere membership in a trade association is not enough to infer a conspiracy. *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (rejecting "walking conspiracy" theory pertaining to trade association activity and instead requiring antitrust plaintiffs to plead specific facts to show that each Defendant individually participated in an alleged conspiracy); *see also Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000) (same). A lone allegation that members of a trade association "agreed" that a particular term of a franchise agreement was "not in their best interests," or even that they each, independently, "inten[ded] . . . to destroy competition and to build a monopoly" is insufficient to plead facts sufficient to show that a conspiracy existed or how each defendant participated in its alleged formation and operation, let alone enough to negate "merely parallel conduct." *Twombly*, 550 U.S. at 556-57.[4]

---

[4] Although Plaintiff may argue that the FAC names certain individuals within the Defendant organizations, the FAC still fails to allege any specific communications between them, when they agreed to anything, what the parameters of the agreement were, or any other fact necessary to inform Defendants of what the alleged conspiracy entailed. *See, e.g., Credit Bureau Servs.*, 2013 WL 3337676, at *8; *Int'l Norcent Tech.*, 2007 WL 4976364, at *10.

DEF. ICM PARTNERS' NOT. OF MOTION AND MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

What's more, the FAC fails to allege even *parallel* conduct.  Reading Plaintiff's FAC, charitably, to allege that Defendants "agreed" to "bring[] about the demise of Rule 16(g)," (FAC ¶¶ 50-51), Plaintiff still fails to plead what it was that Defendants agreed to do, or what similar actions they supposedly took, to effect this alleged conspiracy.  Indeed, the FAC alleges facts to the contrary, that Defendants had no role whatsoever in the "demise" of Rule 16(g): Rule 16(g) expired not because of any act on Defendants' part, but under its own terms.  FAC ¶44.  Thereafter, it was the SAG membership—*not Defendants or ATA*—that rejected the tentative agreement between SAG and ATA to reinstate Rule 16(g).  FAC ¶¶ 46-47.  Neither ATA nor Defendants had any control over or participation in SAG's vote to reject the tentative agreement, and Plaintiff does not claim otherwise.  So even if Defendants did, in some manner, "agree" to "bring about the demise of Rule 16(g)," as Plaintiff asks this Court to infer, Plaintiff still has not plausibly alleged a single fact demonstrating how Defendants could have effectively done so.  *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, -- F.3d --, 2015 WL 4591897, at *3-4 (9th Cir. July 31, 2015) (upholding finding of no conspiracy where alleged there were no direct allegations of agreement but participants were members of the same board and allegedly had a "vested interest" in the rulemaking at issue).

Because the FAC fails to meet the heightened pleading standard demanded by *Twombly*, *Kendall*, and their progeny to plead an antitrust conspiracy, Plaintiff's Sherman Act Section 2 claim must be dismissed.

## 2. The FAC contains no factual allegations describing any overt acts in furtherance of any alleged conspiracy.

Performance of an overt act in furtherance of the conspiracy is an essential element of a Section 2 conspiracy to monopolize claim.  *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809; 66 S. Ct. 1125; 90 L. Ed. 1575 (1946).  Although the overt act need not be unlawful itself, it must be an affirmative act done to "give

-15-

1   effect to the conspiracy." *Id.*  Here, as indicated above, the FAC does not allege

2   any facts describing an act "in furtherance of" or done to "give effect" to the

3   alleged conspiracy.  To the contrary, the FAC admits that Rule 16(g) expired not

4   because of any act on Defendants' part, but under its own terms.  FAC ¶44.  The

5   failure to plead facts sufficient to show that Defendants participated in the

6   formation and operation of an antitrust conspiracy, alone, requires the Court to

7   dismiss Plaintiff's antitrust claim.

8               **3.     The FAC contains no factual allegations sufficient to show
                         that ICM Partners specifically intended to monopolize an
9                        antitrust relevant market.**

10          Along with conspiracy and an overt act, Plaintiff must plead specific intent to

11   monopolize.  *Paladin Assocs.*, 328 F.3d at 1158.  "The necessary intent to

12   monopolize . . . is something more than an attempt to compete vigorously."

13   *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459; 113 S. Ct. 884; 122

14   L.Ed.2d 247 (1993).  Rather, specific intent to monopolize means an intent to

15   "achieve an illegal monopoly."  *Howard Hess Dental Labs Inc. v. Dentsply Int'l.,*

16   *Inc.*, 602 F.3d 237, 257 (3d Cir. 2010).  Although specific intent may be inferred

17   from unlawful conduct, a plaintiff must still allege facts supporting the inference.

18   *See id.* at 257-58.

19          Here, Plaintiff merely concludes, without any factual support, that

20   Defendants "inten[ded] . . . to destroy competition and to build a monopoly."  FAC

21   ¶ 51.  Not only does Plaintiff fail to allege any facts to buttress this conclusion, but

22   Plaintiff likewise fails to allege any unlawful conduct from which to infer specific

23   intent.  And any conduct that Plaintiff may claim to have alleged is certainly not

24   unlawful or even anticompetitive, as discussed above.  Thus, in the absence of any

25   factual allegations underlying Plaintiff's single, conclusory statement of intent, the

26   pleadings are insufficient on their face.  *Howard Hess Dental Labs.*, 602 F.3d at

27   258 ("At bottom, the Plaintiffs' allegations of specific intent rest not on facts but on

28   conclusory statements strung together with antitrust jargon. It is an axiom of

-16-

1    antitrust law, however, that merely saying so does not make it so for pleading-

2    sufficiency purposes.").

3        Even more fundamentally, however, Plaintiff's allegations fail to plead

4    specific intent for the independent reason that Plaintiff does not allege that

5    Defendants conspired to confer monopoly power on a *single* Agency.  Courts in this

6    Circuit have held that "specific intent" within the meaning of a conspiracy to

7    monopolize claim means that Plaintiff must allege that Defendant conspired to

8    confer monopoly power on a single firm.  *Teikoku*, 2014 WL 6465235, at *18;

9    *Standfacts Credit Servs.*, 405 F. Supp. 2d at 1152.  As discussed above, Plaintiff

10   fails even to attempt to allege that the Agencies conspired to confer monopoly

11   power on only one of them, and the FAC pleads facts to the contrary.  *See* FAC ¶

12   51 (intent "to build a monopoly of Uber *Agencies*.") (emphasis added).  This is fatal

13   to Plaintiff's Section 2 claim.

14       Because Plaintiff has failed to plead specific intent, antitrust injury, an

15   alleged conspiracy to confer monopoly power on a single Agency, or any of the

16   remaining elements of a claim for conspiracy to monopolize in violation of Section

17   2, Plaintiff's Sherman Act claim fails as a matter of law and should be dismissed

18   with prejudice without affording Plaintiff yet another futile opportunity to amend.[5]

19   **II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
20          UNFAIR COMPETITION IN VIOLATION OF SECTION 17200**

21       California's Unfair Competition Law (UCL) defines "unfair competition" to

22   include, in relevant part, an "unlawful" business act or practice or an "unfair"

23   business act or practice.  Bus. & Prof. Code § 17200 *et seq.*  The UCL thus

24   prohibits acts that violate some other law or are "unfair" as California case law has

25   _____

26      [5] Even if permitted to amend its pleading again, Plaintiff cannot allege a
     plausible set of facts supporting the theory that four competitors—whom the FAC
     demonstrates are engaged in intense competition with one another, *see* FAC Exs.
27   A–I—would conspire amongst themselves to cede monopoly power to only one of
     them.  *Carrico*, 656 F.3d at 1008 (dismissal with prejudice appropriate where
28   amendment futile).

1    defined that term. *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th

2    163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999).  Because all of Plaintiff's

3    underlying claims fail, and because Plaintiff has failed to allege any anticompetitive

4    conduct, Plaintiff cannot satisfy either component of the UCL, and its UCL claim

5    must also be dismissed.

6
7

**A.**     **Plaintiff Fails To Allege Facts Sufficient To Plead A UCL "Unlawful" Claim**

8      The "unlawful" prong of the UCL "borrows" violations from other laws, and

9    causes of action under the "unlawful" prong must be predicated upon an

10   independent violation of law. *Cel-Tech Commc'ns*, 20 Cal. 4th at 180.  Thus, to

11   plead a claim under this prong, the plaintiff must allege facts sufficient to

12   demonstrate a violation of an underlying law. *People v. McKale*, 25 Cal. 3d 626,

13   635, 159 Cal. Rptr. 811, 602 P.2d 731 (1979).  Because all of Plaintiff's underlying

14   claims for interference and antitrust violations fail, its UCL "unlawful" prong claim

15   must also be dismissed.

16
17

**B.**     **Plaintiff Fails To Allege Facts Sufficient To Plead A UCL "Unfair" Claim**

18      When a plaintiff asserts a claim under the UCL's "unfair" prong against one

19   of its competitors, the California Supreme Court has held that the term "unfair"

20   means conduct which "threatens an incipient violation of an antitrust law, or

21   violates the policy or spirit of one of those laws because its effects are comparable

22   to or the same as a violation of the law, or otherwise significantly threatens or

23   harms competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 187.

24      Although it is not necessary in all circumstances for an allegedly "unfair"

25   practice under the UCL also to violate a federal or state antitrust law, in order to

26   state a claim under the "unfair" prong of the UCL, the complaint must contain

27   factual allegations to show that the challenged conduct unreasonably restrains trade

28   and harms consumers. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375, 113

1    Cal. Rptr. 2d 175 (2001).  And "the determination that [a defendant's] conduct is

2    not an unreasonable restraint of trade necessarily implies that the conduct is not

3    'unfair' towards consumers." *Id.*; *accord RLH Indus., Inc. v. SBC Commc'ns, Inc.*,

4    133 Cal. App. 4th 1277, 1286; 35 Cal. Rptr. 3d 469 (2005) (summary judgment on

5    Cartwright Act claim precluded UCL claim under the "unfair" prong); *see also*

6    *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x. 554, 557 (9th Cir. 2008) (unfair

7    competition claim failed because antitrust claims had failed); *ChriMar Sys., Inc. v.*

8    *Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1020 (N.D. Cal. 2014) (rejecting UCL unfair

9    prong claim where plaintiff's Section 2 claims had failed, and noting that "[c]ourts

10   have held that where the alleged conduct does not violate the antitrust laws, a claim

11   based on unfair conduct under the UCL cannot survive"); *DocMagic, Inc. v. Ellie*

12   *Mae, Inc.*, 745 F. Supp. 2d 1119, 1147 (N.D. Cal. 2010) (same).  Indeed, "[t]o

13   permit a separate inquiry into essentially the same question under the unfair

14   competition law [as under the antitrust laws] would only invite conflict and

15   uncertainty and could lead to the enjoining of procompetitive conduct." *Chavez*, 93

16   Cal. App. 4th at 375 (affirming trial court's dismissal of UCL claims for failure to

17   state a claim).

18       As discussed above, Plaintiff's antitrust claim fails in its entirety and must be

19   dismissed.  Beyond Plaintiff's failure to plead the necessary elements for

20   conspiracy,[6] Plaintiff's Section 2 claim fails more fundamentally because it fails to

21   allege any anticompetitive conduct or harm to competition or consumers.  To the

22   contrary, the only conduct that Plaintiff alleges on ICM Partners' part—namely that

23   a lone client left Plaintiff and paid lower commissions at ICM Partners, (FAC ¶¶

24   26-27, 91 )—is procompetitive, not anticompetitive.  Thus, Plaintiff cannot be

25   _____

26       [6] Here, Plaintiff's UCL claim incorporates its preceding allegations, does not
     allege any additional conduct, and therefore depends on its allegation of the
     existence of a purported conspiracy.  FAC, ¶¶ 122, 122-126.  This is, in and of

27   itself, grounds for dismissal.  *See Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 875;
     107 Cal. Rptr. 2d 841 (2001) (failure to plead conspiracy precludes a UCL claim

28   based upon conspiracy).

1    permitted to reach via the UCL procompetitive conduct that is not unlawful under

2    the antitrust laws.

3         As such, because all of Plaintiff's underlying claims fail, and because

4    Plaintiff has failed to allege any anticompetitive conduct, Plaintiff's UCL claim

5    must be dismissed in its entirety.

6    **III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
7           INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

8         "The elements of interference with prospective economic advantage resemble

9    those of intentional interference with contract.  They are: (1) an economic

10   relationship between the plaintiff and some third party, with the probability of

11   future economic benefit to the plaintiff; (2) the defendant's knowledge of the

12   relationship; (3) intentional acts on the part of the defendant designed to disrupt the

13   relationship; (4) actual disruption of the relationship; and (5) economic harm to the

14   plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited,*

15   *Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107-08 (9th Cir. 2007) (internal

16   quotation marks and citation omitted).

17        But because interference often signals vigorous competition, not all acts of

18   interference are actionable in California.  To protect healthy competition, California

19   has adopted the doctrine of competitor's privilege, and in light of that privilege, a

20   plaintiff seeking to establish a claim of interference with prospective economic

21   advantage must plead wrongful conduct—that is, "an act that is wrongful

22   independent of the interference itself." *Id.* at 1108; *Della Penna v. Toyota Motor*

23   *Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 389; 45 Cal. Rptr. 2d 436 (1995).  Under

24   California law, "an act is independently wrongful if it is unlawful, that is, if it is

25   proscribed by some constitutional, statutory, regulatory, common law, or other

26   determinable legal standard." *CRST Van Expedited*, 470 F.3d at 1109 (citation

27   omitted).

28

1    Here, as discussed throughout this Motion, Plaintiff has failed to demonstrate

2    that ICM Partners engaged in any independently wrongful conduct because all of

3    Plaintiff's underlying claims fail.  Plaintiff's intentional interference with

4    prospective economic advantage claim must likewise be dismissed.

5    **IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR**

6    **INTENTIONAL INTERFERENCE WITH CONTRACT**

7        "The tort of intentional interference with contract requires allegations of the

8    following elements: (1) a valid contract between plaintiff and a third party; (2)

9    defendant's knowledge of this contract; (3) defendant's intentional acts designed to

10   induce a breach or disruption of the contractual relationship; (4) actual breach or

11   disruption of the contractual relationship; and (5) resulting damage." *CRST Van*

12   *Expedited*, 479 F.3d at 1105 (internal quotation marks and citation omitted).

13       Here, because Plaintiff has failed to plead facts demonstrating breach of a

14   valid contract, ICM Partners' knowledge of the alleged contract, or interference by

15   means other than those protected by the competitor's privilege, Plaintiff's

16   intentional interference with contract claim must be dismissed.

17   **A.    Plaintiff Fails To Allege Facts Sufficient To Plead Breach Of An**

18   **Existing Contract**

19       In order to plead a viable interference with contract claim, Plaintiff must

20   plead facts sufficient to show the existence of a valid contract and the breach of that

21   contract. *CRST Van Expedited*, 479 F.3d at 1105.

22       Plaintiff's FAC fails at the most basic level to plead any meaningful terms of

23   the alleged contract between it and Client #2, or to plead that Client #2 actually

24   breached the contract when he "terminat[ed]" his relationship with Plaintiff.  FAC ¶

25   26.  In fact, the only mention of "breach" in the entire FAC occurs in the

26   conclusory allegations that "Defendants committed intentional acts designed to

27   induce the breach of [the exclusive] contract," and that "Defendants actually

28   induced the breach of [Plaintiff's] clients . . . ." *Id.* ¶¶ 130-31.  Nowhere does

1  Plaintiff state what terms of the alleged contract were breached or how.  In the

2  absence of facts supporting these conclusory statements, the amended complaint is

3  insufficient on its face to plead interference with contract, and the claim must be

4  dismissed for this reason alone.

5              **B.**    **Plaintiff Fails To Allege Facts Sufficient To Plead ICM Partners'**

6                       **Knowledge**

7        Plaintiff also must plead "defendant's knowledge of th[e] contract" for the

8  interference with contract claim to survive.  *CRST Van Expedited*, 479 F.3d at 1105.

9  Here, Plaintiff's allegations fail because the FAC lacks any factual support for

10  Plaintiff's single, conclusory assertion that ICM Partners knew of the alleged

11  contract because it "had unabated access to Plaintiff's complete exclusive client

12  list" at some unstated point in time.  FAC ¶ 129.  Nowhere in the FAC are there any

13  facts detailing how this was so, and the inference that ICM Partners had access to

14  Plaintiff's client list is particularly unjustified given that Plaintiff claims that it was

15  required to take action to send its client list to co-defendant UTA on a "monthly

16  basis" from April to November 2014 in order to give UTA "notice of Plaintiff's

17  clients."  *Id.* ¶ 19.  There is no similar allegation that Plaintiff provided its client list

18  to ICM Partners, and no other factual support for how ICM Partners could have

19  known of any relationship between Plaintiff and Client #2.

20        But even if the Court were willing to infer that ICM Partners knew of a

21  relationship between Plaintiff and Client #2, this would not mean that ICM Partners

22  knew of a binding contract between the two, let alone that Client #2 would breach

23  that contract by leaving.  The FAC fails to plead any facts supporting this

24  unwarranted inference, and it is improper to assume Plaintiff "can prove facts that it

25  has not alleged."  *Assoc. Gen. Contractors of Cal*, 459 U.S. at 526.

26

27

28

DEF. ICM PARTNERS' NOT. OF MOTION AND MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

1
2

### C.    Plaintiff Fails To Allege Wrongful Conduct Sufficient To Defeat the Competitor's Privilege

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

As discussed above, California has adopted the doctrine of competitor's privilege as a bar to interference claims.  *See Della Penna*, 11 Cal. 4th at 389 (discussing competitor's privilege and holding that a plaintiff must plead wrongful conduct to state an interference claim).  Although the competitor's privilege does not apply to all interference with contract claims, the privilege does apply to interference with contracts that are *terminable at will*.  California courts have held that "[o]ne who intentionally causes a third person . . . not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other."  *S.F. Design Ctr. Assocs. v. Portman Cos.*, 41 Cal. App. 4th 29, 40; 50 Cal. Rptr. 2d 716 (1995).[7]  Thus, to defeat the privilege, Plaintiff must show that ICM Partners' alleged conduct in interfering with an at-will contract was independently actionable.  *Id.* at 42-43.

18

19

20

21

22

23

Plaintiff's failure to plead even the most basic terms of the alleged contract, specifically, that the contract contained a term and was not at-will, means that the claim fails for the independent reason that Plaintiff has not pleaded the necessary wrongful conduct to circumvent the competitor's privilege.  As discussed above, Plaintiff has failed to demonstrate that ICM Partners engaged in any independently wrongful conduct because all of Plaintiff's underlying claims fail.

24

25

26

27

28

---

[7] As discussed above, the FAC fails to state an actionable antitrust claim and therefore cannot be said to state a claim for an unlawful restraint of trade. Moreover, Plaintiff affirmatively alleges that ICM Partners' alleged conduct was done for the purposes of competing with Plaintiff, among others. *See, e.g.,* FAC ¶¶ 28, 81, 93.

1    Thus, because Plaintiff has failed to plead any facts demonstrating breach of

2    a valid contract—let alone interference by means other than those protected by the

3    competitor's privilege—and has failed to plead sufficient facts to demonstrate ICM

4    Partners' knowledge of the alleged contract, Plaintiff's intentional interference with

5    contract claim must be dismissed.

6    **V.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR**
     **DECLARATORY RELIEF**
7

8    Declaratory relief is a form of relief and not a cause of action. *Del Monte*

9    *Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d 1107, 1124 (C.D. Cal. 2014);

10   *Tirabassi v. Chase Home Fin., LLC*, 2015 WL 1402016, at *10 (C.D. Cal. Mar. 24,

11   2015); *Hollins v. Recontrust, N.A.*, 2011 WL 1743291, at *2 (C.D. Cal. May 6,

12   2011). "The object of [declaratory relief] is to afford a new form of relief where

13   needed and not to furnish a litigant with a second cause of action for determination

14   of identical issues." *Lai v. Quality Loan Serv. Corp.*, 2010 WL 3419179, at *3

15   (C.D. Cal. Aug. 26, 2010) (citation omitted). As a result, this Court routinely

16   dismisses claims where plaintiffs attempt to state an independent cause of action for

17   declaratory relief but the claim "merely replicate[s]" other causes of action. *See,*

18   *e.g.*, *Del Monte Int'l GmbH*, 995 F. Supp. 2d at 1124; *Tirabassi*, 2015 WL

19   1402016, at *10-11; *Hollins*, 2011 WL 1743291, at *2; *Lai*, 2010 WL 3419179, at

20   *3. Here, all but possibly one of the claims for which Plaintiff seeks declaratory

21   relief are entirely duplicative of its other claims. *See* FAC ¶ 143 (realleging prior

22   claims and seeking a "declaration" that Defendants "committed violations" of

23   statutes underlying Plaintiff's other claims).

24   The only arguably non-duplicative relief Plaintiff seeks is a declaration that

25   the longstanding, and widely accepted practice of packaging violates the California

26   Talent Agencies Act (TAA), Labor Code section 1700, *et seq.* FAC ¶¶ 33, 58, 143.

27   Talent agencies doing business in California are licensed and regulated under the

28   TAA, and the California Labor Commissioner is charged with its enforcement and

interpretation, which authority is entitled to great weight. *Styne*, 26 Cal. 4th at 53. As Plaintiff concedes, the Labor Commissioner has determined that package agreements fall outside of the TAA.[8] *See FAC* ¶¶ 34-35.

## VI.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF

Injunctive relief is a form of relief and not an independent cause of action. *Fradis v. Savebig.com*, 2011 WL 7637785, at *7 (C.D. Cal. Dec. 2, 2011); *Hollins*, 2011 WL 1743291, at *5; *Lai*, 2010 WL 3419179, at *1 n.3.  This is true without regard to whether the claim duplicates other causes of action.  *See id.*  As a result, this Court also routinely dismisses claims where plaintiffs attempt to state an independent cause of action for injunctive relief.  *See, e.g.*, *Fradis*, 2011 WL 7637785, at *7; *Hollins*, 2011 WL 1743291, at *2; *Lai*, 2010 WL 3419179, at *1 n.3.  Because Plaintiff's independent cause of action for injunctive relief is not cognizable at law, the Court should dismiss it with prejudice.

## CONCLUSION

For the foregoing reasons, ICM Partners requests that the Court dismiss the entire FAC with prejudice.

DATED:  August 10, 2015                    **PERKINS COIE LLP**

By: */s/ Michael Garfinkel*
Michael B. Garfinkel

Attorneys for Defendants
INTERNATIONAL CREATIVE
MANAGEMENT PARTNERS LLC

LEGAL126858015.12

---

[8] Plaintiff's requested declaration is further flawed in that it is based upon a misreading of two sections of the TAA.  Section 1700.39 provides "[n]o talent Agency shall divide fees with an employer, an agent or other employee of an employer."  *See FAC* ¶¶ 33, 143(b).  This provision clearly relates to the splitting of commissions paid by the artist with the employer, which is not what happens with a package.  Section 1700.40(b) is also inapplicable as it expressly limits a talent agency from referring an artist to a person, firm, or corporation in which the talent agency has a direct or indirect interest for other services to be rendered to the artist, such as photographers and dramatic coaches.  *See FAC* ¶ 58.