Michael B. Garfinkel (SBN 156010)
mgarfinkel@perkinscoie.com
Charles H. Samel (SBN 182019)
csamel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.843.1284

Jacqueline E. Young (SBN 280374)
JYoung@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Defendant
INTERNATIONAL CREATIVE
MANAGEMENT PARTNERS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENHOFF ENTERPRISES, INC., a California corporation dba LENHOFF & LENHOFF,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED TALENT AGENCY, INC., a California corporation; INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC, a Delaware limited liability company; and DOES 1 through 5, inclusive,<br><br>                    Defendants. | Case No. 2:15-CV-01086-BRO (FFMx)<br><br>**DEFENDANT INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT;**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:      September 21, 2015<br>Time:      1:30 p.m.<br>Place:     Courtroom 14<br>Judge:    Hon. Beverly Reid O'Connell |

1
2

**TABLE OF CONTENTS**

3

PAGE

4

INTRODUCTION ........................................................................................... 1

5

ARGUMENT ................................................................................................... 3

6
7

I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
CONSPIRACY TO MONOPOLIZE IN VIOLATION OF SECTION 2 ........ 3

8

     A.     Plaintiff's Opposition Fails To Overcome ICM Partners' Showing
That Plaintiff Cannot Plead Antitrust Injury ............................................ 3

9
10

     B.     Plaintiff's Opposition Fails To Overcome ICM Partners' Showing
That A "Shared Monopoly" Theory Is Not Cognizable ....................... 4

11

     C.     Plaintiff's Opposition Fails To Overcome ICM Partners' Showing
That Plaintiff Has Not Pled An Antitrust Conspiracy .......................... 6

12
13
14

II.    THE COURT SHOULD DENY LEAVE TO AMEND THE
AMENDED COMPLAINT TO ADD A CLAIM UNDER SECTION 1
OF THE SHERMAN ACT BECAUSE AMENDMENT WOULD BE
FUTILE ........................................................................................................ 8

15
16

III.   PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM
PARTNERS' SHOWING THAT THE AMENDED COMPLAINT
LACKS FACTS SUFFICIENT TO PLEAD A UCL CLAIM .................... 10

17
18

IV.  PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM
PARTNERS' SHOWING THAT THE FAC DOES NOT STATE A
CLAIM FOR INTERFERENCE WITH CONTRACT ............................... 11

19
20

V.    PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM
PARTNERS' SHOWING THAT THE FAC FAILS TO STATE A
CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF .................... 12

21

CONCLUSION ............................................................................................. 12

22
23
24
25
26
27
28

1

2

### TABLE OF AUTHORITIES

3
                                                                                    **PAGE**

4  **CASES**

5  *Arista Records LLC v. Lime Grp. LLC*,

6      532 F. Supp. 2d 556 (S.D.N.Y. 2007) ........................................................ 6, 9

7  *Bell Atl. Corp. v. Twombly*,

8      550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007) .............................. 6, 8

9  *Brantley v. NBC Universal, Inc.*,

       675 F.3d 1192 (9th Cir. 2012) ................................................................... 3, 4
10

11  *Carrico v. City of S.F.*,

       656 F.3d 1002 (9th Cir. 2011) ......................................................................... 8
12

13  *CRST Van Expedited, Inc. v. Werner Enters., Inc.*,

       479 F.3d 1099 (2007) .................................................................................... 11
14

15  *Del Monte Int'l GmbH v. Del Monte Corp.*,

       995 F. Supp. 2d 1107 (C.D. Cal. 2014) ......................................................... 12
16

17  *Durrell v. Sharp Healthcare*,

       183 Cal. App. 4th 1350; 108 Cal. Rptr. 3d 682 (2010) ................................. 10
18

19  *G.H.I.I. v. MTS, Inc.*,

       147 Cal. App. 3d 256; 195 Cal. Rptr. 211 (1983) ........................................... 9
20

21  *In re Credit Default Swaps Antitrust Litigation*,

       2014 WL 4379112 (S.D.N.Y. Sept. 4, 2014) .................................................. 6
22

23  *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*,

       15 F. Supp. 3d 1075, 1096 ............................................................................. 6
24

25  *The Jeanery, Inc. v. James Jeans, Inc.*,

       849 F.2d 1148 (9th Cir. 1988) ........................................................................ 9
26

27  *Jenkins v. Cty. of Riverside*,

       398 F.3d 1093 (9th Cir. 2005) ............................................................... 7, 10, 11
28

    *Kendall v. U.S.A., Inc.*,

       518 F.3d 1042 (9th Cir. 2008) ........................................................................ 8

*Monsanto Co. v. Spray–Rite Serv. Corp.*,
   465 U.S. 752; 104 S. Ct. 1464; 79 L. Ed. 2d 775 (1984) ...................................9

*Newcal Industries, Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................12

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
   926 F. Supp. 2d 36 (D.D.C. 2013) ......................................................5, 6, 7

*Rebel Oil Co. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir.) ..............................................................................4, 5

*Sun Dun, Inc. of Washington v. Coca-Cola Co.*,
   740 F. Supp. 381 (D. Md. 1990) ....................................................................5

*United States v. American Airlines, Inc.*,
   743 F.2d 1114 (5th Cir. 1984) ...................................................................5, 6

*Yentsch v. Texaco, Inc.*,
   630 F.2d 46 (2d Cir.1980) .............................................................................9

STATUTES

Sherman Act § 1 ...............................................................................8, 9, 10

Sherman Act § 2 ............................................................................... passim

DEFENDANT ICM PARTNERS' REPLY IN SUPPORT OF MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

**INTRODUCTION**

Plaintiff's Opposition, replete with invitations for the Court to permit it to amend its amended complaint yet again, all but concedes that the First Amended Complaint ("FAC") is insufficient, and, as Plaintiff's first two attempts and its Opposition establish, no amount of additional pleading will alter the reality that Plaintiff cannot state a cognizable claim.  At its core, Plaintiff's complaint is that two of its clients departed its agency and sought representation from two of its competitors—Defendants UTA and ICM Partners—because, as larger agencies, Defendants were able to offer the artists more and better opportunities.  At no point does Plaintiff dispute that television packages have, for decades, been approved as valid practices by the various guilds whose job it is (not Plaintiff's) to speak on behalf of its members on this issue.  In fact, Plaintiff's only regret seems to be that it does not have more packaged television shows in its arsenal.  Rather than admit its own failings, Plaintiff tries to blame UTA and ICM Partners (and other large competitors of theirs) for being more successful businesses, and attempts to concoct an unfounded antitrust conspiracy for which it can seek relief with the Court's intervention.

So it is not surprising that the Opposition confirms that Plaintiff's conspiracy theory has no basis in fact or law.  Plaintiff is reduced to arguing that it lost two clients in 2014 because Defendants supposedly conspired *fourteen years earlier* in 2000 to force the termination of SAG Rule 16(g) and, ignoring the obvious and implausible chasms between the causal links in Plaintiff's theory, to monopolize packages for television shows, even though that practice had been in existence for more than 40 years before the alleged conspiracy took place.  Setting aside all of the legal inadequacies, Plaintiff's conspiracy theory is undermined by its own allegations that after Rule 16(g) expired, it was the SAG membership, not the talent agencies, that rejected the tentative deal reached between SAG's leadership and the Board of the Association of Talent Agencies.  Moreover, Plaintiff cannot escape the

DEFENDANT ICM PARTNERS' REPLY IN SUPPORT OF MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

indisputable fact that there is nothing preventing Plaintiff or any other talent agency from signing clients to exclusive, term (rather than at-will) agency agreements and/or procuring employment for its clients in television shows packaged by other agencies.  Nor does Plaintiff allege he has been prevented from doing so.

It is evident from Plaintiff's own allegations that each of the Defendants acts solely in its own individual economic self-interest, and that ICM Partners has done nothing remotely wrong, let alone conspired with anyone to drive Plaintiff out of business.  What Plaintiff is really griping about is its own recognition of the increased levels of innovation, investment, and skill that it requires to remain relevant and compete as a modern talent agency.  The representation of television artists is, more than ever, intensely and increasingly competitive, and, as Plaintiff concedes, pits dozens of rival firms, large and small, against one another in vigorous and continuous battles to attract and retain clients.  In a free market economy, there will, by necessity and design, always be winners and losers, but it is rarely the case that when a business loses a client or two, it can hold its competitors liable for antitrust violations and thereby recover treble damages and attorneys' fees.  This lawsuit is a paradigm example of the rule, not the exception.

Plaintiff acknowledges the deficiencies in its claims by urging the Court to permit it to amend its pleading.  When confronted with the argument that its allegations of conspiracy lack the requisite specificity, Plaintiff responds that it "can and will allege" (Dkt No. 25 at 4 ["Opp."]) where the defendants "discussed" certain topics (Opp. at 4), but does not suggest that it could plead facts to show that it is plausible to infer that Defendants agreed to form and carry out an antitrust conspiracy.  Similarly, when faced with its failure to allege injury to competition, Plaintiff suggests it "can and will allege" that based on a speculative and attenuated chain of events, "[b]oth quality and choice" of the representation available to artists, and perhaps televisions viewers too, is somehow "constrained" (Opp. at 6, 15).  But even if there were some plausible nexus between the alleged agreement

DEFENDANT ICM PARTNERS' REPLY IN SUPPORT OF MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

1   and its purported effects, the FAC still fails to state an antitrust claim.  Reduced

2   consumer quality or choice does not sufficiently plead an injury to competition as a

3   matter of law, which alone requires dismissal of Plaintiff's Sherman Act claim,

4   although it is also defective for other, independent reasons.

5          Plaintiff's opposition also demonstrates that the problems with its state law

6   claims are similarly incurable.  Recognizing that its claims for tortious interference

7   are deficient as pled, Plaintiff offers to allege "further details about its oral

8   agreements with Clients #1 and #2," but does not suggest what those details might

9   be, or, more importantly, how they possibly could resuscitate Plaintiff's tortious

10  interference claims.  Finally, Plaintiff fails to refute the legal authorities cited by

11  ICM Partners that require dismissal of Plaintiff's UCL claim because of the failure

12  to allege that ICM Partners engaged in actionable anticompetitive conduct, as well

13  as other cases which hold that Plaintiff's claims for declaratory and injunctive relief

14  are not cognizable because each is a form of relief, and neither is a separate cause

15  of action.

16         In short, further amendment would be futile and a waste of the resources of

17  the parties and the Court.  This action should be dismissed with prejudice.

## ARGUMENT

**I.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONSPIRACY TO MONOPOLIZE IN VIOLATION OF SECTION 2**

### A.    Plaintiff's Opposition Fails To Overcome ICM Partners' Showing That Plaintiff Cannot Plead Antitrust Injury

22         Plaintiff concedes that it "must allege both that [Defendants'] behavior is

23  anticompetitive and that plaintiff has been injured by an 'anti-competitive aspect of

24  the practice under scrutiny.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192,

25  1200 (9th Cir. 2012) (citation omitted); *see also* Opp. at 15 (quoting *Brantley*).

26  Plaintiff fails to distinguish any of the cases relied upon by ICM Partners, nor does

27  Plaintiff disagree that the ability to offer lower commissions is a mark of more

28  vigorous competition, not less.  *See* Dkt No. 21, at 8-9 ("Mot.").  Rather, Plaintiff

1   contends it suffered injury when "two premium, packageable clients were poached

2   by [Defendants]" and that this alleged injury "flows from an anticompetitive aspect

3   of" Defendants' alleged conduct, namely, "the illusory price offered by members of

4   the cartel (UTA and ICM), and is an aspect of the diminished choice in meaningful

5   representation confronted by talent working in TV." Opp. at 15 (emphasis in

6   original).  Notably, the FAC does not describe Defendants supposed "illusory"

7   pricing, or what its purported market effects might be, although presumably

8   Plaintiff may try to allege that prices are increasing. *See* Opp. at 5-6.

9           But those allegations would be to no avail.  As the Ninth Circuit has

10  explained, even if an "agreement has the effect of reducing consumers' choices or

11  increasing prices," that "does not sufficiently allege an injury to competition"

12  because each is "fully consistent with a free, competitive market." *Brantley*, 675

13  *F.3d at 1202*.  Here, Plaintiff does not plead that the alleged conspiracy caused

14  agencies to exit the market, or otherwise reduced competition, which then caused

15  television artists to face "diminished choice" for representation.  To the contrary,

16  Plaintiff alleges the opposite—that artists have many choices and are exercising

17  their options by leaving one agency to join another.  Indeed, Plaintiff's sole

18  complaint is that Defendants' alleged practice of offering clients lower

19  commissions is restricting its own ability to retain clients (FAC ¶¶ 26-27, 91),

20  which confirms that Plaintiff is complaining about injury to a competitor, not

21  competition.

22          **B.    Plaintiff's Opposition Fails To Overcome ICM Partners' Showing
                   That A "Shared Monopoly" Theory Is Not Cognizable**

23

24          Plaintiff concedes that allowing a cause of action to proceed on a theory of a

25  "shared" or "joint" monopoly would be unprecedented in this Circuit.  Opp. at 9.

26  Plaintiff likewise acknowledges the Ninth Circuit's pronouncement, in *Rebel Oil*

27  *Co. v. Atlantic Richfield Co.*, that "one firm *alone* must have the power to control

28  market output and exclude competition" for a Section 2 violation to exist. 51 F.3d

-4-

1421, 1442-43 (9th Cir.) (emphasis in original).  Nevertheless, Plaintiff argues that *Rebel Oil* is distinguishable on the grounds that it involved an attempt to monopolize claim, rather than conspiracy to monopolize under Section 2.  Opp. at 9.  But this is a distinction without a difference.  Plaintiff fails to explain why conspiracy to monopolize claims should be treated differently, and no justification exists.

Indeed, "the history of the Sherman Act reveals that Congress' concept of 'monopoly' did not include 'shared monopolies' or 'oligopolies' at all, but rather the complete domination of a market by a single economic entity." *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 391 (D. Md. 1990).  Although it is theoretically possible for a group of firms to conspire to monopolize "if the aim of the conspiracy is to form a single entity to possess the illegal market power," Plaintiff has failed to plead, or even offer to plead, those facts. *Id.* at 391-92.  Moreover, Plaintiff entirely ignores authorities cited in the Motion in which other courts in this Circuit have relied on *Rebel Oil*'s reasoning to dismiss conspiracy to monopolize claims premised on a "shared" or "joint" monopoly theory. *See* Mot. at 10-11.  Plaintiff presents no reason for the Court to part ways with the "vast majority of other courts" that have sided against a "shared" or "joint" monopoly theory. *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F. Supp. 2d 36, 45-46 (D.D.C. 2013); *see also* Mot. at Section I.B. (citing authorities).  And the Court should decline to do so.

Plaintiff's out-of-circuit case authorities are unavailing because each is entirely distinguishable.  For instance, in *United States v. American Airlines, Inc.* one of two controlling players in a duopoly unequivocally offered to fix prices with the other, in which case the conspiracy would have resulted in the only two firms in the market effectively acting as a single entity.  743 F.2d 1114 (5th Cir. 1984).  As another court pointed out, "[s]uch a price-fixing agreement would have resulted in the equivalent of a single-firm price-setting, which is the essence of

DEFENDANT ICM PARTNERS' REPLY IN SUPPORT OF MOTION TO DISMISS FAC
Case No. 2:15-CV-01086-BRO (FFMx)

1    monopolization." *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 15 F.

2    Supp. 3d 1075, 1096 n.9 (D. Or. 2014) (declining to follow *American Airlines*).

3    Here, there are no allegations of market allocation or price-fixing, and Plaintiff

4    concedes there are dozens of other competitors.  Thus, there is no similar risk of *de*

5    *facto* single-firm price setting.

6          Similarly, *In re Credit Default Swaps Antitrust Litigation*, 2014 WL 4379112

7    (S.D.N.Y. Sept. 4, 2014), fails to support Plaintiff's theory.  There, the court was

8    skeptical of the shared monopoly concept but noted a previous opinion raising the

9    possibility of such a theory in the conspiracy to monopolize context where "the aim

10   of the conspiracy is to form a single entity to possess the illegal market power, or

11   where two or more competitors seek to allocate a market and exclude competitors,

12   even if they do not form a single corporate entity." *Id.* at 14 (quoting *Arista*

13   *Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 580 (S.D.N.Y. 2007)).  Once

14   again, Plaintiff does not and cannot allege those facts.

15         In any event, even if the Court were willing to break new ground for antitrust

16   jurisprudence, Plaintiff's claim must still be dismissed for failure to plead any facts

17   demonstrating that Defendants actually conspired to monopolize.

18         **C.    Plaintiff's Opposition Fails To Overcome ICM Partners' Showing
19                 That Plaintiff Has Not Pled An Antitrust Conspiracy**

20         Plaintiff does not even attempt to distinguish the case law cited in the

21   Motion, or to deny that for its antitrust conspiracy claim to survive, Plaintiff must

22   allege specific facts describing the circumstances of the alleged agreement.  *See*

23   Mot. at 12-13.  Instead, Plaintiff contends that allegations of "parallel conduct

24   placed in a 'context' (commonly referred to as 'plus factors')" is sufficient, alone,

25   to allege formation of a conspiracy. Opp. at 13 (quoting and discussing *Oxbow*).

26         Plaintiff is incorrect as a matter of law, *see, e.g.*, *Bell Atl. Corp. v. Twombly*,

27   550 U.S. 544, 546, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007), and Plaintiff's cited

28   authority actually holds the opposite.  In *Oxbow*, the court granted a motion to

1    dismiss because it found the allegations that "plus factors," which included "a

2    parallel sudden shift in defendants' conduct in the context of an industry structure

3    conducive to collusion and alongside an alleged conspiracy regarding pricing" were

4    insufficient to state a Sherman Act claim.  926 F. Supp. 2d at 47.  The court held

5    that such facts, alone, could not support an antitrust conspiracy claim in the absence

6    of factual allegations detailing "basic factual information" about the alleged

7    conspiracy such as "how the alleged agreement came about, the basic terms of the

8    agreement itself, or how the defendants used the agreement to monopolize the rail

9    freight market."  *Id.*

10          Here, as in *Oxbow*, Plaintiff was required, and has failed, to state even the

11   most basic facts of the conspiracy, including when and how it came about or the

12   basic terms of the alleged agreement.  Nor would Plaintiff's new, proffered

13   allegations about events purportedly occurring in 2015, over a decade later, help to

14   demonstrate those basic facts.  *See* Opp. at 13.  Thus, amendment would be futile,

15   and Plaintiff's Section 2 claim should be dismissed with prejudice.

16          Plaintiff entirely ignores the arguments and authority in the Motion that

17   demonstrate Plaintiff's failure to allege any facts to support an overt act in

18   furtherance of the alleged conspiracy.  *See* Mot. at 15-16.  Plaintiff therefore

19   concedes that deficiency in its pleading.  *Jenkins v. Cty. of Riverside*, 398 F.3d

20   1093, 1095 n.4 (9th Cir. 2005) (plaintiff waived challenge to claims by failing to

21   raise them in opposition to motion challenging them).  Likewise, Plaintiff does not

22   meaningfully address ICM Partners' authority demonstrating that the FAC fails to

23   plead any non-conclusory facts demonstrating specific intent to monopolize.  *See*

24   Mot. at 16-17.  To the contrary, Plaintiff concedes that the sole allegations in the

25   FAC directed at this element are the conclusory statements that "the intent of

26   Defendants . . . was to destroy competition and build a monopoly of [Agencies]."

27   *See* Opp. at 2.  But these conclusory allegations are patently insufficient to establish

28   specific intent, as discussed in detail in the Motion.

## II. THE COURT SHOULD DENY LEAVE TO AMEND THE AMENDED COMPLAINT TO ADD A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT BECAUSE AMENDMENT WOULD BE FUTILE

Implicitly acknowledging the many flaws in its Section 2 claim, Plaintiff seeks leave to add a claim for "collusion between 'oligopolists'" under Section 1 of the Sherman Act. Opp. at 14. But even if permitted by the Court, such an amendment would be futile because the allegations that Plaintiff proposed to add do not state a plausible Section 1 violation as a matter of law. *See Carrico v. City of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011) (complaint may be dismissed without leave to amend "if amendment would be futile").

First, as with Section 2 conspiracy to monopolize claims, to state a claim under Section 1 of the Sherman Act, a plaintiff must "allege an agreement between antitrust co-conspirators," and to do so, "the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565 n.10). Mere parallel conduct does not suffice. *Twombly*, 550 U.S. at 546. Plaintiff seems to suggest that it could plead a claim under Section 1 based on allegations in the FAC that Defendants and their alleged co-conspirators "engage in 'exclusive co-packaging contracts'" and that they "have a policy of not splitting packaging fees with [other agencies] and have formed, in essence, a 'cartel' that controls the market." Opp. at 3. Plaintiff further suggests that it could add allegations demonstrating that Defendants and their alleged co-conspirators "would not co-package with Plaintiff (and other non-core agencies), as well as refusals to deal from buyers . . . ." Opp. at 4.

However, Plaintiff's allegations (and proposed allegations) to establish some sort of horizontal agreement fail once again to offer any facts that describe the very basic circumstances of any alleged agreement between Defendants and their alleged co-conspirators, such as when and where the agreement was formed, or even that an

-8-

1    agreement was formed in the first place.  Indeed, assuming *arguendo* that

2    Defendants and their alleged co-conspirators each, independently, "have a *policy* of

3    not splitting packaging fees" with agencies like Plaintiff, that does not necessitate

4    that they conspired to adopt those policies, and, at best, establishes only that each

5    independently engaged in parallel conduct, which is insufficient to state a claim, as

6    discussed above.

7         In the same vein, Plaintiff hints at some type of vertical conspiracy, in which

8    Defendants and their alleged co-conspirators "coerce Studio employers to buy their

9    packages and to employ their talent."  FAC ¶ 99; Opp. at 3.  But this claim, too,

10   suffers from the defect that Plaintiff has not alleged, nor does it offer to allege, any

11   facts establishing an affirmative agreement to exclude Plaintiff or any other agency.

12   The mere fact that a manufacturer, for example, may be able to exert economic

13   pressure on a customer is not sufficient evidence of an agreement in restraint of

14   trade under Section 1.  *See, e.g.*, *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S.

15   752, 761; 104 S. Ct. 1464; 79 L. Ed. 2d 775 (1984) ("A distributor is free to

16   acquiesce in the manufacturer's demand in order to avoid termination."); *The

17   Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1158-59 (9th Cir. 1988)

18   ("exposition, persuasion, argument, or pressure" insufficient to establish coercion

19   (citation omitted)); *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 53 (2d Cir.1980) (same);

20   *cf. G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 269; 195 Cal. Rptr. 211 (1983)

21   (allegations of "economic leverage" to "coerce" more favorable terms from vertical

22   distributors insufficient to establish unlawful conspiracy under California's

23   Cartwright Act).

24        Finally, even if Plaintiff somehow could plead sufficient facts to show that

25   ICM Partners entered into a purported agreement that might violate Section 1,

26   Plaintiff has not indicated how such conduct could conceivably have caused

27   Plaintiff's purported injury, namely, the loss of Client #2.  *See, e.g.*, *Arista Records*,

28   532 F. Supp. 2d at 574 (allegations that counter-defendants "conspired 'to coerce

1    actual and potential advertisers, vendors, and customers' to stop doing business

2    with [counterclaimant]" insufficient because "[e]ven assuming arguendo that such

3    harm would be sufficient to confer antitrust standing on [counterclaimant], the FAC

4    does not specifically articulate any of the links in this causal chain"). So, too, here.

5    Neither the FAC nor the Opposition suggest any link between Plaintiff's claimed

6    injury from its loss of Client #2 and the purported "horizontal agreements." *See*

7    Opp. at 14.

8         Thus, because the newly proffered allegations do not provide the necessary

9    details to plead a plausible conspiracy or a violation of Section 1, and do not reveal

10   a plausible link to Plaintiff's alleged injury, amendment would be futile.

**III.   PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM
        PARTNERS' SHOWING THAT THE AMENDED COMPLAINT
        LACKS FACTS SUFFICIENT TO PLEAD A UCL CLAIM**

13        Plaintiff fails meaningfully to address any of the arguments or authorities

14   cited in the Motion that demonstrate that Plaintiff has failed to state a valid claim

15   under either prong of California's UCL. *See* Mot. at 17-20. Ignoring the

16   "unlawful" prong entirely, Plaintiff refers to ICM Partners' co-Defendant's brief

17   and argues that to state a UCL "unfair" prong claim, Plaintiff need only

18   demonstrate an "incipient" violation of the antitrust laws. Opp. at 17. But

19   Plaintiff's single citation in support of this claim arises in the context of a claim by

20   a consumer, not a competitor, and merely sets forth the *Cel-Tech* standard. *See*

21   *generally Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350; 108 Cal. Rptr. 3d

22   682 (2010). *Durrell* does nothing to address the proposition, or the authority cited

23   by ICM Partners' in support of it, that Plaintiff's UCL "unfair" prong claim must

24   fall with its Sherman Act claims, because Plaintiff failed to plead the requisite

25   elements for conspiracy and failed to allege any anticompetitive conduct or harm to

26   competition or consumers. *See* Mot. at 18-20 (citing cases). Plaintiff therefore

27   waives any argument otherwise, and its claim should be dismissed. *See Jenkins*,

28   398 F.3d at 1095 n.4.

**IV.    PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM PARTNERS' SHOWING THAT THE FAC DOES NOT STATE A CLAIM FOR INTERFERENCE WITH CONTRACT**

Plaintiff does not meaningfully address any of the arguments or case law cited in the Motion that demonstrate that Plaintiff failed to plead facts sufficient to allege breach of an existing contract, ICM Partners' knowledge, or wrongful conduct sufficient to support its interference with contract claim.[1]  Plaintiff merely recites the pleading standard and contends that it has sufficiently alleged "existence of a contract."  Opp. at 16.  Plaintiff's Opposition misses the point.  As explained in detail in the Motion, Plaintiff must plead facts sufficient to show the existence of a valid contract *and breach* of that contract.  *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (2007).  Despite its belated offer to plead "further details" (Opp. at 17) of the alleged agreement with Client #2, Plaintiff failed to plead the terms of that contract despite having all of the necessary facts, by definition, within its control when it filed its complaint and amended complaint.

Similarly, in support of its allegations of breach, Plaintiff has alleged only the conclusory allegation that "Defendants actually induced the breach of [Plaintiff's] clients."  FAC ¶¶ 130-31.  Plaintiff has failed to support these allegations with any facts revealing a single term of the contract that Client #2 allegedly breached.  Indeed, the mere fact that Client #2 "terminat[ed]" a contract with Plaintiff does not mean that Client #2 breached that contract.  FAC ¶ 26.  None of the cases Plaintiff cites stands for the proposition that Plaintiff is relieved from alleging facts supporting breach of an existing contract in order to plead interference with contract.  Thus, Plaintiff's claim for interference with contract should be dismissed.

---

[1] Plaintiff does not address the argument that it failed to allege ICM Partners' knowledge or wrongful conduct, and fails to oppose the Motion with respect to its alleged claim for Interference with Prospective Economic Advantage.  *See* Mot. at Sections IV.B & IV.C; Opp. at 16-17.  Plaintiff's non-opposition requires dismissal. *Jenkins*, 398 F.3d at 1095 n.4.

1
2

**V.    PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM PARTNERS' SHOWING THAT THE FAC FAILS TO STATE A CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF**

3
4
5

Plaintiff does not dispute that its declaratory relief claim is duplicative of its Sherman Act and state law claims. *Opp.* at 17. Instead, Plaintiff cites a single case and, without explanation, suggests that the declaratory relief claim is proper. *Id.*

6
7
8
9
10
11
12
13
14
15
16
17
18

Plaintiff's authority is inapposite. In *Newcal Industries, Inc. v. Ikon Office Solution*, the plaintiff alleged a separate claim seeking a declaration "that all [underlying] contracts were void and unenforceable," rather than a declaration that the defendant had violated a statute that formed the basis for another claim for relief in its pleading. 513 F.3d 1038, 1056 (9th Cir. 2008). Thus, the *Newcal* court never addressed the question presented here, *i.e.*, whether the claim for declaratory relief should be dismissed as duplicative. Here, by contrast, Plaintiff does not deny that its declaratory relief claim "merely replicate[s]" other causes of action; thus, Plaintiff's declaratory relief claim should be dismissed with prejudice. *E.g., Del Monte Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d 1107, 1124 (C.D. Cal. 2014). Similarly, Plaintiff's claim for injunctive relief should be dismissed because Plaintiff fails to address any of the arguments or authorities cited in Motion that hold that there is no separate cause of action for injunctive relief. *See* Mot. at 25.

19

## CONCLUSION

20
21

For the foregoing reasons and for those stated in the Motion, ICM Partners respectfully requests that the Court dismiss the entire FAC with prejudice.

22
23

DATED:  September 7, 2015

**PERKINS COIE LLP**

24
25

By: */s/ Michael Garfinkel*
_____
Michael B. Garfinkel

26
27

Attorneys for Defendants
INTERNATIONAL CREATIVE
MANAGEMENT PARTNERS LLC

28

-12-