1   Michael B. Garfinkel (SBN 156010)
    mgarfinkel@perkinscoie.com
2   Charles H. Samel (SBN 182019)
    csamel@perkinscoie.com
3   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
4   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
5   Facsimile: 310.843.1284

6   Jacqueline E. Young (SBN 280374)
    JYoung@perkinscoie.com
7   PERKINS COIE LLP
    505 Howard Street, Suite 1000
8   San Francisco, CA  94105
    Telephone:  415.344.7000
9   Facsimile:  415.344.7050

10  Attorneys for Defendant
    INTERNATIONAL CREATIVE
11  MANAGEMENT PARTNERS LLC

12

13              UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16  LENHOFF ENTERPRISES, INC., a California corporation dba LENHOFF & LENHOFF, | Case No. 2:15-CV-01086-BRO (FFMx) |
| 17 | **DEFENDANT INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| 18                         Plaintiff, | |
| 19           v. | |
| 20  UNITED TALENT AGENCY, INC., a California corporation; | [Fed. R. Civ. P. 12(b)(6)] |
| 21  INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC, a | Date:      December 21, 2015 |
| 22  Delaware limited liability company; and DOES 1 through 5, inclusive, | Time:      1:30 p.m.<br>Place:     Courtroom 14 |
| 23                         Defendants. | Judge:    Hon. Beverly Reid O'Connell |
| 24 | |

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.  PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM
   PARTNERS' SHOWING THAT THE SAC DOES NOT STATE A
   CLAIM FOR VIOLATION OF SECTION 1 OF THE SHERMAN
   ACT ........................................................................................................... 2

   A.  Plaintiff Has Not Alleged Facts To Plead Direct Evidence Of An
       Agreement In Restraint Of Trade. ................................................... 2

   B.  Plaintiff Has Not Alleged Facts From Which It Is Plausible To
       Infer An Agreement In Restraint Of Trade. .................................... 4

   C.  Plaintiff Has Not Alleged Facts To Plead That ICM Partners
       Coerced Buyers Of Talent To Refuse To Deal With Plaintiff. ....... 6

   D.  The Random Antitrust "Buzz Words" In The SAC Fail to State a
       Claim Under Section 1 ..................................................................... 6

   E.  Plaintiff Cannot Plead Antitrust Injury .......................................... 8

II. PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM
   PARTNERS' SHOWING THAT THE SAC DOES NOT STATE A
   CLAIM FOR INTERFERENCE ................................................................ 9

   A.  The SAC Does Not State A Claim For Interference With
       Contract. .......................................................................................... 9

   B.  The SAC Does Not State A Claim For Interference With
       Prospective Economic Advantage. ................................................ 11

III. PLAINTIFF'S UCL CLAIM CANNOT SURVIVE BECAUSE THE
   SAC LACKS FACTUAL ALLEGATIONS SUFFICIENT TO PLEAD
   A CONSPIRACY. ................................................................................... 11

CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

CASES

*Aguilar v. Atl. Richfield Co.*,
25 Cal. 4th 826; 107 Cal. Rptr. 2d 841 (2001)..................................12

*Atl. Richfield Co. v. USA Petro. Co.*,
495 U.S. 328 (1990)....................................................................9

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014)......................................................11

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012)....................................................8, 9

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163; 83 Cal. Rptr. 2d 548 (1999)............................11, 12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)..................................................3, 7, 11

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350; 108 Cal. Rptr. 3d 682 (2010)..................11

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015)..............................................2, 4, 5, 6

*Jenkins v. Cty. of Riverside*,
398 F.3d 1093 (9th Cir. 2005)........................................................6

*Kassbaum v. Steppenwolf Prods., Inc.*,
236 F.3d 487 (9th Cir. 2000)........................................................10

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)........................................................2

*Oxbow Carbon & Minerals, LLC v. Union Pac. R.R. Co.*,
926 F. Supp. 2d 36 (D.D.C. 2013)..............................................5, 6

*Rosenthal v. Fonda*,
862 F.2d 1398 (9th Cir. 1988)......................................................10

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)........................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Sᴛᴀᴛᴜᴛᴇs

Sherman Act § 2.................................................................................................6

1                                    **INTRODUCTION**

2        Plaintiff's Opposition confirms that it is unable to cure any of the

3 deficiencies in its pleading identified by Defendant ICM Partners in its Motion to

4 Dismiss the Second Amended Complaint ("Motion").  Dkt. No. 34 ("Mot.").  ICM

5 Partners demonstrated that the SAC fails to state a claim for antitrust conspiracy

6 based on controlling Ninth Circuit authorities, and other cases applying well-

7 accepted and long-standing principles of antitrust law.  Rather than responding to

8 those arguments directly, Plaintiff merely regurgitates impertinent factual

9 allegations and legal conclusions from the SAC.  But when these allegations and

10 conclusions are discarded, as the Court may do in ruling on a motion to dismiss, it

11 is evident that whatever allegations remain are insufficient to meet the standards for

12 pleading an antitrust conspiracy, state law claims for tortious interference, or a

13 violation of the UCL that, as pled in this case, also requires proof of a conspiracy.

14        This unfortunate and ill-conceived sojourn has gone on long enough.  After

15 Plaintiff has thrown much against the proverbial wall, but none of it sticks.  After

16 two tries to plead a Section 2 conspiracy to monopolize, which the Court soundly

17 rejected, Plaintiff did not even attempt to cure the defects in its Section 2 claim.

18 Instead, it attempted to re-package the same allegations into a new claim under

19 Section 1.  Although the label has changed, the requirement to plead facts to

20 support an antitrust conspiracy remains, and Plaintiff has demonstrated repeatedly it

21 cannot meet that hurdle, which should surprise no one:  Plaintiff's own allegations

22 and claimed statistics demonstrate ICM Partners, United Talent Agency, Inc.,

23 William Morris Endeavor, and Creative Artists Agency continually battle one

24 another, and other talent agencies, to win and retain clients, and to obtain, and avoid

25 splitting, commissions for packaged scripted television series whenever available.

26        After three attempts to plead an antitrust conspiracy, or tortious conduct of

27 any kind, further amendment would be futile.  This action should be dismissed with

28 prejudice.

## ARGUMENT

I.   **PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM PARTNERS' SHOWING THAT THE SAC DOES NOT STATE A CLAIM FOR VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

A.   **Plaintiff Has Not Alleged Facts To Plead Direct Evidence Of An Agreement In Restraint Of Trade.**

Plaintiff concedes, (Dkt. No. 40 ("Opp.") at 12-13), that to pass muster under *Twombly*, conspiracy allegations must "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008); *see also* Mot. at 9-11 (discussing and citing cases).

Nevertheless, Plaintiff contends that it has sufficiently alleged direct evidence of a conspiracy in the SAC because it alleges that: (1) sometime prior to and up until early 2000s, (2) certain executives who represented the Agencies on the ATA's Board of Directors, (3) participated in the ATA's "strategy" or "plan" to "let 16(g) expire and not return to the bargaining table." Opp. at 14.[1]  This is insufficient as a matter of law.  At best, these allegations amount to a claim that the Agencies participated in trade association activities and advocated for positions that were in their own individual self-interest (indeed, "in their best interests," SAC ¶ 50).  But "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) ("*In re Musical Instruments*").  Missing are any factual allegations supporting the conclusory statements that the Agencies "conspired" or "agreed."

Plaintiff also once again references an alleged "price fixing" agreement. Opp. at 5-7, 15-16.  In support of its claim that the Agencies have somehow agreed to fix prices in the proposed relevant market, Plaintiff cites a single sentence, taken out of context, from a magazine's transcription of an October 2014 interview, in

---

[1] Notably, Plaintiff appears to have abandoned a conspiracy claim based on any other alleged "agreements" referenced in the SAC.  *See, e.g.*, Mot. at 5 (describing other purported agreements); SAC ¶¶ 118-20.

DEFENDANT ICM PARTNERS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC
Case No. 2:15-CV-01086-BRO (FFMx)

1  which a single individual from UTA stated: "We'll create a new monetary system.
2  We'll hunker down and come up with a system of mathematics, in which the four
3  of us will judge what everything's worth." *Id.* at 5, 15.  Plaintiff argues that this
4  unilateral and, as the context reveals, obviously sarcastic, quip evidences an
5  agreement "to fix the de facto single-firm price of a TV package in the relevant
6  market (scripted TV) . . . ." *Id.* at 5, 15-16.  But such an interpretation is not only
7  implausible—it is also directly contradicted by Plaintiff's own allegations that
8  television packages have been in use for more than half a century (*see, e.g.*, SAC ¶¶
9  28, 34), which means that Plaintiff cannot also allege a contemporaneous or
10  subsequent change as would be required to plead conspiracy.  *Daniels-Hall v. Nat'l*
11  *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Steckman v. Hart Brewing, Inc.*,
12  143 F.3d 1293, 1295-96 (9th Cir. 1998).

13          The comment was made as part of a roundtable discussion with four agents
14  about the new challenges of representing artists in the evolving television industry.
15  SAC, Ex. K.  Since new online entrants Netflix and Amazon do not share ratings
16  information, and such data is typically utilized by the agents in renegotiations on
17  behalf of their clients, the agents commented that they would have to come up with
18  other data, such as counting trophies or the online entrant's subscriber base.  *Id.* at
19  pp. 70-71.  With that context, the statement cannot plausibly be read as referencing
20  packaging, pricing, or any other topic that could support an illegal agreement.
21  Beyond that, even if the statement could be read as an offer to collude on price—
22  which it cannot—the SAC does not include any factual allegations to show
23  acquiescence by the other participants.  Plaintiff's purported "price fixing"
24  allegations are thus implausible and unsupported.  Because Plaintiff implicitly
25  concedes—by failing to identify any other pertinent allegations—that it alleges no
26  details other than the Agencies' participation in ATA activities to suggest a
27  conspiracy, the Section 1 claim should be dismissed with prejudice.
28

### B.    Plaintiff Has Not Alleged Facts From Which It Is Plausible To Infer An Agreement In Restraint Of Trade.

Plaintiff does not even attempt to counter ICM Partners' showing that Plaintiff's allegations are insufficient to plead an agreement in violation of Section 1 using circumstantial evidence. *See* Mot. at 11-14. Instead, Plaintiff makes opaque references to a "preceding agreement," to unspecified "industry structure . . . and industry practices" that it claims "facilitate collusion," and to "monumental changes to the [Agencies] and how they conduct business" that occurred over the course of *more than a decade*. Opp. at 16. Putting aside the fact that Plaintiff did not bother to identify what "agreement," industry "structure" or "practices," or "changes" it supposedly pleaded, Plaintiff's allegations are still insufficient as a matter of law because none of the conduct alleged is "inconsistent with unilateral conduct" or "largely consistent with explicitly coordinated action." *In re Musical Instruments*, 798 F.3d at 1194.

*First*, Plaintiff does not dispute in its Opposition and implicitly concedes that it is economically rational for talent agencies to decide independently to seek out packaging opportunities for their clients. Opp. at 6 (discussing the profitability of packages); *see also* SAC ¶¶ 28, 83. More importantly, Plaintiff offers no factual allegations to suggest that the Agencies suddenly and simultaneously began participating in packaging, or any other fact suggesting that the decisions were made in "parallel." *In re Musical Instruments*, 798 F.3d at 1195-96 ("[a]llegations of such slow adoption of similar policies does not raise the specter of collusion"). To the contrary, Plaintiff affirmatively alleges that television packages have been in use for more than half a century. *See, e.g.*, SAC ¶¶ 28, 34. Thus, the fact that each of the Agencies participate in packaging is insufficient to "raise a suggestion of preceding agreement" and is therefore insufficient to state a Section 1 claim.

*Second*, Plaintiff entirely ignores the fact that its pleadings affirmatively allege that the Agencies do not co-package with one another *exclusively*. *E.g.* SAC

1    ¶ 73.  Thus Plaintiff's own allegations belie its contention that the Agencies agreed

2    to split package commissions only with each other in a purported effort to impair

3    the ability of smaller agencies to compete.  Moreover, Plaintiff does not dispute that

4    basic probability confirms that when the studios pay a co-package commission to

5    two or more agencies for a particular series, the participants would more often

6    include the Agencies, since Plaintiff admits that the Agencies "represent the

7    world's largest pool of talent."  *See* SAC ¶¶ 73, 94; *see also* SAC ¶ 83.

8         *Third*, Plaintiff does not even attempt to counter the case law discussed in the

9    Motion standing for the proposition that the Agencies' "mere participation in trade-

10   organization meetings where information is exchanged and strategies are advocated

11   does not suggest an illegal agreement."  *In re Musical Instruments*, 798 F.3d at

12   1196; Mot. at 14-15.  Thus, the allegation that the Agencies took part in a trade

13   association and advocated for positions in the individual economic self-interest of

14   each (indeed, "in their best interests," SAC ¶ 50) is no indicia of collusion.

15        *Finally*, Plaintiff ignores the Motion's showing that the mere fact that the

16   proposed relevant market has become more concentrated during the past decade or

17   more does not support an inference of collusion.  *See* Mot. at 15.

18        Rather than addressing the authorities cited in the Motion, or countering ICM

19   Partners' showing that the conduct alleged in the SAC suggests only rational, legal

20   business behavior, Plaintiff cites authority that actually undermines its own

21   position.  Opp. at 16 (citing *Oxbow Carbon & Minerals, LLC v. Union Pac. R.R.*

22   *Co.*, 926 F. Supp. 2d 36 (D.D.C. 2013)).  In *Oxbow*, the court granted a motion to

23   dismiss because it found the allegations that "plus factors," which included "a

24   parallel sudden shift in defendants' conduct in the context of an industry structure

25   conducive to collusion and alongside an alleged conspiracy regarding pricing" were

26   insufficient to state a Sherman Act claim.  926 F. Supp. 2d at 47.  The court held

27   that such facts, alone, could not support an antitrust conspiracy in the absence of

28   "basic factual information" about the alleged conspiracy such as "how the alleged

1  agreement came about, the basic terms of the agreement itself, or how the

2  defendants used the agreement to monopolize the rail freight market." *Id.*

3      Here, as in *Oxbow*, Plaintiff was required, and has failed, to state even the

4  most basic factual information about the formation and operation of any alleged

5  conspiracy.  Likewise, as in *In re Musical Instruments*, Plaintiff failed to identify a

6  single "plus factor" from which an agreement can be inferred, which means its

7  Section 1 claim should be dismissed.

8
9  **C.   Plaintiff Has Not Alleged Facts To Plead That ICM Partners Coerced Buyers Of Talent To Refuse To Deal With Plaintiff.**

10      Plaintiff does not even attempt to argue that its allegations suggesting some

11  sort of illegal vertical conspiracy are sufficient.  *See* Opp. at 13-14 (failing to

12  reference any vertical agreement).  Nor does Plaintiff address any of the case law in

13  the Motion.  *See* Mot. at 15-16.  Although Plaintiff repeats, word for word, the

14  SAC's allegations, that the Agencies somehow pressure vertical players to "refus[e]

15  to deal" with other agencies, (Opp. at 7-9), Plaintiff implicitly concedes—in failing

16  to argue otherwise—that its allegations of vertical agreement are insufficient to

17  state a claim under Section 1.  *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4

18  (9th Cir. 2005) (party waives challenge to claims by failing to oppose).  Plaintiff

19  has abandoned this claim for good reason: because the theory is not cognizable.

20  The mere fact that a market participant may exert economic pressure on another

21  vertical participant in an attempt to convince it to behave in a certain way is not

22  sufficient, as a matter of law, to state a claim under Section 1.  *See* Mot. at 16.

23
24  **D.   The Random Antitrust "Buzz Words" In The SAC Fail to State a Claim Under Section 1.**

25      Plaintiff makes passing reference to "allocation of [the] relevant market,"

26  (Opp. at 6, 17), but fails to point to any factual allegations describing how the

27  purported market has been allocated amongst the alleged co-conspirators or any

28  reduction in competition amongst them.  Although Plaintiff argues that "co-

1    packaging agreements, dominated by the [Agencies], allocate the market and
2    restrict[] competition," (Opp. at 17), Plaintiff fails to explain how this could be so.
3    Nor does Plaintiff address its own allegations demonstrating, to the contrary, that
4    competition among Defendants and their alleged co-conspirators remains intense,
5    and that packaged scripted series opportunities have more than doubled.  *See* SAC ¶
6    73 & Exs. C, F–H; *see also Daniels–Hall*, 629 F.3d at 998 (courts not required to
7    accept allegations that are contradicted by exhibits attached to complaint, matters
8    subject to judicial notice, or merely conclusory or unwarranted deductions of fact).
9         Similarly, although Plaintiff once again repeats its allegations that packaging
10   arrangements constitute "predatory pricing," (Opp. at 5), Plaintiff fails to address
11   the cases cited by ICM Partners or explain how packaging commissions could
12   possibly constitute predatory pricing under the law.  Mot. at 18.  Plaintiff does not
13   dispute that to plead predatory pricing, Plaintiff must state factual allegations
14   demonstrating that Defendants priced below their costs and later had a dangerous
15   probability of recouping any losses with supracompetitive pricing.  *See* Mot. at 18.
16   But not only has Plaintiff failed to allege any change in pricing in the half century
17   since packaging began, but Plaintiff affirmatively alleges that packaging fees are
18   profitable and never suggests they were ever unprofitable.  *E.g.* SAC ¶¶ 24, 28.
19        Plaintiff cannot have it both ways: it cannot plausibly allege both that
20   Defendants are making money on their packages and that Defendants are pricing
21   below their costs.  In any event, even if Plaintiff's "predatory pricing" allegations
22   made sense—which they do not—Plaintiff has not alleged a single fact to show that
23   Defendants reached any agreement on price.  Because Plaintiff fails, for the third
24   time, to allege any facts demonstrating a conspiracy to restrain trade, the Section 1
25   claim should be dismissed with prejudice.
26
27
28

1

2

### E.    Plaintiff Cannot Plead Antitrust Injury

3

4       Plaintiff concedes that it must allege both "that [a] defendant's behavior is

5    anticompetitive and that plaintiff has been injured by an 'anti-competitive aspect of

6    the practice under scrutiny.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192,

7    1200 (9th Cir. 2012) (citation omitted); *see also* Opp. at 18.  Plaintiff also concedes

8    that its sole alleged injury is the loss of Clients #1 and #2.  Opp. at 18.  But Plaintiff

9    fails to distinguish any of the cases relied upon by ICM Partners, or even to

10   disagree that the ability to offer lower commissions is a mark of more vigorous

11   competition, not less.  *See* Mot. at 19-21.  Rather, Plaintiff contends it has

12   sufficiently alleged antitrust injury because it claims that "two premium,

13   packageable clients were poached by [Defendants]" and that this "alleged injury

14   flows from an anticompetitive aspect of" Defendants' alleged conduct, namely, "the

15   illusory price offered by [the Agencies], and is an aspect of the diminished choice

16   in meaningful representation . . . ." Opp. at 18 (emphasis omitted).

17       But those allegations are to no avail because they still fail to draw any

18   plausible link between the allegedly anticompetitive conduct, on the one hand—the

19   purported agreement "to proceed without Rule 16(g)" (Opp. at 1, 13-14; SAC ¶

20   50)—and Plaintiff's sole, admitted injury: namely, the loss of Clients #1 and #2, on

21   the other.  Similarly, Plaintiff never describes any link between the purported

22   agreement to "bust" Rule 16(g) in the early 2000s, (Opp. at 13-14), and Plaintiff's

23   alleged loss of clients more than a decade later.  Opp. at 10-11 (describing loss of

24   two clients in 2014).  Plaintiff never explains how the alleged "bust" of Rule 16(g)

25   eventually caused there to be an increase in the availability of package commissions

26   (which, again, as a matter of probability would be expected to grow with the

27   increase in scripted series), or resulted in any actionable "diminished choice."

28       As the Ninth Circuit has explained, even if an "agreement has the effect of

reducing consumers' choices or increasing prices," that "does not sufficiently allege

-8-

an injury to competition" because each is "fully consistent with a free, competitive market." *Brantley*, 675 F.3d at 1202; *see also* Dkt. No. 36-1 at 12-13. Here, Plaintiff does not plead that the alleged conspiracy caused agencies to exit the market, resulted in supracompetitive prices, or otherwise reduced competition, which then caused Clients #1 or #2 to face "diminished choice" for representation. To the contrary, Plaintiff alleges the opposite—that Clients #1 and #2 had many choices and exercised those options, and demonstrated their free will, by choosing to leave one agency to join another.

Likewise, and consistent with Plaintiff's abandonment of the allegations of other purported agreements as noted above (*see supra* note 1), Plaintiff fails to explain how its injury stems from any of the other allegedly anticompetitive conduct claimed in Plaintiff's SAC. *See* Mot. at 19-21. Nowhere does Plaintiff argue that Clients #1 and #2 left *because* Defendants refused to split a particular package with Plaintiff, or *because* buyers of talent refused to employ Clients #1 or #2 due to fear of, threat from, or loss of opportunity at the hands of Defendants.

Plaintiff's sole complaint is that Defendants' alleged practice of offering clients lower commissions is restricting its own ability to retain clients (SAC ¶¶ 27), which confirms that Plaintiff is complaining about injury to a competitor, not competition. *Atl. Richfield Co. v. USA Petro. Co.*, 495 U.S. 328, 339 (1990). This is insufficient to state a claim, and Plaintiff's antitrust cause of action should be dismissed with prejudice.

**II.   PLAINTIFF'S OPPOSITION FAILS TO OVERCOME ICM PARTNERS' SHOWING THAT THE SAC DOES NOT STATE A CLAIM FOR INTERFERENCE**

**A.   The SAC Does Not State A Claim For Interference With Contract.**

Plaintiff concedes that for its tortious interference with contract claim to survive, Plaintiff must either plausibly allege that the purported contract with Client #2 was not terminable at will, or must plead an independently wrongful act. Opp.

at 20; *see also* Dkt. No. 28 at 9.  But Plaintiff fails to overcome ICM Partners' showing that neither requirement is satisfied.[2]

  *First*, Plaintiff implicitly concedes, by failing to address, that the alleged oral agreement between itself and Client #2—with its initial term of two years, followed by various renewal terms—must have been terminable at will because it could not have been performed within a year and thus would be subject to the statute of frauds.  *Rosenthal v. Fonda*, 862 F.2d 1398, 1400-01 (9th Cir. 1988); Mot. at 23.

  *Second*, Plaintiff does not refute ICM Partners' showing that Rider D could not possibly create a term agreement out of an otherwise at-will agreement.  Rather, Plaintiff merely repeats its allegations and argues that ICM Partners' showing should be disregarded or it would convert the Motion to a summary judgment motion.  Opp. at 20.  Plaintiff is wrong as a matter of law.  ICM Partners did not offer any evidence in connection with the Motion other than that which is properly judicially noticeable.  Specifically, ICM Partners requests that the Court take judicial notice of the ATA/DGA Agreement including Rider D, which Plaintiff relied upon and quoted from, but failed to attach to the SAC, in a last ditch effort to avoid dismissal of its claim.  *See* Dkt. No. 35; SAC ¶¶8, 128, 129.[3]

  Contrary to Plaintiff's suggestion, the Court may interpret the plain language of the ATA/DGA Agreement and Rider D, as a matter of law, in connection with ruling on a motion to dismiss.  *See Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 491-92 (9th Cir. 2000) (affirming order granting motion to dismiss complaint on contract grounds and observing that contract interpretation is a question of law);

---

[2] Plaintiff's opposition reveals an additional reason why the interference allegations fail.  Even under Plaintiff's implausible interpretation of Rider D, a client is still permitted to terminate at any time unless the client "is entitled to an amount equal to his last compensation at a pro rata equivalent to 3 weeks of services."  SAC ¶ 128.  But Plaintiff does not allege that this three weeks' pay condition way met.  Plaintiff alleges only that Client #2 was to direct a single episode of "Lottery."  *See* Opp. at 11.

[3] Plaintiff did not oppose the request for judicial notice and does not offer any authority or argument to dispute that the ATA/DGA Agreement is admissible and may be considered and relied upon by the Court.

1   *see also Block v. eBay, Inc.*, 747 F.3d 1135, 1138-40 (9th Cir. 2014) (affirming

2   order granting motion to dismiss contract claim and interpreting contract as a matter

3   of law).  And the Court may reject allegations that contradict documents attached to

4   the Complaint or those judicially noticeable.  *Daniels-Hall*, 629 F.3d at 998.  Here,

5   Plaintiff does not counter ICM Partners' showing that the plain language of the

6   ATA/DGA Agreement and Rider D reveals that Rider D cannot create a term

7   agreement where none exists in the first place.  Mot. at 22-25.  Because the plain

8   language of Rider D contradicts Plaintiff's implausible allegations, the Court

9   should reject the allegations and find that Plaintiff failed to plead a term agreement.

10          Finally, because Plaintiff has failed to state a claim under Section 1 of the

11   Sherman Act, as described above and in the Motion, Plaintiff failed to plead the

12   independently wrongful act necessary to defeat the competitor's privilege.  Thus,

13   Plaintiff's claim for interference with contract should be dismissed.

14          **B.     The SAC Does Not State A Claim For Interference With**
                     **Prospective Economic Advantage.**
15

16          Plaintiff agrees that its claim for tortious interference with prospective

17   economic advantage rises and falls with its claim under Section 1 of the Sherman

18   Act.  Opp. at 21.  Thus, because the Sherman Act claim should be dismissed,

19   Plaintiff's claim for interference with contract should likewise be dismissed.

20   **III.   PLAINTIFF'S UCL CLAIM CANNOT SURVIVE BECAUSE THE**
            **SAC LACKS FACTUAL ALLEGATIONS SUFFICIENT TO PLEAD A**
21          **CONSPIRACY.**

22          Plaintiff does not dispute the Court's authority to determine, now, whether

23   Plaintiff's claim under the UCL survives.  Plaintiff also does not dispute that

24   without a viable Sherman Act claim, there can be no UCL "unlawful" prong claim.

25          Plaintiff nonetheless argues that its UCL claim survives under the "unfair"

26   prong.  Plaintiff relies only upon *Durell v. Sharp Healthcare*, 183 Cal. App. 4th

27   1350; 108 Cal. Rptr. 3d 682 (2010).  However, *Durell* merely sets forth the *Cel-*

28   *Tech* standard and is distinguishable since it arises in the context of a claim by a

consumer, not a competitor.  *See Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87; 83 Cal. Rptr. 2d 548 (1999).  *Durrell* does nothing to address the fact that Plaintiff's UCL "unfair" prong claim falls with its conspiracy claim.

Plaintiff fails to address ICM Partners' argument that the UCL claim, as pled, requires factual allegations sufficient to show a plausible conspiracy.  Mot. at 18, n.3.  The Court's prior ruling acknowledges that Plaintiff's UCL claim depends upon a conspiracy,[4] and Plaintiff does not contend otherwise.  Accordingly, Plaintiff's failure to plead a conspiracy precludes its UCL claim.  *See Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 866-67; 107 Cal. Rptr. 2d 841 (2001).

Moreover, Plaintiff's purported statistical information does not support its UCL allegation that the demise of Rule 16(g) harmed competition.   Plaintiff's claims that the Agencies' packages jumped "from sixty percent (60%) to the current domination and control of ninety-three percent (93%) of the scripted series package market," (Opp. at 2), and that they "increased their share of talent driven scripted television packaging by 20[%]" (SAC, Ex. I) are simply wrong.  Plaintiff's own "statistics" show, not surprisingly, that in 2001-2002 the Agencies "represent[ing] the world's largest pool of talent" participated in eighty-two percent (82%) of packages: thus, any purported change in market share is actually a fraction of what Plaintiff alleges (i.e., 11% versus 33%).[5]  Since Plaintiff fails to allege any unfair conduct that threatens or harms competition, the UCL claim should be dismissed.

## CONCLUSION

For the foregoing reasons and for those stated in the Motion, ICM Partners respectfully requests that the Court dismiss the entire SAC with prejudice.

---

[4] Dkt. No. 28 at 7 (referring to "conspiring") & 8 ("acting in concert").
[5] This is so because Plaintiff omits Broder Webb agency from its 2001-2002 packages analysis.  While Plaintiff includes the 2001-2002 packages attributed to both William Morris Agency and Endeavor, which subsequently merged into WME, Plaintiff failed to include packages attributed to Broder Webb, which was later acquired by ICM (SAC, ¶¶49, 62).  With Broder Webb's 2001-2002 shares included, the Agencies comprise 82% of packages using Plaintiff's own statistics.

1

2

DATED:  December 7, 2015

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PERKINS COIE LLP**

By: */s/ Michael Garfinkel*
    Michael B. Garfinkel

Attorneys for Defendants
INTERNATIONAL CREATIVE
MANAGEMENT PARTNERS LLC