JS-6
LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | | Date | April 20, 2016 |
|---|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | | |

Present: The Honorable   **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS)

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT [50, 52]

## I.      INTRODUCTION

Pending before the Court are two Motions to Dismiss filed by Defendants International Creative Management Partners, LLC ("ICM"), (Dkt. No. 50), and United Talent Agency, Inc. ("UTA"), (Dkt. No. 52), (collectively, "Defendants").  Defendants seek to dismiss all of the claims in Plaintiff Lenhoff Enterprises, Inc.'s ("Plaintiff") Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 50, 52.)  Plaintiff alleges four causes of action in its TAC: (1) conspiracy to unreasonably restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1; (2) unfair competition and unlawful and unfair business practices in violation of California Business and Professions Code sections 16720 *et seq.* (Cartwright Act) and 17200 *et seq.* (Unfair Competition Law or "UCL"); (3) intentional interference with contract; and, (4) intentional interference with prospective economic advantage.  (Dkt. No. 49.)  After considering the papers filed in support of and in opposition to the instant Motions, the Court deems these matters appropriate for resolution without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the Court **GRANTS** Defendants' Motions.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | | Date | April 20, 2016 |
|---|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | | |

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Plaintiff and Defendants are talent agencies doing business in California, providing their agency services to individuals in the entertainment industry.  (Pl.'s Third Am. Compl. ("TAC") ¶¶ 1–3, 7–9.)  Plaintiff is a small boutique agency with two agents, (TAC ¶ 9), while Defendants are large agencies with significantly more agents and a larger clientele than Plaintiff, (TAC ¶¶ 11–12).

### B.    Sherman Act § 1 Claim

Plaintiff claims that beginning in the late 1990s and continuing to 2002, Defendants and other large talent agencies "conspired and agreed . . . that it was in their best interests to proceed without Rule 16(g)" of the franchise agreement between the Association of Talent Agents ("ATA")[1] and the Screen Actors' Guild ("SAG").  (TAC ¶ 25.)  Rule 16(g) had two pertinent effects: (1) it precluded agencies from accepting investments from "outside/offshore investors, private equity hedge funds, ad agencies, advertisers[,] and independent producers," (TAC ¶ 28); and, (2) it prevented an agency from possessing "*any* financial interest in a production or distribution company," (TAC ¶ 24).  With the expiration of Rule 16(g) imminent, in February 2002, ATA and SAG agreed to amend the rule's restrictions.  (TAC ¶ 32.)  The deal allegedly provided that agents would be allowed "to take up to a 20% stake in production and distribution companies," and that advertising firms and independent (non-studio) producers would be permitted to take up to 20% stakes in talent agencies.  (*Id.*)  However, upon submission to SAG members for approval, the Rule 16(g) agreement was rejected.  (TAC ¶ 33.)

Plaintiff claims that the ATA—specifically, the ATA's Strategic Planning Committee, comprised of UTA's Jim Berkus, ICM's Jeff Berg, and representatives from the other large agencies—did not renegotiate the deal and instead awaited Rule 16(g)'s expiration.  (TAC ¶¶ 22, 37.)  Plaintiff alleges that Defendants' intent "in bringing about the demise of Rule 16(g) . . . was to destroy competition and to build a cartel of Uber Agencies."  (TAC ¶ 27.)  Without Rule 16(g)'s restrictions, Plaintiff alleges that

---

[1] All of the named parties in this action are members of the ATA.  (TAC ¶¶ 8, 21.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01086-BRO (FFMx)** | | Date | April 20, 2016 |
|---|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | | |

Defendants and the two other large agencies, William Morris Endeavor Entertainment ("WME") and Creative Artists Agency ("CAA"), received significant increases in investments and business. (TAC ¶¶ 3, 38.) As a result, Plaintiff avers that the four "Uber Agencies"—comprised of ICM, UTA, WMA, and CAA (collectively, the "Big 4 Agencies")—now control 94% of the scripted series packaging market. (TAC ¶¶ 3, 45.)

Plaintiff goes on to allege that the increase in the Big 4 Agencies' business is caused by their ability to provide exclusive "packaging" arrangements to clients, which allow larger agencies, like Defendants, not to charge the standard 10% commission typically charged by smaller agencies, such as Plaintiff. (TAC ¶ 54.) In lieu of the 10% fee, Plaintiff alleges that the Big 4 Agencies earn "packaging fee[s]" from studios or production companies, which compensate the Big 4 Agencies based on the underlying work's success. (TAC ¶ 53.) The rights are allegedly in perpetuity, and the total payments to the packaging agencies can, in some circumstances, exceed the total payments to the client. (TAC ¶¶ 53, 56.) Plaintiff contends that Defendants lure talent away from smaller firms, like Plaintiff, by eliminating the standard 10% commission and offering to package the individual in future deals with studios, networks, and producers. (TAC ¶¶ 52, 54.)

Plaintiff further avers that the Big 4 Agencies split packaging fees with each other, but they do not split with any other firms, thereby forming a "cartel" which controls the relevant market. (TAC ¶ 46.) Although Plaintiff claims that the Big 4 Agencies exclude all other talent agencies from participating in co-packaging agreements, (TAC ¶ 67), it states that in 2014/2015, two non-Big 4 Agencies co-packaged with Big 4 Agencies and that only 85 of 353 packaged scripted series were co-packaged together by and among Big 4 Agencies, (TAC ¶ 45, Exs. A, B). Plaintiff also contends that Defendants, along with the other Big 4 Agencies, conspired to coerce purchasers of talent services—studios, networks, and producers—to refuse deals with non-Big 4 Agencies and the individuals they represent. (TAC ¶ 68.) According to Plaintiff, the threatened consequence of dealing with non-Big 4 Agencies was loss of future packaging of the Big 4 Agencies' talent. (TAC ¶ 75.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

### C.      Client-Poaching Allegation

Plaintiff also alleges that around September or October 2014, one of Plaintiff's clients, Client #1, attended Defendant UTA's VIP screening of Client #1's show, during which Defendant "UTA began the process of encouraging and inducing Client #1 to break her contract with Plaintiff."  (TAC ¶ 94.)  On November 4, 2014, Client #1 allegedly informed Plaintiff that she was terminating Plaintiff's representation.  (TAC ¶ 93.)  Plaintiff similarly alleges that Defendant ICM invited another of Plaintiff's clients, Client #2, to a meeting to discuss representation/packaging, which Plaintiff alleges induced Client #2 to breach his contract with Plaintiff.  (TAC ¶ 97.)

Plaintiff further contends that the agreements with Clients #1 and #2 were verbal contracts subject to "Rider D" of the agreement between the ATA and the Directors Guild of America ("DGA").  (TAC ¶¶ 91–92, 95.)  Rider D provides as follows:

> If during any period of ninety (90) consecutive days immediately preceding the giving of notice of termination herein described, the Director (1) fails to be employed or (2) fails to receive a bona fide offer then either Director or Agent may terminate the employment of Agent hereunder by giving written notice of termination to the other party, subject to the following terms and provisions:
>
> C.      Actual employment of or contracts or bona fide offers for the employment of the Director in any field whatever in which the Director is represented by the Agent shall be deemed to be employment.  If the Director has been employed or has had contracts or bona fide offers for employment in any field in which Director is represented by Agent the Director may not terminate so long as Director is entitled to an amount equal to his last compensation at a pro rata equivalent to 3 weeks of services.

(TAC, Ex. C.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

### D.    Procedural Background

On February 13, 2015, Plaintiff filed its Original Complaint, (Dkt. No. 3), but never served it on Defendants.  Instead, Plaintiff filed its First Amended Complaint ("FAC") on June 15, 2015, (Dkt. No. 8), and served it on UTA and ICM on June 16 and June 17, respectively, (Dkt. Nos. 12, 13).  Defendants subsequently filed Motions to Dismiss on August 10, 2015, seeking to dismiss all claims in Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. Nos. 16, 18, 21.)  On September 18, 2015, the Court granted, in part, and denied, in part, Defendants' Motions.  (Dkt. No. 28.)  Namely, the Court dismissed Plaintiff's claim under § 2 of the Sherman Act without prejudice.  (*Id.* at 7.)  The Court did not address the merits of the Sherman Act claim, instead concluding that Plaintiff failed to allege any facts indicating that a conspiracy existed to create a monopoly in a single entity, as required under § 2.  (*Id.* at 6–7.)  The Court also dismissed Plaintiff's intentional interference with contract and intentional interference with prospective economic damage claims without prejudice.  (*Id.* at 9–10.)  Finally, the Court dismissed Plaintiff's claims for declaratory relief and injunctive relief with prejudice, (*id.* at 11–12), but denied Defendants' Motions as to Plaintiff's UCL claim, (*id.* at 8).

On October 12, 2015, Plaintiff filed its Second Amended Complaint ("SAC"), alleging: (1) a § 1 Sherman Act claim; (2) an unfair competition and unlawful and unfair business practices claim; (3) an intentional interference with contract claim; and, (4) an intentional interference with prospective economic advantage claim.  (Dkt. No. 31.)  Defendants subsequently filed their Motions to Dismiss on November 9, 2015.  (Dkt. Nos. 34, 36.)  The Court granted both Motions in their entirety without prejudice.  (Dkt. No. 43.)

Plaintiff filed its TAC on January 22, 2016, alleging the same causes of action as its SAC.  (Dkt. No. 49.)  On February 12, 2016, Defendants moved to dismiss the TAC.  (Dkt. Nos. 50 (hereinafter, "ICM Mot."), 52 (hereinafter "UTA Mot.").)  Plaintiff timely filed its Oppositions, (Dkt. Nos. 56 (hereinafter, "Pl.'s ICM Opp'n"), 57 (hereinafter, "Pl.'s UTA Opp'n")), and Defendants timely replied, (Dkt. Nos. 61, 62).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|----------|---------------------------|------|----------------|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

## III.    REQUEST FOR JUDICIAL NOTICE

In support of its Motion, Defendant ICM filed a Request for Judicial Notice.  (*See* Dkt. No. 51 (hereinafter, "RJN").)  A court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  A court may also take judicial notice pursuant to Federal Rule of Evidence 201(b).  Under the rule, a judicially noticed fact must be one that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

Defendant ICM requests that the Court take judicial notice of the following: (1) the ATA/DGA Agreement incorporating Rider D, which is attached to Plaintiff's TAC, (*see* TAC, Ex. C); (2) a March 2014 email between Sony executives that Plaintiff refers to in its TAC, (*see* TAC ¶ 18); and, (3) a Deadline article referenced in the Sony email.  (*See* RJN, Exs. A–C.)  Here, Plaintiff relied upon the ATA/DGA Agreement and the Sony email in its TAC, and neither party has objected to their authenticity.  (*See* TAC ¶ 18, Ex. C); *Marder*, 450 F.3d at 448.  Additionally, the Deadline article "was in the public realm at the time" the Sony executive email allegedly sent the email.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time . . . .'" (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006))).  The Court accordingly **GRANTS** Defendant ICM's request for judicial notice.[2]  However, as to the Deadline article, the Court only takes judicial notice

---

[2] Defendant ICM objects to the declarations of Ted P. Tatos and Charles Lenhoff in support of Plaintiff's Opposition.  (*See* Dkt. No. 63.)  The declarations purportedly establish "that the percentage of co-packaged shows between Uber Agencies is enormously out of proportion with the statistical likelihood of such co-packaging based on the number of agencies in the market."  (Pl.'s ICM Opp'n at 24; Pl.'s UTA Opp'n at 23–24.)  In ruling on a motion to dismiss, a court may not look beyond the pleadings except in limited circumstances, none of which apply here.  *See United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (citations omitted).  Accordingly, the Court considers these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

"to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"  *Id.* (quoting *Premier Growth Fund*, 435 F.3d at 401 n.15).

## IV.  LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").  Leave to amend, however, "is properly denied . . . if amendment would be futile."  *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

---

declarations in determining only whether to grant leave to amend.  *See Acinelli v. Torres*, No. ED CV 13–1371–AB (PLA), 2015 WL 4380772, at *2 n.3 (C.D. Cal. July 16, 2015) (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir. 2001)).

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

## V.    DISCUSSION

### A.    Sherman Act Claim

Plaintiff argues that it sufficiently pleads the existence of a Sherman Act § 1 violation.  (*See* Pl.'s ICM Opp'n at 8–19; Pl.'s UTA Opp'n at 8–19.)  Plaintiff's Sherman Act allegations can best be summarized as follows: First, Defendants agreed amongst themselves that it was in their best interest to allow Rule 16(g) to expire, and to that end, conspired to cause that result by refusing to renegotiate with SAG regarding the Rule 16(g) amendments.  (TAC ¶¶ 25, 36–37.)  Next, given the lack of financial restrictions resulting from Rule 16(g)'s expiration, Defendants and the other Big 4 Agencies obtained significant capital investments from outside sources.  (TAC ¶ 38.)  The Big 4 Agencies then lured talent away from other agencies by eliminating the 10% commission in lieu of a packaging fee.  (TAC ¶¶ 52–54, 56.)  Given the influx of talent, the Big 4 Agencies were able to control the relevant market by conspiring to exclusively co-package with each other, thereby harming competition.  (TAC ¶¶ 43, 75–76, 78.)  Plaintiff also alleges that Defendants agreed to coerce studios, networks, and producers to refuse deals with non-Big 4 Agencies, threatening to withhold talent as a consequence of noncompliance. (TAC ¶ 63.)  The resulting harm to competition, according to Plaintiff, is a lack of diversity among talent and a reduction of agencies in the scripted series market, thereby allowing the Big 4 Agencies to set the prices for talent.  (TAC ¶¶ 17, 49, 78–79.)  Moreover, Plaintiff alleges that it was harmed by the anti-competitive aspect of Defendants' practices—namely, the package-fee incentive—when Defendants "poached" two of Plaintiff's clients.  (TAC ¶ 81.)

### 1.    Per Se Analysis—Price-Fixing Allegation

As discussed in the Court's prior Order, claims under § 1 of the Sherman Act are evaluated under either a per se analysis or the rule of reason.  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1024–25 (C.D. Cal. 2011) (citing *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989)).  To state a claim for a per se violation of the Sherman Act, Plaintiff must sufficiently plead that Defendants (1) entered into an agreement (2) to fix prices or divide the market.  *Id.*  Here, as in its SAC, Plaintiff alleges that the Big 4 Agencies are engaged in horizontal price-fixing.  (*Compare* TAC ¶¶ 43, 78, *with* SAC ¶¶ 73, 84, 116.)  However,

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

Plaintiff adds no factual details to support this conclusion.  Accordingly, the Court finds that Plaintiff again fails to sufficiently plead a per se Sherman Act violation.

### 2.      Rule of Reason Analysis—Unreasonable Restraint of Trade Allegations

To sufficiently state a § 1 claim under the rule of reason, Plaintiff must sufficiently plead each of the following elements: "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition."  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (internal quotation marks omitted).  In addition to these elements, Plaintiff must also plead "(4) that [it was] harmed by [Defendants'] anti-competitive contract, combination, or conspiracy, and that this harm flowed from an anti-competitive aspect of the practice under scrutiny."  *Id.* (internal quotation marks omitted).  "In its design and function the rule [of reason] distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest."  *Id.* (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)).

### a.      Conspiracy

As discussed above, Plaintiff alleges that Defendants engaged in a conspiracy to (1) bring about the expiration of Rule 16(g), (2) exclude non-Big 4 Agencies from co-packaging contracts and not split packaging fees with anyone other than the Big 4 Agencies, and (3) coerce studios, networks, and producers to boycott non-Big 4 Agencies through threats of withholding the Big 4's talent from those who do not comply.  Defendants compare Plaintiff's TAC to its SAC and argue that Plaintiff has again failed to plead these facts with the requisite specificity.  (ICM Mot. at 6–16; UTA Mot. at 5–12.)  Once again, the Court agrees with Defendants.  (*See* Dkt. No. 43 at 8–11.)

To sufficiently "allege an agreement or conspiracy between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin."  *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1047

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|----------|------------------------|------|----------------|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

(9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565 n.10). "[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement," but such terms, alone, are insufficient to state claim of conspiracy. *Twombly*, 550 U.S. at 557 (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).

Like its SAC, Plaintiff's TAC relies upon circumstantial evidence, not direct evidence, to plead the existence of a conspiracy. (TAC ¶ 47; *see also* Dkt. No. 43 at 9 n.3.) When relying on circumstantial evidence to allege a conspiracy, the plaintiff may point to the defendants' parallel conduct to create the inference that the parties have entered into an agreement. *Twombly*, 550 U.S. at 553 ("[A] showing of parallel business behavior is admissible circumstantial evidence from which the fact finder may infer agreement . . . ."). However, parallel conduct alone does not constitute a Sherman Act violation. *Id.* "'[T]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" *Id.* (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)).

In the Ninth Circuit, courts distinguish "permissible parallel conduct from impermissible conspiracy by identifying certain 'plus factors,'" which are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In re Musical Instruments*, 798 F.3d 1186, 1194 (9th Cir. 2015) (citing *Twombly*, 550 U.S. at 557 n.4). "If pleaded, they can place parallel conduct in a context that raises a suggestion of preceding agreement," thereby distinguishing it from lawful independent action. *Id.* (internal quotation marks omitted).

As in the previous Order, the Court concludes that Plaintiff fails to allege sufficient facts regarding the purported conspiracies between Defendants and the other Big 4 Agencies. (*See* Dkt. No. 43 at 10.) Like the SAC, the only alleged conspiracy of which Plaintiff provides names of participating individuals is the alleged agreement "to eliminate Rule 16(g)." (TAC ¶¶ 22–23.) Plaintiff alleges that "the ATA's Strategic Planning Committee consisting of UTA's Jim Berkus, ICM's Jeff Berg, CAA's Bryan Lourd, William Morris' Walt Zifkin, Endeavor's Rick Rosen, and Broder/Kurland/Webb/ Uffner's Bob Broder" was created "with the specific goal and intent of eliminating the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|----------|-----------------------------|------|----------------|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

[Rule 16(g)] prohibitions on outside investments and funding." (TAC ¶ 75.) In sum, Plaintiff alleges that Defendants' agents on the ATA's Strategic Planning Committee "agreed amongst themselves that it was in their best interests to proceed without Rule 16(g)." (TAC ¶ 25.)

Defendants argue that their participation in the ATA meetings cannot be construed as an illegal conspiracy. (UTA Mot. at 8.) Further, Defendants contend that even assuming the ATA members thought it in their best interest to allow Rule 16(g) to expire, that is not "'inconsistent with unilateral conduct' or 'largely consistent with explicitly coordinated action.'" (ICM Mot. at 12 (quoting *In re Musical Instruments*, 798 F.3d at 1194).) Rather, according to Defendants, this allegation "suggest[s] rational, legal business behavior." (*Id.* (quoting *Kendall*, 518 F.3d at 1049).) Defendants also point to the Court's prior Order, in which the Court noted that it was SAG, not the ATA, which decided to reject the new Rule 16(g) terms, thereby allowing Rule 16(g) to expire. (UTA Mot. at 7 (citing Dkt. No. 43 at 11); ICM Mot. at 9 (citing Dkt. No. 43 at 11); *see also* TAC ¶¶ 32–34.)

First, "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *In re Musical Instruments*, 798 F.3d at 1196. Thus, merely stating—as the SAC did, (SAC ¶ 49)—that Defendants' agents served on the Strategic Planning Committee and "had ample opportunity" to plan to eliminate Rule 16(g) fails to sufficiently plead a conspiracy claim. (TAC ¶ 23; *see* Dkt. No. 43 at 11.) Adding dates of committee meetings and communications likewise does not cure this defect. (*See* TAC ¶ 23.) Further, as the Court concluded in its previous Order, the decision to permit Rule 16(g) to expire is as much evidence of a conspiracy as it is evidence that each individual agency acted for its own independent benefit. (Dkt. No. 43 at 11.) In sum, that the expiration of Rule 16(g) would ultimately benefit Big 4 Agencies does not demonstrate that Defendants conspired to bring about its demise, especially in light of the fact that SAG, not the ATA, rejected a new version of Rule 16(g).

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01086-BRO (FFMx)** | | Date | April 20, 2016 |
|---|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | | |

As for the alleged conspiracy to exclusively co-package with Big 4 Agencies, Plaintiff's TAC relies on two sets of data[3] which purportedly show that "only 2 of 53 agencies" were able to co-package with Big 4 Agencies and that 85 of 353 packaged series were co-packaged amongst Big 4 Agencies. (TAC ¶ 45, Exs. A, B (emphasis omitted).) An "amended complaint may only allege 'other facts consistent with the challenged pleading.'" *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Here, in its SAC, Plaintiff alleged that in 2014/2015, sixteen co-packages included non-Big 4 Agencies, while Big 4 Agencies co-packaged exclusively with one another on eighty-nine occasions. (SAC ¶ 73.) However, Plaintiff's TAC includes a chart representing that Big 4 Agencies co-packaged exclusively amongst themselves eighty-five times and with smaller agencies only twelve times in 2014/2015. (TAC ¶ 45, Exs. A, B.)

Plaintiff attempts to account for these discrepancies by pointing to "[r]ecent information published by the FX Network and other sources." (TAC ¶ 45 n.2.) However, the Court need not accept the newly alleged, contradictory data as true. *Azadpour v. Sun Microsystems, Inc.*, No.C06-03272 MJJ, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the challenged allegations as 'false and sham.'"). Even assuming the Court considered the data, it fails to establish that Defendants conspired to exclude non-Big 4 Agencies from co-packaging. Indeed, the data demonstrates that Big 4 Agencies co-packaged with smaller agencies on at least twelve occasions. (*See* TAC, Ex. A.) Accordingly, Plaintiff's own allegations contradict its claim that Defendants' co-packaging agreements are exclusive to the Big 4 Agencies.

Further, like its SAC, Plaintiff's TAC fails to provide the names of any individuals who allegedly conspired to coerce studios, networks, and producers to boycott smaller agencies. (*See* Dkt. No. 43 at 11.) Nor does the TAC include a reference to a specific

---

[3] Defendant UTA claims to have contacted Plaintiff regarding the "facial inaccuracies" of this data, (UTA Mot. at 3 n.1), and Plaintiff concedes the existence of "two minor errors," (Pl.'s UTA Opp'n at 13 n.5). Even assuming the exhibits were entirely accurate, the data still conflicts with Plaintiff's allegation that Defendants conspired to entirely exclude non-Big 4 Agencies from co-packaging with them.

LINK:

| Case No. | CV 15-01086-BRO (FFMx) | | Date | April 20, 2016 |
|---|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | | |

time or place such agreements took place.  Plaintiff also fails to plead a specific instance of a threat against a studio, network, or producer.  Thus, Plaintiff fails to sufficiently plead a conspiracy based on the alleged coercion.

For the foregoing reasons, the Court concludes that Plaintiff has again failed to sufficiently plead a conspiracy.  For this reason alone, the Court could grant Defendants' Motions as to Plaintiff's § 1 Sherman Act claim.  However, as discussed below, Plaintiff also fails to satisfy the injury to competition element.

### b.     Restraint of Trade—Injury to Competition

"In order to plead injury to competition, the third element of a Section 1 claim, sufficiently to withstand a motion to dismiss, 'a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably.'" *Brantley*, 675 F.3d at 1198 (quoting *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507–08 (9th Cir. 1989)).  "Rather, a claimant must, at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail . . . [that] raise a reasonable expectation that discovery will reveal evidence of an injury to competition." *Id.* (internal quotation marks and citation omitted).  The first element of a § 1 Sherman Act claim is linked with the third element, in that to establish an injury to competition, "the claimant must identify a contract, combination or conspiracy that has an anticompetitive effect." *Id.*  For example, a "horizontal agreement"—an agreement between competitors in the same market—"to set prices may injure competition because the result of such an agreement, if effective, is the elimination of one form of competition, namely price." *Id.* (internal quotation marks omitted).  "Or a group of competitors may act in concert to harm another competitor or exclude that competitor from the market and thus 'protect . . . dealers from real or apparent price competition' from the targeted competitor." *Id.* (quoting *United States v. Gen. Motors Corp.*, 384 U.S. 127, 146–47 (1966)).

Here, Plaintiff alleges that Defendants have entered into horizontal agreements that have effectively eliminated other agencies from the market, thereby facilitating horizontal price-fixing and restraining trade.  (TAC ¶¶ 43, 78.)  However, as was the case in Plaintiff's SAC, Plaintiff fails to sufficiently plead the predicate fact—an agreement or

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

conspiracy. S*ee* discussion *supra* Section V.A.2.a.  Thus, Plaintiff again fails to state a claim of injury to competition based on the alleged horizontal agreements.

Plaintiff also claims the existence of vertical agreements between Defendants and the studios, networks, and producers.  Specifically, Plaintiff alleges that Defendants coerced the studios, networks, and producers to institute a boycott of non-Big 4 Agencies through threats of withholding the Big 4 Agencies' coveted talent from future package deals from noncompliant studios, networks, and producers.  (TAC ¶¶ 63–64.)  However, this allegation fails because Plaintiff fails to plead enough facts to "raise a reasonable expectation that discovery will reveal" the existence of such agreements.  *Brantley*, 675 F.3d at 1198.  For example, Plaintiff provides no names, dates, or other facts to support this allegation.[4]  Rather, it relies on a conclusory allegation that Defendants "coerce[d]" the studios, networks, and producers to boycott non-Big 4 Agencies.  (TAC ¶ 62.)  Such an allegation lacks the requisite specificity to state a claim for an agreement under *Twombly* and *Iqbal*.

Further, it is unclear based on the alleged facts whether Defendant unlawfully coerced or lawfully pressured the studios, networks, and producers to refrain from dealing with non-Big 4 Agencies.  *See Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1263 (9th Cir. 1983) (stating that "[d]emands or threats, however, must be distinguished from mere exposition, persuasion, argument, or pressure," and that the issue in that case was whether the statements at issue were "enough to raise an inference of coercion and thus create an inference of" illegality) (internal quotation marks omitted).  Indeed, Plaintiff concedes that the Big 4 Agencies represent "top acting, writing, producing[,] and directing talent," and therefore are better suited to develop new series than smaller agencies.  (TAC ¶ 14.)  Accepting this as true, it is reasonable to infer that studios, networks, and producers would be drawn to work with Big 4 Agencies; no threats would be necessary.

---

[4] In its TAC, Plaintiff adds a quote from an alleged 2014 email sent by the chairman of Sony Pictures. (*See* TAC ¶ 18 ("They [Uber Agencies] are demanding and getting fees now on these from the financiers (they call it a 'packaging fee') and are keeping as many emerging high[-]end filmmaker projects off the market until they have full control.") (emphasis omitted); RJN, Ex. B.)  The email, however, is irrelevant to this matter, as it concerns a motion picture investment rather than a scripted television series package.  (*See* ICM Mot. at 15, 15 n.6; RJN, Exs. B, C.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

Finally, Plaintiff references Defendants' alleged "tying agreements" in an effort to plead an injury to competition. (*See* TAC ¶¶ 42, 78.) "Tying is defined as an arrangement where a supplier agrees to sell a buyer a product (the tying product), but only on the condition that the buyer also purchases a different (or tied) product." *Brantley*, 675 F.3d at 1199 (internal quotation marks and citation omitted). "The potential injury to competition threatened by this practice is that the tying arrangement will either harm existing competitors or create barriers to entry of new competitors in the market for the tied product . . . or will force buyers into giving up the purchase of substitutes for the tied product." *Id.* (internal quotation marks and citation omitted).

In its TAC, Plaintiff alleges three tying agreements whereby Defendants allegedly "coerc[ed]" or "cajol[ed]" a studio, network, or producer to accept tied talent along with the coveted talent. (*See* TAC ¶ 42 (discussing "UTA coercing AMC Network to renew their extremely low rated series 'Halt And Catch Fire' . . . in order to get a different and higher rated series, 'Better Call Saul,' or ICM cajoling ABC to renew the ratings[-]challenged 'Private Practice' series in order to keep their package of 'Grey's Anatomy' going").) Even assuming Defendants utilized tying agreements, Plaintiff fails to adequately allege how these assumed agreements "harm existing competitors or create barriers to entry of new competitors in the market for the tied product." *Brantley*, 675 F.3d at 1199. Plaintiff also fails to allege that the buyers were forced "into giving up the purchase of substitutes for the tied product." *Id.* As such, Plaintiff fails to establish restraint of trade through Defendants' alleged tying agreements.

For the foregoing reasons, Plaintiff again fails to sufficiently plead the conspiracy and harm-to-competition elements of its § 1 Sherman Act claim.[5] Accordingly, Defendants' Motions are **GRANTED** as to that cause of action. Given that this is Plaintiff Third Amended Complaint, and because Plaintiff has failed to cure deficiencies as to its Sherman Act § 1 claim in each of its previous pleadings, Plaintiff's Sherman Act claim is **DISMISSED with prejudice**. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("As here, where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims,

---

[5] Given that Plaintiff again fails to satisfy these two elements, the Court need not discuss the remaining two elements of Plaintiff's § 1 Sherman Act claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

the district court's discretion to deny leave to amend is particularly broad.") (internal quotation marks omitted).

### B.     Unfair Business Practices Claim

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Plaintiff may therefore base its claim upon "acts or practices which are unlawful, or unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (Cal. Ct. App. 1996).  Here, Plaintiff alleges that Defendants violated the "unlawful" and "unfair" prongs of the UCL. (*See* Pl.'s ICM Opp'n at 20; Pl.'s UTA Opp'n at 20.)

In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (Cal. 1999), the California Supreme Court defined the meaning of an "unfair" act under the UCL as it applies in the antitrust context:

> When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Id.* at 187.  However, where, as here, (*see* TAC ¶¶ 83, 85, 87–88), "the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair.'"[6] *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 691–92 (9th Cir. 2015) (citing *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2001)).

---

[6] Because "[t]he analysis under California's antitrust law mirror the analysis under federal law," *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (citing Cal. Bus. & Prof. Code § 16700 *et seq.*), Plaintiff's new allegation that Defendants violated the Cartwright Act does not alter the Court's conclusion, (*see* TAC ¶ 83).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

Like in its previous Order, (*see* Dkt. No. 43 at 15–16), the Court finds that because Plaintiff has not sufficiently pleaded an unreasonable restraint of trade under § 1 of the Sherman Act, Plaintiff also necessarily fails to plead unfair or unlawful conduct under the UCL, *see Office of the Comm'r of Baseball*, 776 F.3d at 691–92; *Chavez*, 93 Cal. App. 4th at 375. Defendants' Motions are therefore **GRANTED** as to Plaintiff's UCL claim, and that claim is **DISMISSED with prejudice** for the same reasons as Plaintiff's § 1 Sherman Act claim. *See Zucco*, 552 F.3d at 1007.

### C.    Intentional Interference with Contract

Plaintiff alleges that Defendants interfered with its contractual relationships with Clients #1 and #2[7] by inviting the clients to a private VIP screening or meeting, during which Defendants began persuading the clients to breach their contracts with Plaintiff. (TAC ¶¶ 94, 97.) Defendants argue that Plaintiff fails to plead intentional interference with contract given its failure to allege that the contracts were not terminable at will. (ICM Mot. at 22–25; UTA Mot. at 18–24.) Thus, according to Defendants, the competitor's privilege applies, and Plaintiff fails to aver an independently wrongful act to defeat the privilege.[8] (*Id.*)

To state a claim for intentional interference with contract, Plaintiff must sufficiently plead the following: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (Cal. 1990). "'A plaintiff need not allege an actual or inevitable *breach* of contract in order to state a claim for disruption of contractual relations'; rather, unlike the tort of inducing breach of contract, intentional interference with contractual relations requires only proof of *interference*." *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1230 (C.D. Cal. 2012) (quoting *Pac. Gas &*

---

[7] Plaintiff explains that Clients #1 and #2 are directors and members of the DGA. (TAC ¶¶ 91, 96.)

[8] As discussed below, the Court finds that Plaintiff fails to (1) sufficiently allege that Client #1's contract was not at will and (2) defeat the competitor's privilege. Thus, the Court need not address Defendant UTA's additional argument that Plaintiff fails to adequately allege knowledge or causation with respect to the Client #1 agreement. (*See* UTA Mot. at 24–25.)

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

*Electric Co.*, 50 Cal. 3d at 1129) (emphasis in original).  However, where contracts are terminable at will, the competitor's privilege applies.  *See, e.g.*, *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 819 (9th Cir. 1992).  If the privilege applies, "a plaintiff must also plead and prove that the defendant engaged in an independently wrongful act," which induced the party to leave the plaintiff.  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (Cal. 2004).  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id.*

Here, as in the SAC, Plaintiff alleges that it had "valid and exclusive contracts" with Clients #1 and #2.  (TAC ¶ 90.)  However, Plaintiff alleges that its agreements with Clients #1 and #2 were "verbal contracts," (TAC ¶¶ 91, 95), and Plaintiff fails to allege whether those contracts were for a specified term or terminable at will.[9]  Thus, the competitor's privilege applies, which Plaintiff again cannot overcome because it fails to sufficiently allege a Sherman Act violation.

Plaintiff's principal argument is that Rider D in the ATA/DGA Agreement establishes that the contract was not terminable at will, and thus that the competitor's privilege does not apply.  However, the Court need not determine whether this is true, as Plaintiff fails to demonstrate that the Rider D Agreement's termination restriction was triggered to preclude Clients #1 and #2 from terminating their agreements with Plaintiff.

The crux of the Rider D Agreement is that a director or agent may not terminate an agreement so long as (1) the director has been employed or received a bona fide offer of employment in a field in which the director is represented by the agent within ninety (90) days preceding the director's notice of termination, and (2) the director is entitled to an amount equal to his last compensation at a pro rata equivalent to three weeks of services.

---

[9] Although Plaintiff alleges that its agreement with Client #2 "commenced on . . . February 10, 2009" and had an "initial term of years, with a 2-year renewal term, followed by 1-year terms," (*see* TAC ¶ 95), Plaintiff fails to allege whether the initial two-year agreement was ever renewed, thereby continuing the term contract.  Further, the alleged acts of interference appear to have occurred shortly before Client #2 gave notice of termination of June 26, 2014, (*see* TAC ¶ 97), after the initial two-year term had expired.  Thus, without any allegation as to whether the initial two-year agreement was renewed, Plaintiff fails to sufficiently plead that, at the time of the alleged interference, the agreement with Client #2 was for a specified term.

---

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|---|---|---|---|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

(*See* TAC ¶ 92, Ex. C at 2.)  According to Plaintiff, Rider D applied to its relationships with Clients #1 and #2, thereby precluding them from leaving Plaintiff for another agency.  (TAC ¶ 92.)  However, as discussed in the Court's prior Order, it is clear based upon the agreement's language that there are two conditions that must be met before a director is restricted from terminating the relationship with his or her agent.  The first is that within ninety (90) days preceding the notice of termination, the director must have obtained employment in his field, or at least received a bona fide offer of employment.  (TAC ¶ 92.)  The second is that the director must be "entitled to an amount equal to his last compensation at a pro rata equivalent of 3 weeks of services."  (*Id.*)

Here, as in the SAC, Plaintiff alleges facts that, taken as true, establish the first condition—that Clients #1 and #2 obtained employment within the ninety days preceding their notices of termination.  (*See* TAC ¶¶ 93, 95.)  However, Plaintiff fails to allege the second condition, as it states no *facts* alleging whether the payment for Client #1's and Client #2's employment met Rider D's terms.  Instead, Plaintiff states, in a conclusory fashion, that Clients #1 and #2 "received an amount equal to [their] last compensation at a pro rata rate equivalent to three (3) weeks of services."  (TAC ¶¶ 93, 95.)  Plaintiff does not allege the amount each client was compensated for their prior work, nor does it allege the amount each client received for their subsequent work.  Merely reciting Rider D's terms is insufficient to state a claim under *Twombly*.  *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Thus, even assuming that the ATA/DGA Agreement could elevate the contracts to term agreements, Plaintiff fails to sufficiently plead that Rider D's termination restriction would apply to Client #1's and Client #2's notices of termination.

Because Plaintiff again fails to plead that the agreements with Clients #1 and #2 were not at will, the competitor's privilege applies.  As discussed above, Plaintiff again fails to sufficiently plead a Sherman Act violation, thus there is no "independently wrongful act" to defeat the competitor's privilege.  *Reeves*, 33 Cal. 4th at 1152.  Accordingly, Defendants' Motions are **GRANTED**.  As to Plaintiff's claim against Defendant UTA for interference with Plaintiff's relationship with Client #1, that claim is **DISMISSED with prejudice**, as Plaintiff has failed multiple times to allege that agreement was not at-will, *see Zucco*, 552 F.3d at 1007, and amendment of that claim

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 15-01086-BRO (FFMx)** | Date | April 20, 2016 |
|----------|-----------------------------|------|----------------|
| Title | **LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL.** | | |

would be futile, *Carrico*, 656 F.3d at 1008.  However, Plaintiff's intentional interference with contract claim against Defendant ICM relating to Client #2 is **DISMISSED with leave to amend**, as Plaintiff may avoid the competitor's privilege if it sufficiently pleads, in good faith, that at the time the alleged interference took place, Client #2 was under an agreement for a specified term.

### D.    Intentional Interference with Prospective Economic Advantage

To plead a claim for intentional interference with prospective business advantage, Plaintiff must sufficiently allege the following:

> (1) [A]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003). Further, a plaintiff must plead and prove "that the defendant's interference was wrongful by some measure beyond the fact of the interference itself."  *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 392–93 (Cal. 1995) (internal quotation marks omitted).

As in its SAC, Plaintiff relies on Defendants' acts allegedly violating the Sherman Act as the independent and wrongful acts to support this claim.  (*Compare* TAC ¶ 104, *with* SAC ¶ 138.)  However, as discussed above, Plaintiff fails to sufficiently plead a violation of the Sherman Act.  *See supra* Section V.A.  Thus, Plaintiff again fails to sufficiently allege that Defendants' conduct was "wrongful by some measure beyond the fact of the interference itself," as required under *Della Penna*.  *See Della Penna*, 11 Cal. 4th at 393.  Defendants' Motions are therefore **GRANTED** as to Plaintiff's intentional interference with prospective economic advantage claim, and that claim is **DISMISSED with prejudice**, as Plaintiff has again unsuccessfully amended this claim despite having filed three amended complaints.  *See Zucco*, 552 F.3d at 1007.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | | Date | April 20, 2016 |
|---|---|---|---|---|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | | |

**E.   The Court Declines to Exercise Supplemental Jurisdiction over the Remaining State Law Claim**

"The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007). "In *Gibbs*, the [United States Supreme] Court stated that 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Although this is not a per se rule, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* at 350.

Here, only Plaintiff's intentional interference with contract claim as to Client #2 remains—a state-law cause of action. *See* discussion *supra* Section V.C. Further, the Court has dismissed Plaintiff's sole federal-law claim with prejudice. *See* discussion *supra* Section V.A. Accordingly, there is no federal-law claim remaining. Given that this action is in its early stages, and because the federal-law claim has "dropped out of the lawsuit . . . and only [a] state-law claim[] remain[s]," the Court declines to exercise jurisdiction over the remaining state-law claim and **DISMISSES** the case **without prejudice**. *See Carnegie Melon*, 484 U.S. at 350.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motions are **GRANTED with prejudice** as to Plaintiff's Sherman Act § 1 claim, UCL claim, intentional inference with prospective economic advantage claim, and intentional interference with contract claim as to Client #1. Although, Defendants' Motions are **GRANTED without prejudice** as to Plaintiff's intentional interference with contractual relations claim with regard to Client #2, the Court declines to exercise supplemental jurisdiction over that claim given that the

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-01086-BRO (FFMx) | Date | April 20, 2016 |
|----------|------------------------|------|----------------|
| Title | LENHOFF ENTERPRISES, INC. V. UNITED TALENT AGENCY, INC. ET AL. | | |

sole federal claim has "dropped out of the lawsuit . . . and only [a] state-law claim[] remain[s]." *Carnegie Melon*, 484 U.S. at 350.  Accordingly, the case is **DISMISSED without prejudice** to the extent Plaintiff's intentional interference with contractual relations claim remains as to Client #2.

### IT IS SO ORDERED.

| | : |
|---|---|
| Initials of Preparer | rf |