1  **PHILIP J. KAPLAN (State Bar No. 135735)**
   **LAW OFFICES OF PHILIP J. KAPLAN**
2    *philipkaplan@ca.rr.com*
   3278 Wilshire Blvd., Suite 106
3  Los Angeles, California 90010
   Telephone:  (213) 480-8981
4  Facsimile:  (213) 480-8941

5
   Attorney for Plaintiff
6  LENHOFF ENTERPRISES, INC.

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12

13  LENHOFF ENTERPRISES, INC., a          ) Case No. 2:15-cv-1086-BRO (FFMx)
    California corporation dba LENHOFF &  )
14  LENHOFF,                               )
                                          ) **PLAINTIFF'S NOTICE OF**
15            Plaintiff,                   ) **MOTION AND MOTION FOR**
                                          ) **RECONSIDERATION;**
16         vs.                            ) **MEMORANDUM OF POINTS**
                                          ) **AND AUTHORITIES; AND**
17  UNITED TALENT AGENCY, INC., a         ) **DECLARATION OF CHARLES**
    California corporation;               ) **LENHOFF**
18  INTERNATIONAL CREATIVE                )
    MANAGEMENT PARTNERS LLC, a            ) Date:  June 13, 2016
19  Delaware limited liability company; and ) Time: 1:30 p.m.
    DOES 1 through 5, inclusive,          ) Courtroom: "14"
20                                         ) Judge:  Hon. Beverly Reid
              Defendants.                  )        O'Connell
21                                         )
                                          )
22

23

24

25

26

27

28

1     TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that on June 13, 2016, at 1:30 p.m., or as soon

3     thereafter as counsel may be heard, in the courtroom of the Honorable Beverly Reid

4     O'Connell, United States District Court Judge, Central District of California, located

5     at 312 N. Spring Street, Courtroom "14", Los Angeles, California 90012, Plaintiff

6     Lenhoff Enterprises, Inc. ("Plaintiff") hereby moves this Court, pursuant to Federal

7     Rule of Civil Procedure 60(b) and Local Rule 7-18, to reconsider its Order Granting

8     Defendants' Motions To Dismiss Plaintiff's Third Amended Complaint, filed April

9     20, 2016, pursuant to FRCP Rule 12(b)(6). Rec. doc. 65.

10         This motion is made following the telephonic conference of counsel pursuant

11     to L.R. 7-3 that took place on May 2, 2016, at approximately 12 Noon.

12         This motion is based on this Notice of Motion, the Memorandum of Points

13     and Authorities attached hereto, the accompanying Declaration of Charles Lenhoff

14     filed herewith, the pleadings and papers on file in this action, and such other

15     evidence and argument as may be presented to the Court prior to or at the time of

16     hearing on this motion, or subsequent thereto as permitted by the Court.

17

18     Dated: May 2, 2016          LAW OFFICES OF PHILIP J. KAPLAN

19

20                        By /s/ *Philip J. Kaplan*
                            PHILIP J. KAPLAN

21                             Attorney for Plaintiff
                            LENHOFF ENTERPRISES, INC.

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff files this motion for reconsideration, seeking an order permitting Plaintiff the right to subpoena and depose Sam Haskell, who is the former worldwide head of William Morris TV packaging, or, in the alternative, permit Plaintiff the right to File a Fourth Amended Complaint, for the reasons more fully set forth below.

## II.   LEGAL STANDARD

### A.   Legal Standard for Motion for Reconsideration

A district court has inherent discretionary power to revisit previously issued orders and to reopen any part of a case still pending before the court. *See Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943); *Natural Resources Defense Council v. Evans*, 243 F. Supp. 2d 1046, 1048 (N.D. Cal. 2003) ("This authority does not rest in any particular federal rule, but emanates from the inherent power of the court."); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1985) (district court "always ha[s] the power to modify earlier orders in a pending case").

Federal Rule of Civil Procedure 60(b) provides for reconsideration upon a showing of (1) mistake, surprise, or excusable neglect[1]; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) and other reason that justifies relief. Fed. R. Civ. P. 60(b); *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)). Local Rule 7-18 provides that a motion for reconsideration may be made on the grounds of: "(a) a

---

[1] "The determination of what constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's omission.'" *Brandt v. American Bankers Ins. Co. of Florida*, No. 10-35764, 2011 WL 3487069, at *2 (9th Cir. Aug. 10, 2011); *Community Dental Services v. Tani*, 282 F.3d 1164,1169 (9th Cir. 2002) (Rule 60(b) "is remedial in nature and thus must be liberally applied.").

1   material difference in fact or law from that presented to the Court before such

2   decision that in the exercise of reasonable diligence could not have been known to

3   the party moving for reconsideration at the time of such decision, or (b) the

4   emergence of new material facts or a change of law occurring after the time of such

5   decision, or (c) a manifest showing of a failure to consider material facts presented to

6   the Court before such decision."  L.R. 7-18.

7       **B.    FRCP Rule 12(b)(6) Standard**

8           In evaluating the sufficiency of a pleading, courts generally must accept all

9   factual allegations as true.  Legal conclusions, however, are not entitled to the

10  assumption of the truth.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell*

11  *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

12          FRCP Rule 15(a) provides that a party may amend a pleading with leave of

13  court, and that "[t]he court should freely give leave when justice so requires."

14  Fed.R.Civ.P. 15(a)(2); *see also Moss v. Secret Serv.,* 572 F.3d 962, 972 (9th Cir.

15  2009).  Leave to amend should be granted unless amendment would cause

16  prejudice to the opposing party, is sought in bad faith, is futile, or creates undue

17  delay.  *Johnson v. Mammoth Recreations,* 975 F.2d 604, 607 (9th Cir. 1992).

18  **III.   LEGAL DISCUSSION**

19       **A.    Because of the Court's determination that Plaintiff's conspiracy**

20  **allegations are insufficient, Plaintiff should be permitted to subpoena and**

21  **depose a key witness responsible for the genesis and current practice of the**

22  **splitting of packaging fees (which, Plaintiff, contends is price fixing) amongst**

23  **the 4 Uber Agencies**

24          On January 28, 2016, six (6) days after Plaintiff filed its Third Amended

25  Complaint ("TAC") which was filed January 22, 2016, Charles Lenhoff, principal of

26  plaintiff Lenhoff Enterprises, Inc., had a conversation with Sam Haskell.  Mr.

27  Haskell served as the head of William Morris TV packaging, worldwide, during the

28  1990's and up to 2004.  On that day, Mr. Haskell shared with Mr. Lenhoff

3

1   significant information concerning the split of packaging fees for Scripted TV in the

2   1990s . Among other things, Mr. Haskell told Mr. Lenhoff that "split packaging"

3   started back in 1995/1996 when the studios/distributors were trying to eliminate

4   packaging fees altogether. Mr. Lenhoff was told that at that time, William Morris

5   TV, enjoyed the best packaging definition in the industry, which was five (5%) of

6   the <u>gross</u> versus the other large agencies, which was either 2.5 % of the gross or 3%

7   of the adjusted gross. *See* Declaration of Charles Lenhoff ("Lenhoff Decl."), paras.

8   2 – 5.

9        While Mr. Haskell was unwilling to tell Mr. Lenhoff in that conversation

10   which studio/network executives were pushing to eliminate packaging fees, he did

11   say that "we" (i.e., William Morris TV) agreed to reduce their fees, so that ICM,

12   CAA, Endeavor and Paradigm would have the same terms and worked out a system

13   for splitting the packages. Lenhoff Decl., paras. 6, 7. During this process, Mr.

14   Haskell told Mr. Lenhoff that he (Haskell) was responsible for spearheading a

15   coordinated effort by Agencies CAA, ICM, Endeavor and Paradigm to split

16   packaging and for a set price. Mr. Haskell said that, during the two-year period of

17   1995 and 1996, he was speaking, daily, with Nancy Josephson of ICM, Lee Gabler

18   of CAA, Sam Gores of Paradigm, and Ari Emanuel of Endeavor. This culminated

19   in an agreement whereby William Morris TV reduced its fees and where all of the

20   above agencies had the same terms. Lenhoff Decl., para. 7.

21        After this conversation, Mr. Lenhoff attempted, multiple times, to reach

22   Haskell. In order to file a motion for leave to amend the TAC, it was felt that a

23   voluntary statement in the form of a declaration, under penalty of perjury, should be

24   obtained from Mr. Haskell. However, up until the time of the Court's ruling herein

25   on the motions to dismiss filed by ICM and UTA, Mr. Lenhoff and his counsel were

26   unable to get Haskell "on record." Lenhoff Decl., para. 8.

27   / / /

28   / / /

4

**B.** **In the interests of justice, Plaintiff requests the Court's permission to confirm the above statements by Mr. Haskell and to inquire into those matters that such statements suggest**

Based on Mr. Haskell's unwillingness to, voluntarily, give information in the form of a declaration, Plaintiff respectfully submits that the information he was provided in a single conversation regarding split packaging and the above agreement described by Mr. Haskell lacked sufficient evidentiary support to utilize at the time of the filing of Plaintiff's opposition to Defendants' motions to dismiss the TAC. Plaintiff believes that the facts stated to him are likely to "emerge" with the aid of this Court's subpoena power and a deposition taken under oath. Accordingly, for purposes of L.R. 7-18, the above information did not exist "as facts" at the time of this Court's decision herein. L.R. 7-18 (b). The facts will come into existence on deposition day – and only then.

Although Plaintiff believes the allegations in the TAC were sufficient to overcome Defendants' motion to dismiss, on April 20, 2016, this Court found that Plaintiff failed to provide specific facts of a conspiracy at the pleading stage and the Court denied leave to amend. Plaintiff respectfully requests that the Court reconsider the decision to deny leave to amend so that Plaintiff may seek to depose Mr. Haskell to confirm the above agreement to reduce and coordinate packaging fees in order to avoid their elimination.

If permitted to do so, Plaintiff will also inquire as to any meetings or communications in addition to those that occurred in the 1990's by the 4 Uber Agencies regarding the splitting of packaging deals and price setting, including the identity of those present, the dates and locations of such meetings; the frequency with which co-packaging with smaller agencies occurs and whether there are any special circumstances that render such arrangements aberrational; the existence of any coercion by major agencies against studios/networks that resulted in the studios/networks refusing to deal with or boycott smaller agencies and the identity

1  of those involved in any such discussions; the existence of any agreement by the 4

2  Uber Agencies to exclude smaller agencies from packaging deals; and whether by

3  their agreement to reduce packaging fees and to set up a protocol to split packaging

4  fees amongst themselves, the Uber Agencies knew that such agreement would harm

5  smaller agencies?

6        The relief sought by Plaintiff in the instant motion is for the opportunity to

7  depose a single witness and to "mine" those facts that appear to exist, based on Mr.

8  Haskell's statements and for the Court to grant leave to amend in order to

9  incorporate additional facts obtained during the deposition or otherwise.

10  **IV.    CONCLUSION**

11        For all of the foregoing reasons, Plaintiff respectfully requests that the Court

12  grant the motion to reconsider, vacate its April 20, 2016, Order of Dismissal, and

13  permit limited discovery.

14

15                                    Respectfully submitted,

    Dated:  May 2, 2016              LAW OFFICES OF PHILIP J. KAPLAN
16

17

18                                    By:  /s/ *Philip J. Kaplan*
                                          Philip J. Kaplan
19                                    Attorneys for Plaintiff
                                      LENHOFF ENTERPRISES, INC.

20

21

22

23

24

25

26

27

28

                                      6

1

## DECLARATION OF CHARLES LENHOFF

2

I, **Charles Lenhoff**, hereby declare:

3

4

1.      I am one of the shareholders, along with my wife and partner, Lisa, in

Plaintiff Lenhoff Enterprises, Inc.  I know the matters below from my own personal

5

knowledge, and, if called as a witness, I could and would competently testify to the

6

matters herein.

7

2.      Plaintiff's Third Amended Complaint was filed on January 22, 2016.

8

3.      Six (6) days afterwards, on January 28, 2016, I telephoned Sam Haskell

9

(sometimes hereinafter "Haskell").  Mr. Haskell had served at the head of William

10

Morris TV packaging, worldwide, during the 1990's and up to 2004.

11

4.      In that conversation, Mr. Haskell shared with me certain information

12

concerning split packaging.  Mr. Haskell told me that split packaging developed as a

13

response to the efforts by studios/distributors to eliminate packaging fees, altogether.

14

This was in 1995/1996.

15

5.      At this time, Mr. Haskell informed me that William Morris TV enjoyed

16

the best packaging definition or formula in the industry, which was five (5%) of the

17

gross versus the other large agencies, which was either 2.5% of the gross or 3% of

18

the adjusted gross.

19

6.      When I asked Mr. Haskell which studio/network executives were

20

pushing to eliminate packaging fees, he told me that he did not want to go into those

21

details.

22

7.      In order to preserve packages, Mr. Haskell said that William Morris TV

23

agreed with ICM, CAA, Endeavor and Paradigm to reduce its fees so that the major

24

agencies would offer the same terms and packages could be split.  Mr. Haskell said

25

that he was involved in the effort by William Morris TV, CAA, ICM, Endeavor and

26

Paradigm to split packaging and to set a price.  During this time, Mr. Haskell said

27

that he was speaking, daily, with Nancy Josephson (ICM), Lee Gabler (CAA), Sam

28

7

Gores (Paradigm), and Ari Emanuel (Endeavor).

8.    After my above conversation with Mr. Haskell, I attempted to reach him to confirm his statements to me by having him provide a form of declaration attesting to the statements.  On or about March 28, 2016, I emailed Mr. Haskell but he did not respond to me.  I also asked that my counsel, Taylor Wagniere, Esq., reach out to Mr. Haskell so that he could give a voluntary statement, under oath.  I am informed that Mr. Haskell never replied.

I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.

Executed this 2ᵘᵈ day of May 2016 in Los Angeles, California.

CHARLES LENHOFF

8